MARK J. CONNOT (10010)
KEVIN M. SUTEHALL (9437)
**FOX ROTHSCHILD LLP**
1980 Festival Plaza Drive, #700
Las Vegas, Nevada 89135
(702) 262-6899 tel
(702) 597-5503 fax
mconnot@foxrothschild.com
ksutehall@foxrothschild.com
*Attorneys for Plaintiff Austin Capital Trust Company LLC*

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| AUSTIN CAPITAL TRUST COMPANY LLC,<br><br>                Plaintiff,<br>v.<br><br>NORTH BAY CREDIT UNION; CHRIS CALL; CAROLE McCORMICK; DOES I through X, inclusive; and ROE BUSINESS ENTITIES I through X, inclusive,<br><br>                Defendants. | Case No.:<br><br>**COMPLAINT** |

Plaintiff Austin Capital Trust Company LLC complains against Defendants North Bay Credit Union, Chris Call, and Carole McCormick, and in support thereof, states and alleges as follows:

**PARTIES/JURISDICTION/VENUE**

1. Plaintiff Austin Capital Trust Company LLC ("Plaintiff" or "ACTC") is a Nevada limited liability company.  ACTC is a chartered non-depository trust company subject to oversight by the Nevada Financial Institutions Division ("NFID").

2. Upon information and belief, Defendant North Bay Credit Union ("NBCU") is a California non-profit corporation.  Also upon information and belief, NBCU is a chartered California credit union subject to oversight by the California Department of Financial Protection and Innovation.

3. Upon information and belief, defendant Chris Call ("Call") is a California resident. Call is believed to be the Chief Executive Officer of NBCU.

4. Upon information and belief, defendant Carole McCormick ("McCormick", and together with NBCU and Call, "Defendants") is a California resident. Ms. McCormick is also believed to be the President of Greenbax Marketplace, Inc. ("Greenbax") and an officer of NBCU.

5. Defendants NBCU, Call, and McCormick purposefully availed themselves to the specific jurisdiction of this Court pursuant to the actions described below. This Court may exercise personal jurisdiction over Defendants because each has at least minimum contacts with Nevada such that the exercise of jurisdiction does not offend traditional notions of fair play and substantial justice.

6. Venue is proper in this Court pursuant to 28 U.S.C. § 1391 and 18 U.S.C. § 1965 because Defendants or their agents have targeted ACTC through the conduct described below, including by encouraging third parties to file complaints against ACTC with the NFID, and because Defendants caused and continue to cause harm to Plaintiff in Nevada, where Plaintiff is a citizen.

7. This Court has diversity jurisdiction over this matter pursuant to 28 U.S.C. §1332. Specifically, the parties are citizens of different states and the amount in controversy exceeds $75,000 exclusive of interest and costs.

8. The true names and capacities, whether individual, corporate, associate, or otherwise, of defendants Does I through X and Roe Business Entities I through X, inclusive, are unknown to Plaintiff, who therefore sues these defendants by such fictitious names. Plaintiff is informed and believes and thereon alleges that each of the defendants designated herein as Does and Roe Corporations are responsible in some manner for the events and happenings herein referred to and caused injury and damages proximately thereby to Plaintiff as herein alleged, including, but not limited to, orchestrating complaints against ACTC based on false pretenses, illegally seizing ACTC's funds, attempting to copy intellectual property, and other bad acts. Plaintiff will ask leave of this Court to amend this complaint to insert the true names and capacities

of defendants Does and Roe Corporations, including, when the same have been ascertained by Plaintiff, together with appropriate charging allegations, and adjoin such defendants in this action.

## FACTUAL ALLEGATIONS

9. Banking options are limited for businesses operating in the cannabis industry. Financial institutions like NBCU market their services to cannabis businesses. To do so in compliance with federal and state law, however, NBCU and similar institutions associate with third parties.

10. ACTC is a trust company that is, among other things, a custodian of funds belonging to businesses operating in the cannabis field.

11. Between 2021 and 2023, ACTC and NBCU entered into a series of agreements and executed various documents establishing a banking relationship between them. Pursuant to these various agreements, ACTC holds an account with NBCU.

12. Non-party MRB Direct, Inc. ("MRBD") is a Nevada corporation. MRBD is a service provider of a banking platform specific to businesses in the cannabis industry.

13. MRBD and ACTC are unrelated and operate independently from each other.

14. NBCU is the majority owner of Greenbax. McCormick is the President of Greenbax.

15. MRBD and Greenbax are parties to a Master Subscription Agreement ("MSA"). Pursuant to the MSA, MRBD promised to provide a license to a banking platform which includes an online banking portal that allows Greenbax clients to request outgoing wires, schedule ACH payments to pay vendors or receive payments, and to settle checks for account reconciliation.

16. ACTC is the custodian of the funds for approximately 200-300 Greenbax customers who receive services using MRBD's banking platform. ACTC holds in custody in its NBCU account a portion of these funds that belong to Greenbax customers and not NBCU.

17. Greenbax customers, using the MRBD banking platform, process payments and deposits through NBCU as the "sponsor bank" who provides money-movement. NBCU, in turn, remits funds to ACTC as custodian to ACTC's account held at NBCU. ACTC lacks information that would enable it to account for the funds held in its custodial account on a customer-by-

1  customer basis. ACTC holds the funds in custody until it receives instructions from someone, including Greenbax or NBCU, to do something with those funds.

18. Greenbax has the responsibility to provide its customers with access to their respective accounts, including the ability for clients to make transfer requests.

19. Additionally, NBCU has deposited funds with ACTC.

20. In 2023, disputes wholly unrelated to ACTC arose between MRBD and Greenbax relating to Greenbax's failure to pay outstanding amounts to MRBD.

21. On or about July 26, 2023, MRBD disabled the Greenbax platform as a result of Greenbax's failure to pay for MRBD's services.

22. On July 27, 2023, at 9:47 a.m., Call and McCormick sent an email to some or possibly all of the Greenbax/NBCU customers. The email header of the email contained the logos of both NBCU and Greenbax and began with "Dear NBCU/Greenbax Marketplace Customers." In the email, Call and McCormick stated that it was engaged in a "disagreement . . . with our technology partner." *Id*. The email (accurately) advised customers that their funds remained secure, protected, and available. The email included a link that authorized Greenbax customers to authorize a transfer of funds from the Greenbax platform to the customers' NBCU accounts, stating that "this will allow you to gain immediate access back to your funds."

23. Later on July 27, 2023, ACTC sent an email to the Greenbax customers advising those customers of the suspension of the Greenbax platform while assuring the customers that they had unrestricted access to their funds. The email confirmed that the customers could maintain their Greenbax accounts, open a new account with ACTC, or transfer the funds to another custodian.

24. Thereafter, Greenbax and NBCU engaged in a pattern of actions intended to harm Greenbax's customers, MRBD, and ACTC. Among other things, Greenbax and NBCU sent multiple malicious and defamatory emails to the Greenbax customers on July 27, 2023 and July 28, 2023.

25. Call and McCormick sent a second email to "our North Bay/Greenbax Customers" at or about 6:09 p.m. on July 27th. In the email, Call and McCormick accused ACTC and MRBD

of "an intentional subterfuge meant to create panic." Call and McCormick also described the parties' dispute, asserting that "Greenbax Marketplace paid a large percentage of the disputed amount to prevent the platform from being deactivated" and referenced confidential proceedings that had been initiated in violation of the MSA. Call and McCormick encouraged the customers to demand that ACTC send the funds to NBCU or another institution. Finally, in an attempt to pressure ACTC and MRBD, Call and McCormick encouraged all of Greenbax's customers to contact ACTC's regulator, the Commissioner of the NFID, and to claim that "you are being blocked from accessing your funds." The email included a ghost written, "sample email template to send to the Nevada Commissioner", which message falsely asserted that ACTC had refused to provide the customers with access to their funds.

26. Call and McCormick sent yet another message to Greenbax customers the following morning, July 28th. In this third email in less than two days, Call and McCormick asserted that Greenbax customers were "negatively impacted by being shut out of the platform with no access to our funds." Call and McCormick stated that "we urge you to fill out the [complaint] form by clicking the bottom below", and the email embedded a link to the NFID's website containing the complaint form. The email contained answers to inquiries within the NFID's complaint form, directing customers to "provide as much detail about the harm this action is inflicting on you and your business and tell the regulator you need immediate access to your funds held by [ACTC] and include the balance they are holding on your behalf."

27. On July 28, 2023, counsel for ACTC sent a letter to counsel for Greenbax and the Defendants demanding that Defendants cease and desist making defamatory comments about ACTC and that it retract its prior defamatory statements, among other things. Defendants' counsel responded the same day rejecting the demand, further evidencing Defendants' bad faith.

28. On or about July 27, 2023, without requesting or receiving authorization from ACTC, NBCU illegally withdrew $2,525,565.84 from ACTC's account at NBCU as the depository institution. The funds in ACTC's account belonged to Greenbax and/or Greenbax customers, but ACTC is responsible for funds within its account. NBCU did not disclose the nature of the roughly $2.5 million transaction, making it impossible for ACTC to reconcile funds within its NBCU

account. NCBU refused and failed to account for, or provide an explanation justifying, its removal of the funds from ACTC's account.

29. ACTC historically relied on daily reports from NBCU and Greenbax to reconcile amounts held in its custodial account.

30. Following the July 26, 2023 disabling of the Greenbax platform, the earliest ACTC could have processed Greenbax client requests to transfer funds would have been July 28, 2023, assuming ACTC was provided such requests by July 27, 2023.

31. In an effort to undercut both ACTC and its own customers, NBCU failed to post transactions that were pending when the Greenbax platform was disabled. Had NBCU posted the pending transactions, ACTC was ready and able to process those transactions. NBCU and Greenbax also failed to provide banking reconciliations to ACTC to allow it to account for and securely transfer the funds for customers.

32. By refusing to provide these reports, NBCU and Greenbax intentionally deprived ACTC of the ability to maintain the integrity and accuracy of the client records. Had they done so, consistent with NBCU's obligations as bank sponsor, ACTC could have immediately transferred funds to Greenbax's clients. By intentionally depriving ACTC of this information, NBCU precluded ACTC from being able to immediately reconcile and account for the exact balances it held for Greenbax customers. Therefore, any delay in ACTC's ability to provide Greenbax clients with funds was a direct result of NBCU and Greenbax refusing to supply updated information to ACTC.

33. Notwithstanding NCBU's intentional misconduct, ACTC took extraordinary steps to request data from Greenbax's former technology provider so that it could attempt to reconcile the Greenbax accounts. ACTC's extraordinary actions required significant expense and time, and would not have been necessary but for NCBU and Greenbax refusing to provide routine data to ACTC.

34. With the help of the former technology provider, ACTC completed this process to the best of its ability by July 31, 2023, within two business days of the Greenbax platform being disabled. In many or most instances, ACTC was able to assist the Greenbax customers by

1 transferring assets to a new custodian the same day that those customers requested that ACTC do
2 so. Beginning on August 3, 2023, ACTC provided Greenbax clients that had not already
3 transferred their assets elsewhere online access to information about their transaction and funds
4 free of charge.

        35.    Nonetheless, the July 27-28 campaign by Call, McCormick, and NBCU to extort and pressure ACTC and MRBD through regulatory complaints from misled customers succeeded in that many of those customers filed complaints against ACTC. As of the preparation of this complaint, ACTC has received at least 23 complaints filed against it with the NFID. At least one of those complaints simply cut and pasted McCormick's and Call's ghost-written complaint form and submitted it to the NFID, and included McCormick's and Call's instructions in the body of the complaint.

        36.    ACTC has suffered reputational harm and is facing dozens of complaints from customers that NBCU, Call, and McCormick have misled. ACTC is required to respond to each complaint separately.

        37.    On July 31, 2023, Sandy O'Laughlin, Commissioner of the NFID, sent an email to an attorney for ACTC a message stating that the NFID had forwarded to numerous complaints to ACTC and that it required a response to each complaint. The coordinated attack on ACTC has already resulted in roughly 10% of Greenbax's customers filing formal complaints with ACTC's Nevada regulator.

        38.    Some customers have filed complaints about ACTC that reflect the misinformation that they received from NBCU, Call, and/or McCormick. Some Greenbax's customers do not necessarily understand the division of responsibilities and roles that NCBU, Greenbax, and ACTC play, including the limitations of ACTC's role and what information it possesses.

        39.    For example, one client called ACTC and threatened to report ACTC to regulators for allegedly withholding information about the customer's account. The client, whose funds had already been transferred from ACTC, demanded information about July 2023 transactions for 10 separate companies, apparently under the misimpression that ACTC possessed such information. When ACTC explained to the customer that ACTC's account is an omnibus account for all

Greenbax customer funds and that only Greenbax could provide the requested information, the client hung up on the ACTC representative.

40. In another instance, a Greenbax customer demanded account statements and transaction history for July 2023 about three separate accounts from ACTC at the direction of Greenbax representative Sarah Pearson. Ms. Pearson apparently was unaware that ACTC lacks such detail about Greenbax accounts.

41. In yet another instance, Greenbax representative Alexandra Kutsurelis advised a Greenbax customer that Greenbax was unable to provide detailed statements about its customers' funds and encouraged the customer to contact an ACTC representative to request a statement or transaction history. Greenbax failed to advise the customer that ACTC lacked such information, in part because NBCU had stopped providing ACTC with customer account transaction information.

42. Some of the complaints were from Greenbax clients that had no account balances or pending transactions at ACTC. They would not be affected by the transaction but were influenced by Greenbax and NBCU to file false claims.

43. Call himself personally filed a complaint with the NFID against ACTC on July 28, 2023 in which he asserted that ACTC had refused to make funds available to Greenbax customers, that ACTC "had responded to redemption requests by saying their funds will be available for transfer to NBCU after August 28", and that "it is untenable for a financial institution to hold demand deposits hostage for any period of time." Call purposefully failed to mention that he and NCBU had not provided transaction and reconciliation information to ACTC, that NBCU had illegally withdrawn in excess of $2.5 million from the account in question, or that ACTC could have processed the transactions if NBCU and Greenbax had provided ACTC information about the transactions.

44. Call's complaint also asserted that "over $45 million is held in ACTC's custodial accounts." This amount was inaccurate and was intended to mislead the NFID. After fully reconciling its records to the Greenbax system and ACTC's NBCU account, ACTC determined that the amount held for Greenbax customers was within one thousand dollars of $40,537,330.21.

45. McCormick also personally filed a complaint with the NFID and against on July 28, 2023. There, McCormick asserted that Greenbax customers "have no access to their funds." McCormick's email defamed ACTC, its principal David Park, and, like Mr. Call, purposefully failed to mention that NCBU had not provided transaction and reconciliation information to ACTC or that NBCU had illegally withdrawn in excess of $2.5 million from the account in question.

## FIRST CAUSE OF ACTION

## (BUSINESS DEFAMATION AGAINST NBCU, CALL, AND MCCORMICK)

46. As described above, Defendants made unprivileged publication of the defamatory statement to third persons, including to customers for whom Plaintiff was custodian of funds.

47. Defendants are at fault for the publication of the defamatory statement.

48. Defendants' defamation imputed ACTC's fitness for trade, business, and profession, and tended to injure ACTC in its business, and therefore is defamation per se and damages are presumed.

49. Defendants published the defamatory statements with the intent to cause harm to ACTC's pecuniary interest by, among other things, orchestrating customers to submit baseless complaints with the NFID and causing customers to cease doing business with ACTC.

50. Defendants published disparaging remarks knowing of their falsity and/or with reckless disregard for the truth.

51. As a result of Defendants' misconduct, Plaintiff suffered, and is entitled to recover, compensatory damages in an amount to be proven at trial.

52. Defendants were guilty of oppression, fraud, and malice when they defamed ACTC. Accordingly, ACTC should be awarded punitive damages in an amount to be determined at trial.

53. Plaintiff suffered and will continue to suffer irreparable harm for which there is no adequate remedy at law.

//

//

//

**SECOND CAUSE OF ACTION**

**(DECEPTIVE TRADE PRACTICES AGAINST NBCU, CALL, AND MCCORMICK)**

54. Defendants knowingly made false representations to customers as described above in violation of NRS 598.0915(15)

55. Defendants disparaged the services ACTC provides by making false and/or misleading representations of fact in violation of NRS 598.0915(8).

56. As a result of Defendants' conduct, ACTC suffered damages in an amount to be determined at trial.

57. Defendants knowingly and/or willfully engaged in the foregoing deceptive trade practices. Defendants should be ordered to pay ACTC all profits derived from Defendants' knowing and willful engagement in deceptive trade practices, if any, and should be ordered to pay treble damages on all damages ACTC suffered by reason of its deceptive trade practices.

**THIRD CAUSE OF ACTION**

**(FRAUD AGAINST NBCU, CALL, AND MCCORMICK)**

58. Defendants made false representations to customers in their second July 27, 2023 email and their July 28, 2023 email, described above in detail, and in the complaints they personally submitted to the NFID.

59. Defendants knew or believed that their representations were false or that they had an insufficient basis of information for making the representations.

60. Defendants intended to induce customers to act or refrain from acting based on the misrepresentations. Specifically, Defendants intended to induce customers to cease using Plaintiff as custodian, and to cause customers to file baseless complaints against ACTC with the NFID, based on the misrepresentations. Generally speaking, Defendants sought to punish ACTC, and to cause ACTC and MRBD to yield to its demands, as part of their dispute with MRBD.

61. As a result of Defendants' fraud, which was done with malice, ACTC suffered, and is entitled to recover, compensatory and punitive damages in an amount to be proven at trial.

//

//

### FOURTH CAUSE OF ACTION

### (NEGLIGENT MISREPRESENTATION AGAINST NBCU, CALL, AND MCCORMICK)

62. Defendants made false representations to customers in its July 27, 2023 and July 28, 2023 emails, described above in detail, and in the complaints they submitted to the NFID.

63. Defendant intended to induce action by Greenbax customers, including filing of complaints with the NFID and termination of business with ACTC through their false representations.

64. The recipients of Defendants' false statements, Greenbax customers for whom ACTC held funds in its capacity as custodian, justifiably relied upon Defendant's false representations.

65. Defendants failed to exercise reasonable care or competence in obtaining and communicating the false information.

66. ACTC suffered damage in an amount to be determined at trial as a result of Defendants' false representations.

### FIFTH CAUSE OF ACTION

### (UNJUST ENRICHMENT AGAINST NBCU)

67. When NBCU removed roughly $2.5 million from ACTC's account, ACTC conferred a benefit on NBCU, which benefit NBCU had knowledge of and appreciated.

68. NBCU voluntarily accepted and retained roughly $2.5 million from ACTC's account.

69. Under such circumstances it would be inequitable and unjust for NBCU to retain the benefit of retaining in excess of $2.5 million without reimbursing the value to ACTC.

### SIXTH CAUSE OF ACTION

### (BREACH OF CONTRACT AGAINST NBCU)

70. ACTC and NBCU are parties to various agreements resulting in ACTC acting as custodian of Greenbax customer funds.

71. None of the agreements between ACTC and NBCU permitted NBCU to unilaterally remove funds from ACTC's account.

72. NBCU breached the terms of the various agreements between it and ACTC by removing funds from ACTC's account.

73. As a proximate consequence of NCBU's breach, actions and/or omissions, ACTC has been damaged in the amount exceeding $2.5 million excluding interest and attorneys' fees and costs required in this action.

## SEVENTH CAUSE OF ACTION

## (CONVERSION AGAINST NBCU)

74. NBCU engaged in one or more distinct acts of dominion wrongfully exerted over ACTC's property when it removed roughly $2.5 million from ACTC's account without authorization.

75. NBCU's acts were in denial of, or inconsistent with ACTC's title or rights therein or in derogation, exclusion, or defiance of such title or rights.

76. As a result of Defendants' conversion, which was done with malice, ACTC suffered, and is entitled to recover, compensatory and punitive damages in an amount to be proven at trial.

## PRAYER FOR RELIEF

WHEREFORE, ACTC prays for judgment and relief against Defendants as follows:

1. An award of compensatory, exemplary, and punitive damages against Defendant in an amount to be proven at trial;

2. Statutory double and treble damages as applicable;

3. An award of attorneys' fees and costs incurred in the instant litigation;

/ /
/ /
/ /
/ /
/ /
/ /
/ /

4. An award of prejudgment and post-judgment interest against Defendant; and

5. For such other and further relief as the Court deems just and equitable.

DATED this 7th day of September, 2023.

**FOX ROTHSCHILD LLP**

*/s/ Mark J. Connot*
MARK J. CONNOT (10010)
KEVIN M. SUTEHALL (9437)
1980 Festival Plaza Drive, Suite 700
Las Vegas, Nevada 89135
mconnot@foxrothschild.com
ksutehall@foxrothschild.com
*Attorneys for Plaintiff Austin Capital Trust Company LLC*