BUCHALTER
A Professional Corporation
JULIAN W. MACK, ESQ. (CA SBN: 104662) (*pro hac vice* forthcoming)
pmack@buchalter.com
CHERYL M. LOTT, ESQ. (CA SBN: 232548) (*pro hac vice* forthcoming)
clott@buchalter.com
DAVID E. MARK, ESQ. (CA SBN: 247283) (*pro hac vice* forthcoming)
dmark@buchalter.com
1000 Wilshire Boulevard, Suite 1500
Los Angeles, CA 90017-1730
Telephone: 213.891.0700
Fax: 213.896.0400

CAMPBELL & WILLIAMS
PHILIP R. ERWIN, ESQ. (11563)
pre@cwlawlv.com
SAMUEL R. MIRKOVICH, ESQ. (11662)
srm@cwlawlv.com
NICHOLAS S. HAGENKORD, ESQ. (15927)
nsh@cwlawlv.com
710 South Seventh Street, Suite A
Las Vegas, Nevada 89101
Telephone: (702) 382-5222
Facsimile: (702) 382-0540

*Attorneys for Defendants*
NORTH BAY CREDIT UNION, CHRIS CALL
and CAROLE MCCORMICK

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| AUSTIN CAPITAL TRUST COMPANY, LLC,<br><br>Plaintiff,<br><br>vs.<br><br>NORTH BAY CREDIT UNION; CHRIS CALL; CAROLE McCORMICK; and DOES 1 through X, inclusive, inclusive,<br><br>Defendants. | Case No. 3:23-cv-00444-LRH-CSD<br><br><br>**DEFENDANTS' MOTION TO DISMISS COMPLAINT FOR LACK OF PERSONAL JURISDICTION (FED.R.CIV.P. 12(B)(2)), IMPROPER VENUE (FED.R.CIV.P. 12(B)(3)) AND FAILURE TO STATE A CLAIM UPON WHICH RELIEF MAY BE GRANTED (FED.R.CIV.P. 12(B)(6))** |

**NOTICE OF MOTION AND MOTION TO DISMISS COMPLAINT**

Defendants North Bay Credit Union, Chris Call, and Carole McCormick, by and through their undersigned counsel, hereby submit their Motion to Dismiss Complaint for Lack of Personal Jurisdiction, Improper Venue, and Failure to State a Claim Upon Which Relief May Be Granted (the "Motion"). The Motion is based on the papers and pleading on file herein, the exhibits attached hereto, the Points and Authorities that follow, and any argument at the time of hearing.

# TABLE OF CONTENTS

Page

I. INTRODUCTION ................................................................................1

II. THE ALLEGATIONS OF THE COMPLAINT..................................................3

    A. The Parties ................................................................................3

    B. MRBD Disables the Banking Platform ................................................4

III. ALL CLAIMS AGAINST DEFENDANTS MUST BE DISMISSED AS THE COURT LACKS PERSONAL JURISDICTION. ...........................................5

    A. General Jurisdiction Is Lacking ......................................................7

    B. Specific Jurisdiction Is Also Lacking ...............................................8

        1. Purposeful Availment/Direction...................................................8

        2. Plaintiff Cannot Demonstrate that Call or McCormick Purposefully Directed Their Allegedly Tortious Acts at Nevada .....................................9

        3. Plaintiff's Claims Do Not Arise Out of or Relate to Defendants' Forum-Related Activities...........................................9

        4. Nevada's Exercise of Jurisdiction Would Be Unreasonable .....................10

    C. This Action Should Be Dismissed Based On The Contractually Agreed Upon Forum Selection Clause ...........................................12

        1. The Court Should Enforce the Forum Selection Clause And Dismiss The Action Under Rule 12(b)(3). .............................................12

        2. The Forum Selection Clause Must Be Enforced Absent a Strong Showing That Enforcement Would Deny Plaintiff Its Day in Court........13

    D. Alternatively, This Case Should Be Transferred To The United States District Court For The Northern District Of California.......................................16

IV. PLAINTIFF FAILS TO STATE ANY CLAIMS.........................................18

    A. Plaintiff's First Cause of Action for "Business Defamation" Fails.......................19

    B. Plaintiff's Second Cause of Action for Deceptive Trade Practices Fails ..............20

    C. Plaintiff's Third Cause of Action for Fraud and Fourth Cause of Action for Negligent Misrepresentation Fail.........................................21

    D. Plaintiff's Fifth Cause of Action for Unjust Enrichment Fails............................22

    E. Plaintiff's Sixth Cause of Action for Breach of Contract Fails ...........................23

    F. Plaintiff's Seventh Cause of Action for Conversion Fails...................................24

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Acoustics, Inc. v. Trepte Construction Co.*
(1971) 14 Cal.App.3d 887 ................................................................23

*Amba Mktg. Sys., Inc. v. Jobar Int'l Inc.*,
551 F.2d 784 (9th Cir. 1977) ..............................................................6

*Argueta v. BancoMexicano, S.A.*,
87 F.3d 320 (9th Cir. 1996) ................................................12, 14, 15

*Asphalt Prods. Corp. v. All Star Ready Mix, Inc.*,
898 P.2d 699 (Nev. 1995) ................................................................22

*Atl. Marine Const. Co. v. U.S. Dist. Court for W. Dist. of Tex.*,
571 U.S. 49 ......................................................................................17

*Axel Holding Co., LLC v. ARB Corp. Ltd.*,
2023 WL 2415265 (S.D. Cal. Mar. 8, 2023) .....................................6

*Barmettler v. Reno Air, Inc.*,
956 P.2d 1382 (Nev., 1998) .............................................................22

*Bell Atlantic Corp. v. Twombly*,
550 U.S. 544 (2007)..............................................................18, 19, 23

*Boschetto v. Hansing*,
539 F.3d 1011 (9th Cir. 2008) ......................................................8, 10

*Brayton Purcell LLP v. Recordon & Recordon*,
606 F.3d 1124 (9th Cir. 2010) ...........................................................9

*Bristol-Myers Squibb Co. v. Superior Ct. of Cal., S.F. Cnty.*,
582 U.S. 255 (2017)............................................................................6

*Bryant v. BNSF Railway Co.*,
2018 WL 5917895 (C.D. Cal. Apr. 12, 2018) ...................................6

*Bulbman, Inc. v. Nevada Bell*,
825 P.2d 588 (Nev. 1992)................................................................22

*Butler v. FreeLife Int l, LLC*,
2004 U.S. Dist. LEXIS 29676 (C.D. Cal. June 16, 2004) ........13, 14

*Catholic Diocese of Green Bay, Inc. v. Doe*,
131 Nev. 246 (2015) ..........................................................................6

**NOTICE OF MOTION AND MOTION TO DISMISS COMPLAINT**

*Caviness v. Horizon Community Learning Ctr., Inc.*,
    590 F.3d 806 (9th Cir. 2010) ..................................................................................18, 19, 23

*Cenegenics LLC v. Gaines*
    (D. Nev. June 12, 2020) ........................................................................................................9

*Clark County Sch. Dist. v. Virtual Educ. Software, Inc.*,
    213 P.3d 496 (Nev. 2009) ..............................................................................................19, 20

*Contraves Inc. v. McDonnell Douglas Corp.*,
    889 F. Supp. 470 (M.D. Fla. 1995).....................................................................................14

*Core-Vent Corp. v. Nobel Indus. AB*,
    11 F.3d 1482 (9th Cir. 1993) ................................................................................................8

*Creative Tech., Ltd. V. Aztech Sys. PTE*,
    61 F.3d 696 (9th Cir. 1995) ................................................................................................17

*Daimler AG v. Bauman*,
    134 S. Ct. 746 (2014)............................................................................................................7

*Dole Food Co., Inc. v. Watts*,
    303 F.3d 1104 (9th Cir. 2002) .............................................................................................5

*Evans v. Dean Witter Reynolds, Inc.*,
    116 Nev. 598, 5 P.3d 1043 (2000)......................................................................................24

*Fireman s Fund Ins. Co. v. M.V. Dole Ecuador*,
    No. C-94-3691-CAL ARB, 1995 U.S. Dist. LEXIS 7996, (N.D. Cal. June 1,
    1995) ....................................................................................................................................16

*Fireman's Fund Ins. Co. v. Nation Bank of Coops.*,
    103 F.3d 888 (9th Cir. 1996) ...............................................................................................9

*Glencore Grain Rotterdam B.V. v. Shivnath Rai Harnarain Co.*,
    284 F.3d 1114 (9th Cir. 2002) .............................................................................................6

*Goodyear Dunlop Tires Ops., S.A. v. Brown*,
    564 U.S. 915 (2011).............................................................................................................8

*Gowen v. Tiltware LLC*,
    2009 WL 1441653 (D. Nev. May 19, 2009), aff'd, 437 F. App'x 528 (9th Cir.
    2011) ....................................................................................................................................23

*Gunn v. Wild*,
    771 F. App'x 392 (9th Cir. 2019) .........................................................................................7

**NOTICE OF MOTION AND MOTION TO DISMISS COMPLAINT**

*Gunn v. Wild,*
Case No. 2:17-CV-72 JCM (GWF), 2018 WL 473005 (D. Nev. Jan. 18, 2018),
*aff'd*, 771 F. App'x 392 (9th Cir. 2019) ...........................................................................8

*Interline v. Zim Israel Navigation Co. Ltd.*,
No. C 00- 0939 SC, 2000 U.S. Dist. LEXIS 10867 (N.D. Cal. July 27, 2000).......................16

*International Inst. of Mgmt. v. Organization for Econ. Coop. & Dev.*,
Case No. 2:18-CV-1748 JCM (GWF), 2019 WL 2550313 (D. Nev. June 20,
2019) ...........................................................................................................................10

*International Shoe Co. v. Washington*,
326 U.S. 310 (1945)......................................................................................................8

*Jones v. GNC Franchising, Inc.*,
211 F.3d 495 (9th Cir. 2000) .......................................................................................15

*Jumara v. State Farm Ins. Co.*,
55 F.3d 873 (3rd Cir. 1995) .........................................................................................16

*Kearns v. Ford Motor Co.*,
567 F.3d 1120 (9th Cir. 2009) .....................................................................................21

*Koresko v. Realnetworks, Inc.*,
291 F. Supp. 2d 1157 (E.D. Cal. 2003) ..................................................................12, 13

*Lake v. Lake*,
817 F.2d 1416 (9th Cir. 1987) .....................................................................................10

*Laurel Village Bakery LLC v. Global Payments Direct Inc.*,
No. C06-01332 MJJ, 2006 U.S. Dist. LEXIS 73663 (N.D. Cal. Sept. 25, 2006).............12, 16

*LeasePartners Corp. v. Brooks Trust*,
942 P.2d 182 (Nev. 1997).............................................................................................23

*Lee v. Hanley*
(2015) 61 Cal.4th 1225 ...............................................................................................24

*Lockman Found v. Evangelical All Mission*,
930 F.2d 764 (9th Cir. 1991) .................................................................................12, 17

*Loya v. Starwood Hotels & Resorts Worldwide, Inc.*,
583 F.3d 656 (9th Cir. 2009) .......................................................................................18

*Lueck v. Sundstrand Corp.*,
236 F.3d 1137 (9th Cir. 2001) .....................................................................................18

*Mainor v. Nault*,
101 P.3d 308 (Nev. 2004)............................................................................................22

**NOTICE OF MOTION AND MOTION TO DISMISS COMPLAINT**

*Malcolm v. Acrylic Tank Mfg., Inc.*,
   Case No. 2:17-CV-1108 JCM (PAL), 2018 WL 3997263 (D. Nev. Aug. 21,
   2018) ...........................................................................................................................11

*Manetti-Farrow, Inc. v. Gucci Am., Inc.*,
   858 F.2d 509 (9th Cir. 1988) ...............................................................................13, 14

*Menken v. Emm*,
   503 F.3d 1050 (9th Cir. 2007) ...................................................................................10

*Murphy v. Schneider National, Inc.*,
   362 F.3d 1133 (9th Cir. 2004) ...................................................................................13

*Nev. State Educ. Ass'n v. Clark Cty. Educ. Ass'n*
   482 P.3d 665 (Nev. 2021) ...........................................................................................24

*Pado, Inc. v. SG Trademark Holding Co. LLC*,
   2020 WL 1445720 (C.D. Cal. Mar. 24, 2020)..............................................................6

*Pratt v. Silversea Cruises, Ltd.*,
   2005 U.S. Dist. LEXIS 14339 (N.D.Cal. 2005) .........................................................14

*Schreiber Distrib. Co. v. Serv-Well Furniture Co.*,
   806 F.2d 1393 (9th Cir. 1986) ...................................................................................21

*Schwarzenegger v. Fred Martin Motor Co.*,
   374 F.3d 797 (9th Cir. 2004) .................................................................................5, 6

*Seldin v. HSN, Inc.*,
   2018 WL 3570308 (S.D. Cal. July 25, 2018) ...............................................................6

*Sherman v. Smead*,
   527 P.3d 973 (Nev. Ct. App. 2023) ...........................................................................20

*In re Sony Gaming Networks & Customer Data Sec. Breach Litig.*,
   903 F. Supp. 2d 942 (S.D. Cal. 2012)........................................................................22

*South Tahoe Gas Co. v. Hoffman Land Improvement, Inc.*,
   25 Cal. App. 3d 750 (1972) ........................................................................................22

*Southport Lane Equity II, LLC v. Downey*,
   177 F. Supp. 3d 1286 (D. Nev. 2016)...........................................................7, 8, 10, 11

*Spradlin v. Lear Siegler Mgmt. Servs., Inc.*,
   926 F.2d 865 (9th Cir. 1991) .....................................................................................13

*Starr v. Baca*,
   652 F.3d 1202 (9th Cir. 2011) ...................................................................................19

**NOTICE OF MOTION AND MOTION TO DISMISS COMPLAINT**

*Story-McPherson v. Bank of Am., N.A.*,
2012 WL 2000693 (D. Nev. June 5, 2012)..................................................................23

*Sun v. Advanced China Healthcare, Inc.*,
901 F.3d 1081 (9th Cir., 2018) ....................................................................................17

*Swartz v. KPMG LLP*,
476 F.3d 756 (9th Cir. 2007) .........................................................................................5

*Thomas v. Wachovia Mortgage, FSB*,
2011 WL 3159169 (D. Nev. July 25, 2011) ................................................................23

*Tuazon v. R.J. Reynolds Tobacco Co.*,
433 F.3d 1163 (9th Cir. 2006) .....................................................................................17

*Tuttle v. Funmobile Games, Inc.*,
No. C07-0983JLR, 2007 U.S. Dist. LEXIS 83005 (W.D. Wash. 2007) .......................5

*Ebeid ex rel. U.S. v. Lungwitz*,
616 F.3d 993 (9th Cir. 2010) .......................................................................................21

*Unisys Corp. v. Access Co.*,
2005 U.S. Dist. LEXIS 31897 (N.D. Cal. Nov. 23, 2005) ..........................................16

*Van Assche v. Nevada*,
2019 WL 2440078 (D. Nev. June 11, 2019)................................................................18

*Vess v. Ciba-Geigy Corp. USA*,
317 F.3d 1097 (9th Cir., 2002) ....................................................................................21

*Vogt-Nem, Inc. v. W. African Shipping Co.*,
263 F. Supp. 2d 1226 (N.D. Cal. 2002) ......................................................................16

*Voris v. Lampert*
(2019) 7 Cal. 5th 1141, 446 P.3d 284 (Cal. 2019)......................................................24

*Weddington Productions, Inc. v. Flick*
(1998) 60 Cal.App.4th 793 ..........................................................................................23

**Statutes**

28 U.S.C. § 1404(a) ............................................................................................................16

28 U.S.C. § 1404(a) and § 1406(a)....................................................................................17

28 U.S.C. § 1406(a) ............................................................................................................16

Nev. Rev. Stat. § 598.0915(15) ..........................................................................................20

Nevada's Deceptive Trade Practices Act.............................................................................21

**Other Authorities**

17-111 Moore s Federal Practice - Civil § 111.04.................................................16

25 C.J.S. Damages § 4 (2022) .............................................................20

Fed. R. Civ. P. 2(b)(2) ..................................................................5

Fed. R. Civ. P. 8(a)(2)..................................................................23

Fed.R.Civ.P. 9...........................................................................2

Fed. R. Civ. P. 9(b) ....................................................................21

Fed. R. Civ. P. 12(b)(2) .................................................................1

Fed. R. Civ. P. 12(b)(3) .........................................................*passim*

Fed. R. Civ. P. 12(b)(6) .............................................................1, 18

Fed. R. Civ. P. 45(c)(1)............................................................11, 18

CASE NO. 3:23-cv-00444-LRH-CSD

NOTICE OF MOTION AND MOTION TO DISMISS COMPLAINT

## MEMORANDUM OF POINTS AND AUTHORITIES

**I. INTRODUCTION**

Defendants North Bay Credit Union ("NBCU"), Chris Call ("Call"), and Carole McCormick ("McCormick") (collectively "Defendants") submit their jurisdictional challenges under Rules 12(b)(2) and (3). In an abundance of caution, Defendants also submit their challenges under Rule 12(b)(6). Defendants do not waive any of their jurisdictional challenges and submit that those threshold matters need determination before the substantive challenges to the Complaint.

This case arises from a dispute between companies providing banking services for the cannabis industry. NBCU is a California state charted credit union that provides banking accounts and services to the cannabis sector. Call is the CEO of NBCU. NBCU is the majority owner of non-party Greenbax Marketplace, Inc. ("Greenbax"), which services NBCU's cannabis-related customers. McCormick is the President of Greenbax. Plaintiff Austin Capital Trust Company, LLC ("Plaintiff" or "ACTC") is a trust company that holds funds as a custodian for these customers.

Another non-party, MRBD Direct, Inc. ("MRBD"), licensed a banking platform to Greenbax which includes an online banking portal that allowed the customers to access the banking services necessary to operate their businesses, such as wire transfers, payments to vendors, receiving payments, and account reconciliation. To gain leverage in a payment dispute with Greenbax, on July 26, 2023, MRBD disabled the Greenbax banking platform. By this action, MRBD halted the customers' access to their accounts, leaving them unable to perform critical compliance, customer service, and vendor relations functions. In response, Defendants sought to help the customers gain access to their funds and account information, including by bringing their concerns to the attention of the Nevada Financial Institutions Division ("NFID").

On this basis, Plaintiff filed a complaint with seven causes of action as to NBCU, Call, and McCormick for "Business Defamation," Deceptive Trade Practices, Fraud, and Negligent Misrepresentation, and NBCU only for Unjust Enrichment, Breach of Contract, and Conversion.

As a preliminary matter, jurisdiction in this Court is improper. As set forth below, the agreement upon which Plaintiff bases its claims is the NBCU customer agreement that provides the proper forum is in Sonoma County Superior Court. (*See* Request for Judicial Notice ("RJN")< Ex.

**NOTICE OF MOTION AND MOTION TO DISMISS COMPLAINT**

A, ¶ 2.)  Further, the Court lacks personal jurisdiction over Call and McCormick because they are California residents who have not availed themselves of jurisdiction in Nevada.  Indeed, Call and McCormick were served in California and the only conduct they are alleged to have engaged in is to send emails.  As a matter of law, this is insufficient to create personal jurisdiction over them.

Further, each of Plaintiff's claims fails to state a cause of action and should be dismissed by this Court.  The Complaint is replete with improper conclusory allegations, and fails to allege Plaintiff's fraud-based claims with the specificity required by Fed.R.Civ.P. 9.

Plaintiffs First and Second Causes of Action attempt to allege for "defamation per se" and Deceptive Trade Practices, respectively. Such claims are unsupported by the facts pled. Plaintiff's allegations acknowledge that the statement of which they complain were not false and, in any event, do not attribute damages to any such statements. Thus, Plaintiff cannot meet the essential elements of those claims. [1]

Plaintiff's Third Cause of Action for Fraud, and Fourth Cause of Action for Negligent Misrepresentation do not, and—in light of Plaintiff's own allegations—cannot, allege multiple necessary elements of a cause of action, including that Defendants made any representations to Plaintiff, that Plaintiff relied on any representations of any Defendant, or that Plaintiff suffered any damages as a result of such reliance.

The Fifth Cause of Action, for Unjust Enrichment, likewise fails as a result of Plaintiff's own allegations.  Plaintiff bases its claim on the allegation that NBCU removed roughly $2.5 million from Plaintiff's account at NBCU—but Plaintiff expressly alleges that the funds in that account did *not* belong to Plaintiff, thus precluding Plaintiff from asserting this claim.

Plaintiff's Sixth Cause of Action, for Breach of Contract, alleges that Plaintiff and NBCU "entered into a series of agreements and executed various documents," but fails to identify a single contract, or a single term of any contract, that NBCU purportedly breached.  Plaintiff does not provide NBCU sufficient notice to defend itself, and the claim must be dismissed.

Finally, Plaintiff's Seventh Cause of Action for Conversion is again precluded by Plaintiff's

---

[1] The "Business Defamation" claim fails for other reasons that will be addressed in an Anti-SLAPP motion.  Defendants do not waive any right to bring such motion, which is not yet due.

own allegations. Plaintiff again bases this claim on the allegation that NBCU removed roughly $2.5 million from Plaintiff's account at NBCU. However, Plaintiff explicitly alleges that the funds in that account did ***not*** belong to Plaintiff, but rather to the customers, precluding Plaintiff from truthfully alleging that NBCU wrongfully asserted dominion over Plaintiff's property.

Defendants, therefore, respectfully submit that the Court should dismiss Plaintiff's Complaint, and each cause of action alleged therein.

## II.      THE ALLEGATIONS OF THE COMPLAINT

### A.      The Parties

Plaintiff ACTC is a chartered non-depository trust company subject to oversight by the NFID. (Dkt. 1 at ¶ 1.)[2] Defendant NBCU is a chartered California credit union. Plaintiff alleges on information and belief that Defendant Call is the CEO of NBCU, and that Defendant McCormick is "believed to be" the President of non-party Greenbax and an officer of NBCU.[3] (*Id*., ¶¶ 2-4.) NBCU is the majority owner of Greenbax. (*Id*., ¶ 14.)

Plaintiff is a custodian of funds belonging to businesses in the cannabis industry. Plaintiff alleges that between 2021 and 2023, Plaintiff and NBCU "entered into a series of agreements" and "executed various documents" (none of which are attached to, the Complaint) that established a banking relationship between them. Pursuant to these "various agreements," Plaintiff holds an account with NBCU. (Dkt. 1 at ¶¶ 10-11.)

Non-party MRBD licensed to Greenbax a banking platform that included an online banking portal that allowed the end customers to request outgoing wires, schedule ACH payments, receive payments, and settle checks for account reconciliation. (*Id*., ¶¶ 12, 15.)

Plaintiff was the custodian of the funds for approximately 200-300 customers who received services using MRBD's banking platform. Plaintiff holds a portion of the funds that belong to the end customers in its NBCU account. The customers, using the MRBD banking platform, processed payments and deposits through NBCU as the sponsor bank which provides money-movement;

---

[2] Unless otherwise stated, the facts set forth herein are taken from Plaintiff's Complaint and are assumed to be true for purposes of this Motion to Dismiss only.
[3] Plaintiff is incorrect. McCormick is not an officer of NBCU.

**NOTICE OF MOTION AND MOTION TO DISMISS COMPLAINT**

NBCU, in turn, remits funds to Plaintiff as custodian for the customers by remitting such funds to Plaintiff's account held at NBCU. (*Id*., ¶¶ 16-17.)

**B.    MRBD Disables the Banking Platform**

In 2023, disputes arose between MRBD and Greenbax regarding amounts allegedly owed by Greenbax to MRBD. On July 26, 2023, MRBD disabled the Greenbax banking platform, such that the end customers could not request outgoing wires, schedule ACH payments to pay vendors, receive payments, or settle checks for account reconciliation. (*Id*., ¶¶ 15, 20-21.)

On July 27, 2023, Call and McCormick sent an email to "some or possibly all of the Greenbax/NBCU customers," stating that there was a "disagreement … with [Greenbax'] technology partner." (*Id*., ¶ 22.) "The email (accurately) advised customers that their funds remained secure, protected, and available." (*Id*.) Plaintiff alleges that in this email Call and McCormick encouraged the customers to contact the commissioner of the NFID and to state that they were being blocked from accessing their funds, and included a sample email template that Plaintiff contends "falsely asserted that [Plaintiff] had refused to provide customers with access to their funds." (*Id*., ¶ 25.) On July 28, Call and McCormick allegedly sent another message to the customers stating that the customers were "'negatively impacted by being shut out of the platform with no access to [their] funds,'" and attaching a link to the NFID's website containing a complaint form and suggested answers to inquiries in the NFID's complaint form. (Dkt. 1 at ¶ 26.) The email requested customers to "'provide as much detail about the harm this action is inflicting on you and your business and tell the regulator you need immediate access to your funds held by [Plaintiff] and include the balance they are holding on your behalf.'" (*Id*.)

Following the July 26, 2023 disabling of the Greenbax platform, the earliest Plaintiff could have processed customer requests to transfer funds would have been July 28, 2023, assuming Plaintiff was provided such requests by July 27, 2023. (*Id*., ¶ 30.)

Plaintiff alleges that on July 27, 2023, NBCU "illegally" withdrew $2,525,565.84 from Plaintiff s account at NBCU. (*Id*., ¶ 28). Plaintiff further alleges that NBCU did not post transactions that were pending when MRBD disabled the Greenbax platform, and that NBCU and Greenbax did not provide banking reconciliations to Plaintiff, precluding Plaintiff from

immediately reconciling and accounting for the exact balances it held for the customers. (*Id*., ¶¶ 31-32.) Nonetheless, Plaintiff requested data from MRBD and completed the process by July 31, 2023. (*Id*., ¶¶ 33-34.) In most instances, Plaintiff was able to assist the customers by transferring assets to a new custodian the same day customers requested that it do so, and beginning on August 3, 2023, Plaintiff provided the customers who had not already transferred their assets with online access to information about their transactions and funds. (*Id*., ¶¶ 28, 31-34.)

Plaintiff alleges that as of the date of its Complaint, 23 customers that were "misled" by Defendants had filed complaints against it with the NFID. Plaintiff further alleges that it received inquiries from customers regarding client information, in two cases on the advice of representatives of non-party Greenbax. (*Id*., ¶ ¶ 35- 42.) Finally, Plaintiff alleges that Call and McCormick filed complaints with the NFID that "purposely failed to mention" that Defendants had not provided transaction and reconciliation information to Plaintiff, and that NBCU had "illegally" withdrawn in excess of $2.5 million from Plaintiff's NBCU account, which were "inaccurate and intended to mislead the NFID." (*Id*., ¶¶ 43-45.)

## III. ALL CLAIMS AGAINST DEFENDANTS MUST BE DISMISSED AS THE COURT LACKS PERSONAL JURISDICTION.

Where, as here, a defendant moves to dismiss a complaint for lack of personal jurisdiction, the plaintiff bears the burden of demonstrating jurisdiction is appropriate. *Dole Food Co., Inc. v. Watts*, 303 F.3d 1104, 1108 (9th Cir. 2002).[4] To survive a motion to dismiss under Rule 12(b)(2), Plaintiff must make a *prima facie* showing of personal jurisdiction over the defendant. *Tuttle v. Funmobile Games, Inc*., No. C07-0983JLR, 2007 U.S. Dist. LEXIS 83005, at *2 (W.D. Wash. 2007). This requires evidence that would support the exercise of jurisdiction. *Id*. at *3. Thus, pure legal conclusions are insufficient. *See id.* Although "uncontroverted allegations in the complaint must be taken as true," a plaintiff cannot meet its burden by "simply rest[ing] on the bare allegations of its complaint." *Schwarzenegger v. Fred Martin Motor Co*., 374 F.3d 797, 800 (9th Cir. 2004); *see also Swartz v. KPMG LLP*, 476 F.3d 756, 766 (9th Cir. 2007). In addition, because personal

---

[4] Unless otherwise noted, case citations omit internal quotation marks, citations, emphases, and/or alterations.

jurisdiction "over each defendant must be established individually," *Seldin v. HSN, Inc.*, 2018 WL 3570308, at *8 (S.D. Cal. July 25, 2018), "[g]eneralized allegations about a group of defendants is insufficient to establish personal jurisdiction," *Pado, Inc. v. SG Trademark Holding Co. LLC*, 2020 WL 1445720, at *5 (C.D. Cal. Mar. 24, 2020).

Where, as here, a defendant provides sworn proof refuting a plaintiff's jurisdictional allegations, the plaintiff is "obligated to come forward with facts, by affidavit or otherwise, supporting personal jurisdiction." *Amba Mktg. Sys., Inc. v. Jobar Int'l Inc.*, 551 F.2d 784, 787 (9th Cir. 1977). A plaintiff cannot "establish jurisdiction by alleging bare jurisdictionally-triggering facts ***without providing some evidence of their existence***." *Bryant v. BNSF Railway Co.*, 2018 WL 5917895, at *2 (C.D. Cal. Apr. 12, 2018) (emphasis added); *see also Axel Holding Co., LLC v. ARB Corp. Ltd.*, 2023 WL 2415265, at *2 (S.D. Cal. Mar. 8, 2023).

Where no applicable federal statute governs personal jurisdiction, the district court applies the law of the state in which it sits. *See Schwarzenegger*, 374 F.3d at 800. Nevada's long-arm jurisdictional statute is coterminous with the limits of constitutional due process. *Catholic Diocese of Green Bay, Inc. v. Doe*, 131 Nev. 246, 249 (2015).. Constitutional due process requires that a non-resident defendant have sufficient "minimum contacts" with the forum state such that exercising personal jurisdiction does not "offend traditional notions of fair play and substantial justice" and is meant to "ensure[] that a defendant will not be haled into a jurisdiction solely as a result of 'random,' 'fortuitous,' or 'attenuated' contacts." *Glencore Grain Rotterdam B.V. v. Shivnath Rai Harnarain Co.*, 284 F.3d 1114, 1123 (9th Cir. 2002). Under the minimum contacts analysis, personal jurisdiction may be either "general (sometimes called 'all-purpose') jurisdiction and specific (sometimes called 'case-linked') jurisdiction." *Bristol-Myers Squibb Co. v. Superior Ct. of Cal., S.F. Cnty.*, 582 U.S. 255, 262 (2017).

Defendants submit that Plaintiff has not—and cannot—make the requisite *prima facie* showing of personal jurisdiction under either analysis. Thus, the Complaint should be dismissed.

Call and McCormick are California residents who do not conduct business in Nevada, and who are only alleged to have sent emails, and potentially filed online complaints. (Dkt. 1 at ¶¶ 3-4, 22, 25-26, 43-45.) Similarly, NBCU is a California entity with all of its offices in Sonoma County,

California. (Dkt. 1 at ¶ 2; Declaration of Chris Call, ¶ 7.) The basis for NBCU's purported contacts are the same as those for Call and McCormick, and in addition, NBCU is alleged to have entered into contracts with Plaintiff. (Dkt.1, at ¶¶ 19, 23, 70.) As detailed below, all of Defendants' alleged conduct emanated from California.

### A. General Jurisdiction Is Lacking

"There are two categories of personal jurisdiction: general jurisdiction and specific jurisdiction." *Southport Lane Equity II, LLC v. Downey*, 177 F. Supp. 3d 1286, 1290 (D. Nev. 2016). Generally, "general jurisdiction exist[s] over a defendant in any state with which the defendant had substantial or continuous and systematic contacts such that the assertion of personal jurisdiction over him would be constitutionally fair even where the claims at issue were unrelated to those contacts." *Id.* at 1291 (quotations omitted).

The standard for establishment of general jurisdiction is objectively difficult to satisfy. Specifically, the inquiry "is whether that [defendant's] 'affiliations with the State are so continuous and systematic as to render [the defendant] essentially at home in the forum State.'" *Id.* (quoting *Daimler AG v. Bauman*, 134 S. Ct. 746, 761 (2014)) (internal quotations omitted).

Here, Call's[5] and McCormick's limited contacts with Nevada are not so continuous and systematic as to render them essentially at home in Nevada. In particular, Call and McCormick are merely alleged to have sent emails and communicated electronically with a Nevada-based regulator. Dkt. 1, ¶¶ 22, 25-26, 43-45.) There is no allegation that Call or McCormick ever visited Nevada to engage in any business dealings, let alone any with Plaintiff. The remote communications emanating from Sonoma, California are the only contacts with Nevada that Plaintiff has alleged. As such, Plaintiff cannot establish general jurisdiction over Call or McCormick. *See Gunn v. Wild*, 771 F. App'x 392 (9th Cir. 2019) ("The district court lacked general personal jurisdiction over Wild because he is not domiciled or otherwise at home in Nevada, notwithstanding his alleged contacts with Nevada.").

---

[5] The analysis is the same for NBCU since it is only through Mr. Call's actions that plaintiff asserts personal jurisdiction over NBCU. The only additional fact as to NBCU is that it entered into contracts with Plaintiff. However, as noted in this Motion, that Agreement expressly requires the application of California law, and requires all action to proceed in Sonoma County, CA.

### B. Specific Jurisdiction Is Also Lacking

"Even where there is no general jurisdiction over a defendant, specific jurisdiction exists when there are sufficient contacts with the forum state such that the assertion of personal jurisdiction 'does not offend traditional notions of fair play and substantial justice.'" *Southport*, 177 F. Supp. 3d at 1291 (quoting *International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)) (internal quotations omitted). Specific jurisdiction is extremely limited. "In contrast to general, all-purpose jurisdiction, specific jurisdiction is confined to adjudication of issues deriving from, or connected with, the very controversy that establishes jurisdiction." *Goodyear Dunlop Tires Ops., S.A. v. Brown*, 564 U.S. 915, 919 (2011).

The Ninth Circuit Court of Appeals developed the following test to determine whether the exercise of specific jurisdiction over a non-resident defendant is appropriate:

(1) The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws;

(2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and

(3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable.

*Boschetto v. Hansing*, 539 F.3d 1011, 1016 (9th Cir. 2008). The plaintiff bears the burden on the first two prongs. *Id.* "The unique burdens placed upon one who must defend oneself in a foreign legal system should have significant weight in assessing the reasonableness of stretching the long arm of personal jurisdiction over national borders." *Core-Vent Corp. v. Nobel Indus. AB*, 11 F.3d 1482, 1488 (9th Cir. 1993). Critically, "if the plaintiff fails at the first step, the jurisdictional inquiry ends and the case must be dismissed." *Boschetto*, 539 F.3d at 1016.

#### 1. Purposeful Availment/Direction

"The Ninth Circuit treats purposeful availment and purposeful direction as separate methods of analysis. Purposeful availment is for suits sounding in contract, whereas purposeful direction is for suits sounding in tort." *Gunn v. Wild*, Case No. 2:17-CV-72 JCM (GWF), 2018 WL 473005, at

*6 (D. Nev. Jan. 18, 2018), *aff'd*, 771 F. App'x 392 (9th Cir. 2019). As Call and McCormick are named only in Plaintiff's tort claims, purposeful direction is the only issue at bar.

### 2. Plaintiff Cannot Demonstrate that Call or McCormick Purposefully Directed Their Allegedly Tortious Acts at Nevada

To satisfy the purposeful direction test, Plaintiff must prove that "the defendant allegedly [] : (1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state." *Brayton Purcell LLP v. Recordon & Recordon*, 606 F.3d 1124, 1128 (9th Cir. 2010).

Here, as set forth in the Complaint, Call's and McCormick's contacts with the forum are alleged to consist of emails and communications with regulators. Dkt. 1, ¶¶ 22, 25-26, 43-45.). These contacts are insufficient to confer specific jurisdiction. Call's conduct was aimed at saving the California credit union he is the CEO of from harm to that credit union in California related to California-based customers. Similarly, McCormick's alleged conduct was aimed at protecting Greenbax and the customers, all of whom are based in California. Remotely communicating with California-based customers, and with Nevada-based regulators can hardly be said to constitute acts expressly aimed at Nevada – let alone acts causing harm that Call or McCormick somehow knew is likely to be suffered in Nevada.

### 3. Plaintiff's Claims Do Not Arise Out of or Relate to Defendants' Forum-Related Activities

"The Ninth Circuit applies a 'but for' test to analyze whether a 'direct nexus exists between those [activities] and the cause of action.'" *Cenegenics LLC v. Gaines*, at *3 (D. Nev. June 12, 2020) (quoting *Fireman's Fund Ins. Co. v. Nation Bank of Coops*., 103 F.3d 888, 894 (9th Cir. 1996)). Accordingly, the court asks "whether [Plaintiff's] claims would have arisen but for the defendants' **activity in Nevada**." *Id.* (emphasis in original).

Here, the crux of Plaintiff's complaints as to Call and McCormick is that they remotely communicated information to NBCU's and/or Greenbax's customers that Plaintiff contends is untrue. (Dkt. 1 at ¶¶ 25, 38, 44). The majority of the customers with whom Call and McCormick are alleged to have communicated are based in California, and all of the emails emanated from

California.  (Call Decl., at ¶5; Declaration of Carole McCormick, at ¶2)  Such allegations, therefore, cannot provide a basis for specific jurisdiction. *See International Inst. of Mgmt. v. Organization for Econ. Coop. & Dev.*, Case No. 2:18-CV-1748 JCM (GWF), 2019 WL 2550313, at *4 (D. Nev. June 20, 2019) ("Defendants allegedly harmed IIM by publishing the 2009 report online, selling a book on Amazon.com, and maintaining a website with the Better Life Index. These acts do not constitute forum-related activities because their only connection to this forum is that IIM coincidentally resides in Nevada."); *Southport*, 177 F. Supp. 3d at 1297 (dismissing claims where "Southport has made no allegations that Drosin has conducted any business in Nevada, or any allegations that its claims arise out of or are related to any of Drosin's forum-related activities, including attendance at the trade show").  Based on this precedent, Plaintiff's tort claims cannot sufficiently arise out of alleged conduct by Defendants that was directed at or related to Nevada, and this Court thereby lacks specific jurisdiction over them.

### 4.   Nevada's Exercise of Jurisdiction Would Be Unreasonable

Since Plaintiff cannot establish minimum contacts, the personal jurisdiction inquiry should end. *Boschetto*, 539 F.3d at 1016 ("if the plaintiff fails at the first step, the jurisdictional inquiry ends and the case must be dismissed."); *Lake v. Lake*, 817 F.2d 1416, 1421 (9th Cir. 1987) (recognizing a forum state's ability to demonstrate specific jurisdiction depends on "the quality and nature of the defendant's contacts with the forum state in relation to the cause of action."). However, even assuming Plaintiff can somehow demonstrate minimum contacts, Nevada's exercise of jurisdiction in this matter would be unreasonable. Courts consider the following factors to determine whether the exercise of jurisdiction would be reasonable: (1) the extent of the defendants' purposeful interjection into the forum state's affairs; (2) the burden on the defendant of defending in the forum; (3) the extent of conflict with the sovereignty of the defendants' state;(4) the forum state's interest in adjudicating the dispute; (5) the most efficient judicial resolution of the controversy; (6) the importance of the forum to the plaintiff's interest in convenient and effective relief; and (7) the existence of an alternative forum. *Menken v. Emm*, 503 F.3d 1050, 1058 (9th Cir. 2007).

Regarding the first factor, and as set forth above in Section III(B)(1), Call and McCormick did not purposefully direct their activities to the forum or purposefully avail themselves of the privilege of doing business with Nevada, so Plaintiff cannot establish that they interjected themselves into Nevada's affairs. *Verbick*, 2021 WL 6804098, at *6 (holding that "an out-of-state defendant sending correspondence to and speaking on the phone with a plaintiff in a forum state is insufficient by itself to establish purposeful availment"); *Southport*, 177 F. Supp. 3d at 1297-98 (annual attendance at CES trade show in Nevada not sufficient to confer personal jurisdiction).

The second factor – the burden on Call and McCormick of defending in the forum – also weighs in their favor. Both Call and McCormick are California residents, not a multimillion-dollar company. Plaintiff, however, holds itself as being a successful financial institution managing millions of dollars. The fact that Call and McCormick are not alleged to have traveled to Nevada even once in relation to any business with Plaintiff, further supports the conclusion that it would be unreasonable to force these California residents to litigate in Nevada. *See Malcolm v. Acrylic Tank Mfg., Inc.*, Case No. 2:17-CV-1108 JCM (PAL), 2018 WL 3997263, at *4 (D. Nev. Aug. 21, 2018) ("Further, litigating in Nevada, where Reynolds does not have a single employee or agent, would unduly burden Reynolds into traveling to a different state to litigate an issue that occurred almost entirely in Scotland and Colorado.").

The existence of an alternative forum also favors Call and McCormick. Indeed, the agreement between NBCU and Plaintiff at issue in this Action requires litigation in Sonoma County, California. (*See* Section III(C).) Similarly, judicial efficiency favors Call and McCormick. Unwilling California based witnesses cannot be compelled to trial in Nevada, and it would be inefficient to coordinate the travel of willing witnesses from California to Nevada. Fed. R. Civ. P. 45(c)(1). This is especially so given that the majority of the customers to whom Plaintiff alleges Call and McCormick directed communications are based in California.

Because a majority of the factors governing the reasonability, or lack thereof, of Nevada jurisdiction over Call and McCormick favor them, Nevada's exercise of jurisdiction in this matter would be unreasonable.

**NOTICE OF MOTION AND MOTION TO DISMISS COMPLAINT**

**C.** **This Action Should Be Dismissed Based On The Contractually Agreed Upon Forum Selection Clause**

This Court is not the proper forum for the Parties to adjudicate their disputes. Although Plaintiff purports to invoke the terms of the NBCU customer agreement (the "Agreement") that governs its account with NBCU in its Complaint, Plaintiff fails to attach the Agreement upon which it bases at least some of its claims. This is likely because Plaintiff knows that this is the improper forum for this dispute. First, the Agreement provides that the disputes shall be governed by California law. (RJN, Ex. A, at ¶ 31). Next, the Agreement contains the following venue provision:

> any legal action regarding this Agreement shall be brought in the county of the Credit Union office where you opened your account. You and we agree to waive any right to trial by jury in any legal proceeding or lawsuit involving the account.

RJN, Ex. A, at ¶ ¶32. Taking these two provisions together, this action is governed by California law, and must be litigated in the Sonoma County Superior Court. It is indisputable that NBCU has no offices in Nevada, and instead, *all* of NBCU's offices are in Sonoma County, California. (Call Decl., at ¶7) Further, it is also indisputable that there are no federal courts in Sonoma County, and thus the only venue that would comport with the terms of the Parties' Agreement is the state Court in Sonoma County. (RJN, Exs. A, at ¶32, B.) As such, dismissal under 12(b)(3) is proper.

**1.** **The Court Should Enforce the Forum Selection Clause And Dismiss The Action Under Rule 12(b)(3).**

The Ninth Circuit has held that a forum-selection clause is an appropriate ground to dismiss an action pursuant to Rule 12(b)(3). *See Argueta v. BancoMexicano, S.A.*, 87 F.3d 320, 324 (9th Cir. 1996) (affirming the district court's decision to dismiss the action based on the presence of a forum-selection clause); *see also Laurel Village Bakery LLC v. Global Payments Direct Inc.*, No. C06-01332 MJJ, 2006 U.S. Dist. LEXIS 73663, at *4 (N.D. Cal. Sept. 25, 2006) (stating that a motion to enforce a forum selection clause is treated as a motion to dismiss for improper venue pursuant to Federal Rule of Civil Procedure 12(b)(3) ). Once venue has been challenged, the burden is on the plaintiff to show that venue is proper. *Koresko v. Realnetworks, Inc.,* 291 F. Supp. 2d 1157, 1160 (E.D. Cal. 2003) (citations omitted).

## 2. The Forum Selection Clause Must Be Enforced Absent a Strong Showing That Enforcement Would Deny Plaintiff Its Day in Court.

Plaintiffs cannot meet the heavy burden, imposed by federal law, of establishing that the forum-selection cause should not be enforced. While the law governing the substantive dispute in this case is that of California, federal law governs the enforcement and interpretation of the contract's forum-selection clause. *See Spradlin v. Lear Siegler Mgmt. Servs., Inc.*, 926 F.2d 865, 867 (9th Cir. 1991); *Manetti-Farrow, Inc. v. Gucci Am., Inc.*, 858 F.2d 509, 513 (9th Cir. 1988); *Koresko*, 291 F. Supp. 2d at 1162. Federal law expresses a strong policy in favor of enforcing forum-selection clauses. Moreover, forum selection clauses are presumptively valid:

> Forum selection clauses are prima facie valid, and are enforceable absent a strong showing by the party opposing the clause that enforcement would be unreasonable or unjust, or that the clause [is] invalid for such reasons as fraud or overreaching. The opposing party has the burden to show that trial in the contractual forum would be so gravely difficult and inconvenient that he will for all practical purposes be deprived of his day in court.

*Manetti-Farrow, Inc., supra* at 514-15.

Plaintiff premised its case on the Agreement and, therefore, Plaintiff is bound by that Agreement's forum selection clause designating California as the proper forum for the disputes at issue. RJN, Ex. A, at ¶32. Indeed, to permit Plaintiff to "change the bargain . . . would completely contradict the policy of enforcing forum selection clauses." *Manetti-Farrow, Inc., supra*, at 515; *see also Butler v. FreeLife Int l, LLC*, 2004 U.S. Dist. LEXIS 29676, at *9 (C.D. Cal. June 16, 2004).

The party resisting enforcement of a forum-selection clause bears a heavy burden. To carry this heavy burden, a plaintiff resisting the choice of forum must prove at least one of the following:

> (1) the inclusion of the clause in the agreement was the product of fraud or overreaching; (2) the party wishing to repudiate the clause would effectively be deprived of his day in court were the clause enforced; and (3) enforcement would contravene a strong public policy of the forum in which suit is brought.

*Murphy v. Schneider National, Inc.*, 362 F.3d 1133, 1140 (9th Cir. 2004) (citations and internal quotations omitted). To establish the unreasonableness of a forum selection clause, a party has a "heavy burden of showing that trial in the chosen forum would be so difficult and inconvenient that

13

CASE NO. 3:23-cv-00444-LRH-CSD

**NOTICE OF MOTION AND MOTION TO DISMISS COMPLAINT**

the party would effectively be denied a meaningful day in court." *Argueta, supra at* 324-25. Plaintiff cannot meet this burden. The case should not proceed in this forum.

### a. The Clause Was Not the Result of Fraud.

Plaintiff cannot show that the forum selection clause of the Agreement was the result of fraud or undue influence. Plaintiff is a sophisticated business actor that can and does choose with whom they enter into contracts. Kylie Ross, Plaintiff's Vice President of Institutional Services, signed the Agreement, indicating Plaintiff's understanding of and its consent to the terms. The venue provision is clearly set forth in the paragraph captioned WAIVER OF TRIAL BY JURY AND AGREEMENT AS TO LOCATION OF LEGAL PROCEEDINGS. The circumstances of this commercial contract bear no indicia of fraud, undue influence or coercion, and the Complaint does not allege any impropriety with respect to the execution of the Agreement.

### b. The Clause Is Neither Unfair Nor Unreasonable.

Nor is there anything unfair or unreasonable about the selection of California as the venue for resolution of the Parties' disputes. Plaintiff may argue that the physical distance from California to Nevada makes litigation in that forum inconvenient, but mere inconvenience to Plaintiff is not enough to render the clause unenforceable. *See Pratt v. Silversea Cruises, Ltd.*, 2005 U.S. Dist. LEXIS 14339, at *11-12 (N.D.Cal. 2005) ("To meet the heavy burden required to overcome the presumption that a forum selection clause is valid, plaintiff must show that it is an *impossibility* for her to try her case, not simply a less convenient or effective means of doing so.") (emphasis added). *See also Manetti-Farrow, Inc., supra*, *Butler, supra* (citing *Contraves Inc. v. McDonnell Douglas Corp.*, 889 F. Supp. 470, 474 (M.D. Fla. 1995). Further, Plaintiff has engaged in extensive business with NBCU and the California-based customers referenced in the Complaint. (Call Decl., at ¶8) Indeed, the majority of the customers for whom Plaintiff acted as custodian are California cannabis-related companies that are California residents. (Call Decl., at ¶5; McCormick Decl. at ¶2.) Accordingly, Plaintiff's likely argument of inconvenience is undermined by the fact that, for its purposes, California is no more convenient than Nevada.

Plaintiff had the opportunity to designate Nevada as the forum for possible litigation when it freely-negotiated the Agreement, but did not. Under these circumstances, Plaintiff cannot show

14  CASE NO. 3:23-cv-00444-LRH-CSD

that the forum selection clause is "so gravely difficult and inconvenient that [it] will for all practical purposes be deprived of [its] day in court." *Argueta, supra*, 87 F.3d at 325.

### c. No Public Policy of Nevada Militates Against Enforcement of The Forum-Selection Clause

A state's public policy is not deemed "strong" enough to defeat a forum-selection clause unless enforcing the clause would override a state statute that *expressly restricts venue to that state*. *See Jones v. GNC Franchising, Inc.*, 211 F.3d 495 (9th Cir. 2000). Plaintiffs have not sued under any laws that expressly restrict venue to Nevada. Indeed, by contractual agreement, California law alone governs this action. Thus, Plaintiffs cannot invoke the "strong public policy" exception.

### d. The Parties Intended All Legal Actions to Proceed in California

Plaintiffs may argue that the language contained in the Agreement is not sufficiently clear to mandate proceeding in the Sonoma County Superior Court, and thus the provision is unenforceable. However, when viewed as a whole, the Agreement evidences the Parties' clear intent to resolve any potential disputes *in Sonoma County, California* and under California law and it is this intent that the Court should now effectuate.

It is indisputable that the Parties intended that California law govern their disputes. (RJN, Ex. A, at ¶31.) It is also indisputable that all of NBCU's offices are in Sonoma County, California. (Call Decl., at ¶7)

Thus, reference in the Agreement to all actions taking place in the County of NBCU's office where the account was opened, demonstrates the Parties' intent to litigate disputes in Sonoma County, California. When viewed together with the Agreement's choice of law provisions mandating the application of California law to the Parties' disputes, there is no question that the Parties clearly intended that the Plaintiff's contract claims be resolved in Sonoma County, California. (RJN, Ex. A, at ¶ 32.) Plaintiff simply cannot meet the heavy burden of establishing that the forum selection provisions should not be enforced and its case therefore should not proceed in this forum. Dismissal pursuant to Rule 12(b)(3) is warranted.

**D.** **Alternatively, This Case Should Be Transferred To The United States District Court For The Northern District Of California.[6]**

Although dismissal is appropriate, the Court may also enforce the forum selection provision by transferring the case to the United States District Court for the Northern District of California pursuant to Title 28 U.S.C. § 1406(a) or 28 U.S.C. § 1404(a). *See Laurel Village, supra* at *5 n.1. The analysis for transfer under both statutes is essentially the same as that discussed above for dismissal. Motions based on 28 U.S.C. § 1406(a), 28 U.S.C. § 1404(a) and Fed. R. Civ. P. 12(b)(3) "are essentially interchangeable, except insofar as a *Section 1406(a)* motion gives the court the option to transfer in lieu of dismissal." *See* 17-111 Moore s Federal Practice - Civil § 111.04.

Ninth Circuit courts have repeatedly held that the presence of a forum-selection clause is "*strong evidence* in support of transfer." *Interline v. Zim Israel Navigation Co. Ltd.,* No. C 00- 0939 SC, 2000 U.S. Dist. LEXIS 10867, at *11 (N.D. Cal. July 27, 2000) (emphasis added). Indeed, where, as here, the parties have specifically negotiated and agreed to a particular venue, "[t]he presence of a forum selection clause is usually 'a *significant factor that figures centrally in the court's calculus*.'" *Fireman s Fund Ins. Co. v. M.V. Dole Ecuador,* No. C-94-3691-CAL ARB, 1995 U.S. Dist. LEXIS 7996, at *2 (N.D. Cal. June 1, 1995) (internal quotation and citation omitted, emphasis added). This is because courts are loath to undermine negotiated commercial contracts:

> Where a choice of forum is made in arm's-length negotiations by experienced and sophisticated businessmen, absent some compelling and countervailing reason, the *forum selection clause should be honored by the parties and enforced by the courts.*

*Vogt-Nem, Inc. v. W. African Shipping Co.,* 263 F. Supp. 2d 1226, 1234 (N.D. Cal. 2002) (emphasis added, citation omitted). Ninth Circuit courts have held that "[w]hile courts normally defer to a plaintiff's choice of forum, such deference is inappropriate where the plaintiff has already freely contractually chosen an appropriate venue . . .[Thus,] the plaintiffs bear the burden of demonstrating why they should not be bound by their contractual choice of forum." *Unisys Corp. v. Access Co.,* 2005 U.S. Dist. LEXIS 31897, at *13 (N.D. Cal. Nov. 23, 2005)*, quoting Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 880 (3rd Cir. 1995).

---

[6] Defendants submit that dismissal is proper because the Agreement calls for litigation in the California State Court and this Court cannot transfer the matter to a State Court.

Thus, just as the Court should dismiss the Complaint under Rule 12(b)(3), the forum selection provision should control if the Court determines to transfer this action pursuant to 28 U.S.C. § 1404(a) and § 1406(a). Because the parties themselves agreed to a California forum, a court must deem all factors relating to the private interests of the parties (such as the "relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses; possibility of view of premises, if view would be appropriate to the action; and all other practical problems that make trial of a case easy, expeditious and inexpensive") as weighing "entirely in favor of the preselected forum." *Sun v. Advanced China Healthcare, Inc.*, 901 F.3d 1081, 1087-1088 (9th Cir., 2018) (quoting *Atl. Marine Const. Co. v. U.S. Dist. Court for W. Dist. of Tex.*, 571 U.S. 49, 64, 62n. 6).

Additionally, California is an adequate alternative forum. "Generally, an alternative forum is available where the defendant is amenable to service of process and the forum provides some remedy for the wrong at issue." *See Tuazon v. R.J. Reynolds Tobacco Co.,* 433 F.3d 1163, 1178 (9th Cir. 2006) (citations and quotations omitted). Both requirements are met here. Defendants are already subject to the jurisdiction of the California Courts, and where a defendant is already subject to the jurisdiction of another state, the adequacy of an alternative forum is typically met. *See Lockman Found v. Evangelical All Mission,* 930 F.2d 764, 768 (9th Cir. 1991).)

Here, Defendants, all of whom are California residents that conduct business in California, are subject to the California court's jurisdiction. Furthermore, the Complaint focuses on the California entity Greenbax, the majority owner of which is NBCU, and customers, the majority of whom are California-based and none of which are Nevada based. (Dkt. 1 at ¶ 14; Call Decl. at ¶5; McCormick Decl. at ¶2.) The claims at issue surround alleged calls and emails purportedly made from California, by California residents, in connection with California-based customers. As such, California is an adequate alternative forum.

Further, California is an adequate alternative forum because Plaintiff can seek redress of its claims there. The Agreement at issue provides that California law shall apply. (RJN, Ex. A, at ¶ 31). Therefore, there are no fewer remedies available in California. *See Creative Tech., Ltd. V. Aztech Sys. PTE,* 61 F.3d 696, 702 (9th Cir. 1995); *see also Tuazon,* 433 F.3d at 1178.

Indeed, private and public interest factors favor a Californian forum. *See Lueck v. Sundstrand Corp.,* 236 F.3d 1137, 1142 (9th Cir. 2001). First, NBCU is a California credit union. (Call Decl., at ¶1.) Call and McCormick both reside in California, and key witnesses reside in California. (Call Decl., at ¶¶5-6; McCormick Decl., at ¶¶2-3.) Indeed, it is to these non-Nevada witnesses to whom Plaintiff alleges the communications at issue were directed. (Call Decl., at ¶5; McCormick Decl., at ¶2.) Further, Defendants' access to physical evidence and other sources of proof are in California, and the events giving rise to this lawsuit are alleged to have emanated from California. (Dkt. 1 at ¶¶ 22, 25-26, 43-45.) Moreover, unwilling non-Nevda based witnesses cannot be compelled to trial in Nevada and if they came willingly it would be costly. *See* Fed. R. Civ. P. 45(c)(1). In addition, a California judgment would be enforceable against Defendants because they are based there.

The public interest factors likewise favor dismissal. *See Loya v. Starwood Hotels & Resorts Worldwide, Inc.*, 583 F.3d 656, 664 (9th Cir. 2009). First, the District of Nevada has an extremely busy docket. *See, e.g., Van Assche v. Nevada*, 2019 WL 2440078, at *1 (D. Nev. June 11, 2019) ("[T]he U.S. Court for the District of Nevada has a tremendously busy docket. Most motions take many months to work their way through to a decision."). Second, the jury would be determining issues involving facts occurring almost entirely in California. Third, there is no local interest in having the controversy resolved in the District of Nevada as this case involves residents of California allegedly making calls, emails, and a transaction from California, in connection with California-based customers. (Dkt. 1 at ¶¶ 22, 25-26, 28, 39-41, 43-45.) Furthermore, the Agreement states that California law applies and that California state court is the proper venue. There can be no dispute that California courts are equipped to determine the claims at issue and apply the applicable laws to the facts of the case.

## IV. PLAINTIFF FAILS TO STATE ANY CLAIMS.

To survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a plaintiff must allege facts that, if taken as true, demonstrate "a plausible entitlement to relief." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 559 (2007). This means a plaintiff must allege facts that allow the Court to "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Caviness v.*

18

**CASE NO. 3:23-cv-00444-LRH-CSD**

*Horizon Community Learning Ctr., Inc.*, 590 F.3d 806, 812 (9th Cir. 2010). A complaint fails to plead a "plausible" claim and must be dismissed if the facts alleged are "merely consistent with a defendant's liability." *Iqbal*, 556 U.S. at 678. As the Ninth Circuit has summarized,

> [f]irst, to be entitled to the presumption of truth, allegations in a complaint or counterclaim may not simply recite the elements of a cause of action, but must contain allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively. Second, the factual allegations that are taken as true must plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subject to the expense of discovery and continued litigation.

*Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011). When performing the two-step approach set forth above, conclusions "couched as [ ] factual allegation[s]" are not entitled to a presumption of truth on a motion to dismiss. *Twombly*, 550 U.S. at 555 (internal quotations omitted); *Caviness*, *supra*, 590 F.3d at 812). "When the claims in a complaint have not crossed the line from conceivable to plausible, the complaint must be dismissed." *Twombly*, 550 U.S. at 570.)

**A.    Plaintiff's First Cause of Action for "Business Defamation" Fails**

Plaintiff purports to allege a claim for "defamation per se." The facts it pleads do not support such a claim. A claim for defamation per se generally serves to protect the reputation of an individual. *Clark County Sch. Dist. v. Virtual Educ. Software, Inc.*, 213 P.3d 496, 504 (Nev. 2009). Despite plaintiff's conclusory allegation that its principal, David Park (who is not a plaintiff in this action) was defamed (Dkt. 1 at ¶ 45), there is not a single allegation of any communication mentioning Mr. Park in any way. The claim for "defamation per se" is unsupported by the facts.

Rather where, as here, the alleged communications at issue concern services provided by a business entity, the plaintiff seeks to redress injury to economic interests. In such a case, the action is not for defamation per se, but is one for business disparagement. "Unlike defamation per se, communications constituting business disparagement are not directed at an individual's personal reputation; rather, they are injurious falsehoods that interfere with the plaintiff's business and are aimed at the business's goods or services." *Clark*, *supra*, 125 Nev. 374, 385.

To maintain a claim for business disparagement, the plaintiff must plead facts setting forth: "(1) a false and disparaging statement, (2) the unprivileged publication by the defendant, (3) malice, and (4) special damages." *Clark*, *supra*, 125 Nev. 374, 386 (footnotes and citations omitted).

**NOTICE OF MOTION AND MOTION TO DISMISS COMPLAINT**

Plaintiff fails to allege a claim upon which relief can be granted. Plaintiff fails to allege any "false" statements. Plaintiff concedes that "[f]ollowing the July 26, 2023 disabling of the Greenbax platform, the earliest [Plaintiff] could have processed Greenbax client requests to transfer funds would have been July 28, 2023, assuming [Plaintiff] was provided such requests by July 27, 2023." (Dkt. 1 at ¶ 30.) Hence the alleged communications by Call and McCormick on July 27 and 28, stating that customers were being blocked from access to their funds (Dkt. at ¶¶ 25, 26, 43, 45), were not false. While Plaintiff claims that Call and McCormick overstated the amount of funds held in Plaintiff's customer account (Dkt. 1 at ¶ 44), there is no allegation that this harmed Plaintiff.

Plaintiff moreover fails to allege any basis for special damages. Special damages are usually synonymous with pecuniary loss. *Sherman v. Smead*, 527 P.3d 973, *6 n. 5 (Nev. Ct. App. 2023) (citing 25 C.J.S. Damages § 4 (2022)). A cause of action for business disparagement requires that the plaintiff set forth evidence proving economic loss that is attributable to the defendant's disparaging remarks. If the plaintiff cannot show the loss of specific sums attributable to the disparaging statement, the plaintiff may show evidence of a general decline of business; however, the general decline of business must be the result of the disparaging statements and the plaintiff must eliminate other potential causes. *Clark*, *supra*, 125 Nev. 374, 386-387. Plaintiff makes no allegation of any loss, much less any such loss caused by allegedly defamatory statements.[7] Plaintiff's First Cause of Action should be dismissed.

**B. Plaintiff's Second Cause of Action for Deceptive Trade Practices Fails**

Plaintiff's Second Cause of Action for Deceptive Trade Practices suffers from the same basic pleading deficiencies that doom its First Cause of Action. Its claim rests on the conclusory and non-specific allegations that Defendants "made false representations to customers as described above in violation of NRS 598.0915(15)" (Dkt. 1 at ¶ 54) and "disparaged the services [Plaintiff] provides by making false and/or misleading representations of fact" (Dkt. 1 at ¶ 55), without identifying the purportedly "false" representations or the particular customers to whom the representations were allegedly made.

---

[7] Plaintiff states that it required "significant time and expense" to obtain data to reconcile accounts. There is no allegation that this was caused by allegedly defamatory statements. (Dkt. 1 at ¶ 33.)

Where, as here, a claim is based upon allegedly fraudulent conduct—even if fraud is not a necessary element of the claim—the claim is said to be "grounded in fraud" or to "sound in fraud," and the pleading of that claim must satisfy the Fed. R. Civ. P. Rule 9(b) particularity requirements. If Plaintiff alleges some fraudulent and some non-fraudulent conduct, if particular averments of fraud are insufficiently pled under Rule 9(b), the court should "disregard" those averments, or "strip "them from the claim. *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1103-1104 (9th Cir., 2002).

Under Fed. R. Civ. P. 9(b), a party alleging fraud must state with particularity the circumstances constituting fraud. Rule 9(b) demands that the circumstances constituting the alleged fraud "be specific enough to give defendants notice of the particular misconduct so that they can defend against the charge and not just deny that they have done anything wrong." *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1124 (9th Cir. 2009) (internal quotations omitted). Fraud must be pled with particularity by providing "the time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentation." *Schreiber Distrib. Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393, 1401 (9th Cir. 1986). This particularity requirement applies to state-law causes of action. See *Vess*, 317 F.3d at 1103.

The specificity requirements of Rule 9(b) apply to claims under Nevada's Deceptive Trade Practices Act when such claims are grounded in allegations of fraud.[8] *Ebeid ex rel. U.S. v. Lungwitz*, 616 F.3d 993, 998 (9th Cir. 2010) (quotation omitted).

Plaintiff fails to meet the specificity requirements of Rule 9(b). As noted above, Plaintiff utterly fails to specify what purported "false representations" it relies upon. The Second Cause of Action fails to state a claim upon which relief can be granted, and should be dismissed.

**C.     Plaintiff's Third Cause of Action for Fraud and Fourth Cause of Action for Negligent Misrepresentation Fail**

To maintain a claim for fraud, a plaintiff must plead *specific facts* that show: (1) a misrepresentation; (2) knowingly made by the defendant; (3) with the intent by the defendant to induce reliance; (4) plaintiff's actual and justifiable reliance, and (5) resulting damage to plaintiff.

---

[8] Plaintiff alleges a statutory claim under Nevada law, however, pursuant to the Agreement, California law applies. (RJN, Ex. A, at ¶ 31.) The same requirement for pleading fraud with specificity would apply to the California equivalent to Nevada's Deceptive Trade Practices Act.

*South Tahoe Gas Co. v. Hoffman Land Improvement, Inc.*, 25 Cal. App. 3d 750, 765 (1972); *see also Bulbman, Inc. v. Nevada Bell*, 825 P.2d 588, 592 (Nev. 1992). Negligent misrepresentation varies only in the third element – instead Plaintiff must plead specific facts to demonstrate that Defendant had no reasonable grounds for believing the alleged misrepresentation to be true. *South Tahoe Gas Co.*, 25 Cal. App. 3d at 764; *see also Barmettler v. Reno Air, Inc.*, 956 P.2d 1382, 1387 (Nev., 1998).

Here, under either California or Nevada law, Plaintiff has not alleged, and cannot truthfully allege, at least two of the elements of a fraud claim. First, Plaintiff does not allege, and cannot allege, that any representations were made to Plaintiff, or that any purported representations were made with the intent to induce reliance by Plaintiff. To the contrary, Plaintiff bases its claim on alleged representations to others (Dkt. 1 at ¶ 58), and alleges that "defendants intended to induce customers to act or refrain from acting based on the misrepresentations." (Dkt. 1 at ¶ 60). Given Plaintiff's express allegations, Plaintiff cannot allege that it relied on any purported representations, or that it suffered any damages as a result of such reliance.

Plaintiffs' fraud claim fails and should be dismissed with prejudice.

**D.  Plaintiff's Fifth Cause of Action for Unjust Enrichment Fails**

Plaintiff's own allegations also demonstrate that its Fifth Cause of Action for unjust enrichment fails as a matter of law. As an initial matter, California "[c]ourts consistently have held that unjust enrichment is not a proper cause of action under California law." *In re Sony Gaming Networks & Customer Data Sec. Breach Litig.*, 903 F. Supp. 2d 942, 973-74 (S.D. Cal. 2012). Under Nevada law, unjust enrichment occurs whenever "a person has and retains a benefit which in equity and good conscience belongs to another." *Mainor v. Nault*, 101 P.3d 308, 317 (Nev. 2004); *see also Asphalt Prods. Corp. v. All Star Ready Mix, Inc.*, 898 P.2d 699, 701 (Nev. 1995).

Here Plaintiff bases its claim on the allegation that NBCU removed roughly $2.5 million from Plaintiff's account at NBCU. (Dkt. 1 at ¶ 67.) However, Plaintiff expressly alleges that the funds in that account did ***not*** belong to Plaintiff. Rather, Plaintiff alleges that Plaintiff is the custodian of the funds for certain of the customers, and that "[Plaintiff] holds in custody in its NBCU account a portion of these funds that ***belong to Greenbax customers.***" (Dkt. 1 at ¶ 16.)

Plaintiff admits that the funds did not belong to it, and therefore cannot truthfully allege that the funds should be "reimbursed" to it (Dkt. 1 at ¶ 69). Its unjust enrichment claim, therefore, fails.

The claim further fails because Plaintiff alleges that the account at issue is controlled by express contractual agreements. Plaintiff alleges that between 2021 and 2023, Plaintiff and NBCU "entered into a series of agreements and executed various documents establishing a banking relationship between them," pursuant to which Plaintiff holds its account with NBCU. (Dkt. 1 at ¶ 11). A plaintiff cannot "make a claim for unjust enrichment with respect to actions that are controlled by a contract to which Plaintiff is a party." *Thomas v. Wachovia Mortgage, FSB*, 2011 WL 3159169, *6 (D. Nev. July 25, 2011); see also *LeasePartners Corp. v. Brooks Trust*, 942 P.2d 182, 187 (Nev. 1997). Plaintiff's unjust enrichment claims fails for this independent reason as well.

Finally, Plaintiff fails to allege facts that demonstrate that NBCU's actions were unjust or inequitable. Plaintiff fails to allege the terms of the allegedly controlling contracts. Its conclusory allegations that NBCU "illegally" withdrew the funds, and that "it would be inequitable and unjust for NBCU to retain the benefit" are the sort of conclusory allegations of law and unwarranted inferences that are insufficient to defeat a motion to dismiss. *Caviness*, 590 F.3d at 812.

Plaintiffs' claim for unjust enrichment fails, and should be dismissed with prejudice.

**E. Plaintiff's Sixth Cause of Action for Breach of Contract Fails**

Plaintiff's claim for breach of contract utterly fails to provide enough detail to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." Fed. R. Civ. P. 8(a)(2); *Twombly*, 550 U.S. at 555. The elements of a breach of contract claim are: (1) a valid contract, (2) that the plaintiff performed or was excused from performance, (3) the defendant failed to perform, and (4) the plaintiff suffered economic damage as a result of the defendant's breach. See *Acoustics, Inc. v. Trepte Construction Co.* (1971) 14 Cal.App.3d 887, 913; *see also Story-McPherson v. Bank of Am., N.A.*, 2012 WL 2000693, at *4 (D. Nev. June 5, 2012). Where, as here, a plaintiff fails to allege the terms of the contract that was purportedly breached, the defendant does not have sufficient notice to defend itself, and the claim must be dismissed. *See*, *e.g.*, *Weddington Productions, Inc. v. Flick* (1998) 60 Cal.App.4th 793, 811; *Gowen v. Tiltware LLC*, 2009 WL 1441653, at **3–4 (D. Nev. May 19, 2009), aff'd, 437 F. App'x 528 (9th Cir. 2011).

Plaintiff alleges that Plaintiff and NBCU "entered into a series of agreements and executed various documents establishing a banking relationship between them," pursuant to which Plaintiff holds its account with NBCU. (Dkt. 1 at ¶ 11) It further alleges that "[Plaintiff] and NBCU are parties to various agreements resulting in [Plaintiff] acting as custodian of Greenbax customer funds," (Dkt. 1 at ¶ 70), and that "NBCU breached the terms of the various agreements between it and Plaintiff by removing funds from [Plaintiff's] account." (Dkt.1 at 72.) Plaintiff fails to identify a contract, or a single provision of any of the "various agreements" that NBCU allegedly breached. Plaintiff's allegations are inadequate and the claim should be dismissed.

**F.     Plaintiff's Seventh Cause of Action for Conversion Fails**

Plaintiff's own allegations are fatal to its conversion claim. The elements of conversion are "(1) the plaintiff's ownership or right to possession of the property; (2) the defendant's conversion by a wrongful act or disposition of property rights; and (3) damages." (*Lee v. Hanley* (2015) 61 Cal.4th 1225, 1240; *see* California Civil Jury Instruction 2100; *see also Evans v. Dean Witter Reynolds, Inc.*, 116 Nev. 598, 606, 5 P.3d 1043, 1048 (2000)). Plaintiff again bases its claim on the allegation that NBCU removed roughly $2.5 million from Plaintiff's account at NBCU. (Dkt. 1 at, ¶ 74.) Plaintiff explicitly admits that Plaintiff "holds in custody in its NBCU account a portion of these funds that ***belong to Greenbax customers.***" (Dkt. 1 at ¶ 16.)(Emphasis added.) As Plaintiff admits that the funds did not belong to it, Plaintiff cannot truthfully allege that NBCU "engaged in one or more distinct acts of dominion wrongfully exerted over [Plaintiff's] property when it removed roughly $2.5 million from [Plaintiff's] account." (Dkt. 1 at ¶ 74.)

Further, "[a] party that has a contractual expectation of payment cannot duplicate a breach of contract claim with a conversion claim." *Nev. State Educ. Ass'n v. Clark Cty. Educ. Ass'n* 482 P.3d 665, 668 (Nev. 2021); *see also Voris v. Lampert* (2019) 7 Cal. 5th 1141, 1157, 446 P.3d 284, 295 (Cal. 2019). As Plaintiff asserts a right to the funds under "various agreements," it may not duplicate that claim by alleging conversion. Plaintiff's conversion claim should be dismissed.

DATED: October 2, 2023                                    CAMPBELL & WILLIAMS

By:     */s/ **Samuel R. Mirkovich***
        Samuel R. Mirkovich

24

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that service of the foregoing **Motion to Dismiss Complaint for Lack of Personal Jurisdiction, Improper Venue, and Failure to State a Claim Upon Which Relief May Be Granted** was served on the 2nd day of October, 2023 via the Court's CM/ECF electronic filing system addressed to all parties on the e-service list.

/s/ ***Crystal B. Balaoro***
An employee of Campbell & Williams
