MARK J. CONNOT (10010)
KEVIN M. SUTEHALL (9437)
**FOX ROTHSCHILD LLP**
1980 Festival Plaza Drive, #700
Las Vegas, Nevada 89135
(702) 262-6899 tel
(702) 597-5503 fax
mconnot@foxrothschild.com
ksutehall@foxrothschild.com
*Attorneys for Plaintiff Austin Capital Trust Company LLC*

# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

| | |
|---|---|
| AUSTIN CAPITAL TRUST COMPANY LLC,<br><br>                  Plaintiff,<br><br>        v.<br><br>NORTH BAY CREDIT UNION; CHRIS CALL; CAROLE McCORMICK; DOES I through X, inclusive; and ROE BUSINESS ENTITIES I through X, inclusive,<br><br>                  Defendants. | Case No.:  3:23-cv-00444-LRH-CSD<br><br><br>**FIRST AMENDED COMPLAINT** |

Plaintiff Austin Capital Trust Company LLC complains against Defendants North Bay Credit Union, Chris Call, and Carole McCormick, and in support thereof, states and alleges as follows:

## PARTIES/JURISDICTION/VENUE

1.      Plaintiff Austin Capital Trust Company LLC ("Plaintiff" or "ACTC") is a Nevada limited liability company.  ACTC is a chartered non-depository trust company subject to oversight by the Nevada Financial Institutions Division ("NFID").

2.      Upon information and belief, Defendant North Bay Credit Union ("NBCU") is a California non-profit corporation.  Also upon information and belief, NBCU is a chartered California credit union subject to oversight by the California Department of Financial Protection and Innovation.

150327935

3.      Upon information and belief, defendant Chris Call ("Call") is a California resident. Call is believed to be the Chief Executive Officer of NBCU.

4.      Upon information and belief, defendant Carole McCormick ("McCormick", and together with NBCU and Call, "Defendants") is a California resident.  Ms. McCormick is, or was at the applicable dates, believed to be the President of Higher Growth LLC d/b/a Greenbax Marketplace, Inc. ("Greenbax") and an officer of NBCU.  For example, McCormick executed the Business Account Application (defined and described below) with ACTC in her capacity as "Chief Compliance Officer" of NBCU.

5.      Defendants NBCU, Call, and McCormick purposefully availed themselves to the specific jurisdiction of this Court pursuant to the actions described below.  This Court may exercise personal jurisdiction over Defendants because each has at least minimum contacts with Nevada such that the exercise of jurisdiction does not offend traditional notions of fair play and substantial justice.

6.      As described in detail below, Defendants subjected themselves to this Court's specific personal jurisdiction by sending emails to Greenbax's (defined below) customers containing false and disparaging statements regarding ACTC, a Nevada entity.  In addition, Defendants subjected themselves to this Court's specific personal jurisdiction by directing customers to file complaints with ACTC's Nevada regulator, the NFID, by doing so themselves.

7.      Additionally, and as applicable to the contract-based claims below, NBCU agreed to submit to the jurisdiction of this Court and to accept service of process to vest personal jurisdiction over it before this Court pursuant to subsection 10.8 of the Custodial Agreement (defined and described below) between it and ACTC.

8.      Venue is proper in this Court pursuant to 28 U.S.C. § 1391 and 18 U.S.C. § 1965 because Defendants or their agents have targeted ACTC through the conduct described below, including by sending emails to Greenbax's customers containing false and disparaging statements regarding ACTC, a Nevada entity, by directing customers to file complaints with ACTC's Nevada regulator, the NFID, and by doing so themselves, thereby causing harm to Plaintiff in Nevada, where Plaintiff is a citizen.

150327935

9.      Additionally, pursuant to subsection 10.8 of the Custodial Agreement between it and ACTC, NBCU agreed that "the United States District Court located in Reno, Nevada will have sole and exclusive jurisdiction over any lawsuit or other judicial proceeding relating to or arising from this Agreement" and that this Court (or the Nevada state courts in the Country of Washoe in the event this Court lacks jurisdiction over a dispute) "will have proper venue for any such lawsuit or judicial proceeding, and the parties waive any objection to venue or their convenience as a forum."

10.      Pursuant to the Business Account Application and the various instruments encompassed therein, including the Agreement Signatures document contained at pages 12-13 of the Business Account Application, NBCU agreed that "this Austin Capital Custodial Application and Agreement are governed by the of the State of Nevada without reference to its conflict of laws provision.  Any dispute or claim arising or relating to this Austin Capital Custodial Application and Agreement shall be brought exclusively in Nevada and the parties consent to jurisdiction of such courts."   Additionally, subsection 10.8 of the Custodial Agreement provides that "this Agreement will be construed, regulated, and administered under the laws of the United States or State of Nevada, as applicable, without regard to principles regarding conflicts of law."

11.      This Court has diversity jurisdiction over this matter pursuant to 28 U.S.C. §1332. Specifically, the parties are citizens of different states and the amount in controversy exceeds $75,000 exclusive of interest and costs.

12.      The true names and capacities, whether individual, corporate, associate, or otherwise, of defendants Does I through X and Roe Business Entities I through X, inclusive, are unknown to Plaintiff, who therefore sues these defendants by such fictitious names.  Plaintiff is informed and believes and thereon alleges that each of the defendants designated herein as Does and Roe Corporations are responsible in some manner for the events and happenings herein referred to and caused injury and damages proximately thereby to Plaintiff as herein alleged, including, but not limited to, orchestrating complaints against ACTC based on false pretenses, illegally seizing ACTC's funds, attempting to copy intellectual property, and other bad acts. Plaintiff will ask leave of this Court to amend this complaint to insert the true names and capacities

3

150327935

of defendants Does and Roe Corporations, including, when the same have been ascertained by Plaintiff, together with appropriate charging allegations, and adjoin such defendants in this action.

**FACTUAL ALLEGATIONS**

13.    Banking options are limited for businesses operating in the cannabis industry. Financial institutions like NBCU market their services to cannabis businesses.  To do so in compliance with federal and state law, however, NBCU and similar institutions associate with third parties.

14.    ACTC is a trust company that is, among other things, a custodian of funds belonging to businesses operating in the cannabis field.

15.    On or about May 2, 2021, NBCU executed a Business Account Application with ACTC (the "Business Account Application").  ACTC provided NBCU with the Business Account Application and Custodial Agreement, and, without objection, NBCU agreed to its terms.  Call and McCormick electronically signed the Business Account Application on behalf of NBCU.  The Business Account Application is 28 pages long and contains various subparts, all of which NBCU agreed to.

16.    By signing the Business Account Application, NBCU affirmed that it had "received, read, under[stood], and agree[d] to the current terms of the [ACTC] Custodial Account Application, the Custodial Agreement, and this Agreement. . ."  Business Account Application at pg. 12 of 28.

17.    Pages 21 to 28 of the Business Account Application are entitled "Custodial Agreement."  The Business Account Application and the Custodial Agreement governs the relationship between ACTC and NBCU, including ACTC's duties as custodian and NBCU's duties as ACTC's client.

18.    ACTC holds an account with NBCU, and funds deposited in that account are subject to NBCU's duties under the Business Account Application and Custodial Agreement.

19.    Non-party MRB Direct, Inc. ("MRBD") is a Nevada corporation.  MRBD is a service provider of a banking platform specific to businesses in the cannabis industry.

4

150327935

20. MRBD and ACTC operate independently from each other.

21. NBCU is the majority owner of Greenbax. McCormick is the President of Greenbax.

22. MRBD and Greenbax are or were parties to a Master Subscription Agreement ("MSA"). Pursuant to the MSA, MRBD promised to provide a license to a banking platform which includes an online banking portal that allows Greenbax clients to request outgoing wires, schedule ACH payments to pay vendors or receive payments, and to settle checks for account reconciliation.

23. ACTC is or was the custodian of the funds for approximately 200-300 Greenbax customers who receive services using MRBD's banking platform. ACTC holds or held in custody in its NBCU account a portion of these funds that belong to Greenbax customers. NBCU acted as the bank sponsor to Greenbax.

24. The funds that ACTC holds or held as custodian for Greenbax customers were subject to the terms of the Business Account Application and its Custodial Agreement.

25. Greenbax customers, using the MRBD banking platform, processed payments and deposits through NBCU as the "sponsor bank", which provided money-movement. NBCU, in turn, remitted funds to ACTC as custodian.

26. ACTC lacks information that would enable it to account for the funds held in its custodial account on a customer-by-customer basis. ACTC holds or held the funds in custody until it received instructions from someone, including Greenbax or NBCU, to do something with those funds.

27. Greenbax has or had the responsibility to provide its customers with access to their respective accounts, including the ability for clients to make transfer requests.

28. Additionally, NBCU has or previously had deposited funds with ACTC.

29. In 2023, disputes wholly unrelated to ACTC arose between MRBD and Greenbax relating to Greenbax's failure to pay outstanding amounts to MRBD.

30. On or about July 26, 2023, MRBD disabled the Greenbax platform as a result of Greenbax's failure to pay for MRBD's services.

5

150327935

31. On July 27, 2023, at 9:47 a.m., Call and McCormick sent an email to some or possibly all of the Greenbax/NBCU customers. The email header of the email contained the logos of both NBCU and Greenbax and began with "Dear NBCU/Greenbax Marketplace Customers." In the email, Call and McCormick stated that it was engaged in a "disagreement . . . with our technology partner." *Id.* The email included a link that authorized Greenbax customers to authorize a transfer of funds from the Greenbax platform to the customers' NBCU accounts, stating that "this will allow you to gain immediate access back to your funds."

32. Later on July 27, 2023, ACTC sent an email to the Greenbax customers advising those customers of the suspension of the Greenbax platform while assuring the customers that they had unrestricted access to their funds. The email confirmed that the customers could maintain their Greenbax accounts, open a new account with ACTC, or transfer the funds to another custodian.

33. Thereafter, Greenbax, Call, McCormick, and NBCU engaged in a pattern of actions intended to harm Greenbax's customers, MRBD, and ACTC. Among other things, they sent multiple malicious and defamatory emails to the Greenbax customers on July 27, 2023 and July 28, 2023.

34. Call and McCormick sent a second email to "our North Bay/Greenbax Customers" at or about 6:09 p.m. on July 27th. A true and correct copy of this email is attached to this First Amended Complaint as Exhibit 1 and is incorporated in its entirety by reference. In the email, Call and McCormick accused ACTC and MRBD of "an intentional subterfuge meant to create panic." Call and McCormick also described the parties' dispute, asserting that "Greenbax Marketplace paid a large percentage of the disputed amount to prevent the platform from being deactivated" and referenced confidential proceedings that had been initiated in violation of the MSA. Call and McCormick encouraged the customers to demand that ACTC send the funds to NBCU or another institution. Finally, in an attempt to pressure ACTC and MRBD, Call and McCormick encouraged all of Greenbax's customers to contact ACTC's regulator, the Commissioner of the NFID, and to claim that "you are being blocked from accessing your funds." The email included a ghost written, "sample email template to send to the Nevada Commissioner

6

150327935

[the NFID]", which message falsely asserted that ACTC had refused to provide the customers with access to their funds.

35. Call's and McCormick's statements in email sent at or about 6:09 p.m. on July 27th were false and/or deceptive. For example, ACTC did not create "an intentional subterfuge meant to create panic," did not block any Greenbax customer from accessing their funds, and did nothing that merited complaints be filed against it with the NFID.

36. Call and McCormick sent yet another message to Greenbax customers the following morning, July 28th. In this third email in less than two days, Call and McCormick asserted that Greenbax customers were "negatively impacted by being shut out of the platform with no access to our funds." Call and McCormick stated that "we urge you to fill out the [complaint] form by clicking the bottom below", and the email embedded a link to the NFID's website containing the complaint form. The email provided detailed instructions for Greenbax customers to file a complaint against ACTC with the NFID, and contained answers to inquiries within the NFID's complaint form, directing customers to "provide as much detail about the harm this action is inflicting on you and your business and tell the regulator you need immediate access to your funds held by [ACTC] and include the balance they are holding on your behalf."

37. Numerous statements in the foregoing July 28th email were false and/or deceptive. It is untrue that Greenbax customers were "being shut out of the platform with no access to [their] funds." If any of Greenbax customers lacked immediate access to funds relating to uncleared transactions, it was solely because NBCU and Greenbax refused to timely provide requisite information to ACTC, as described more fully below. Additionally, ACTC did not undertake any acts or omissions intended to, or resulting in, any harm to any Greenbax customers, and took no actions that merited complaints be filed against it to the NFID.

38. ACTC historically relied on daily reports from NBCU and Greenbax to reconcile amounts held in its custodial account.

39. Following the July 26, 2023 disabling of the Greenbax platform, the earliest ACTC could have processed Greenbax client requests to transfer funds would have been July 28, 2023, assuming ACTC was provided such requests by July 27, 2023.

150327935

40.     In an effort to undercut both ACTC and the Greenbax customers, NBCU failed to post transactions that were pending when the Greenbax platform was disabled.  Had NBCU posted the pending transactions, ACTC was ready and able to immediately process those transactions.  NBCU and Greenbax also failed to provide banking reconciliations to ACTC to allow it to account for and securely transfer the funds for customers.

41.     By refusing to provide these reports, NBCU and Greenbax intentionally deprived ACTC of the ability to maintain the integrity and accuracy of the client records.  Had they done so, consistent with NBCU's obligations as bank sponsor, ACTC could have immediately transferred funds to Greenbax's clients.  By intentionally depriving ACTC of this information, NBCU precluded ACTC from being able to immediately reconcile and account for the exact balances it held for Greenbax customers.

42.     Therefore, any delay in ACTC's ability to provide Greenbax clients with funds was a direct result of NBCU and Greenbax refusing to supply updated information to ACTC.  As such, the statements NBCU, Call, and McCormick made to the Greenbax customers about lack of access to their funds, and the instructions that NBCU, Call, and McCormick provided to Greenbax customers to submit complaints to the NFID, were the result of NBCU's and Greenbax's misconduct.  In other words, NBCU, Call, and McCormick manufactured the very issue that they then used to disparage ACTC as well as to direct the Greenbax customers to complain about with the NFID by depriving ACTC of necessary information.

43.     Notwithstanding NCBU's intentional misconduct, ACTC took extraordinary steps to request data from Greenbax's former technology provider so it could attempt to reconcile the Greenbax accounts.  ACTC's actions required significant expense and time and would not have been necessary but for NCBU and Greenbax refusing to provide routine data to ACTC.

44.     With the help of the former technology provider, ACTC completed this process to the best of its ability by July 31, 2023, within two business days of the Greenbax platform being disabled.  In many or most instances, with absolutely no assistance from NBCU, Call, or McCormick, who were in the process of defaming it, ACTC was able to assist the Greenbax customers by transferring assets to a new custodian the same day that those customers requested

8

150327935

that ACTC do so.  Beginning on August 3, 2023, ACTC provided Greenbax clients that had not already transferred their assets elsewhere online access to information about their transaction and funds free of charge.

45.    On July 28, 2023, counsel for ACTC sent a letter to counsel for Greenbax and the Defendants demanding that Defendants cease and desist making defamatory comments about ACTC and that they retract their prior defamatory statements, among other things.  Defendants' counsel responded the same day rejecting the demand, further evidencing Defendants' bad faith.

46.    On or about July 27, 2023, without requesting or receiving authorization from ACTC, NBCU illegally withdrew $2,525,565.84 from ACTC's account at NBCU as the depository institution.

47.    The funds in ACTC's account were owned by Greenbax and/or Greenbax customers, but ACTC was responsible for funds within its account and had custodial rights and obligations with respect to the funds.  NBCU did not disclose the nature of the $2.5+ million withdrawal, making it impossible for ACTC to reconcile funds within its NBCU account.  NCBU refused and failed to account for, or provide an explanation justifying, its removal of the funds from ACTC's account.

48.    On August 3, 2023, ACTC sent a letter to NBCU demanding that, among other things, the $2,525,565.84 be immediately returned to ACTC and that NBCU provide a detailed report as to the basis of the withdrawal.  NBCU failed to satisfy either demand.

49.    Nonetheless, the July 27-28 campaign by Call, McCormick, and NBCU to extort and pressure ACTC and MRBD through regulatory complaints from misled customers succeeded in that many of those customers filed complaints against ACTC.  As of the preparation of this amended complaint, ACTC has received at least 23 complaints filed against it with the NFID.  At least one of those complaints simply cut and pasted McCormick's and Call's ghost-written complaint form and submitted it to the NFID and included McCormick's and Call's instructions in the body of the complaint.

50.    ACTC has suffered reputational harm based on the false and misleading information Defendants provided to Greenbax customers, and is facing dozens of complaints from

9

150327935

customers that NBCU, Call, and McCormick have misled. ACTC is required to respond to each complaint separately and has done so or will do so in the future.

51. On July 31, 2023, Sandy O'Laughlin, Commissioner of the NFID, sent an email to an attorney for ACTC a message stating that the NFID had forwarded to numerous complaints to ACTC and that it required a response to each complaint. The coordinated attack on ACTC has already resulted in roughly 10% of Greenbax's customers filing formal complaints with ACTC's Nevada regulator.

52. Some customers have filed complaints about ACTC that reflect the misinformation that they received from NBCU, Call, and/or McCormick. Some Greenbax's customers do not necessarily understand the division of responsibilities and roles that NCBU, Greenbax, and ACTC play, including, but not limited to, the limitations of ACTC's role and what information it possesses.

53. For example, one client called ACTC and threatened to report ACTC to regulators for allegedly withholding information about the customer's account. The client, ***whose funds had already been transferred from ACTC***, demanded information about July 2023 transactions for 10 separate companies, apparently under the misimpression that ACTC possessed such information. When ACTC explained to the customer that its account was an omnibus account for all Greenbax customer funds and only Greenbax could provide the requested information, the client hung up on the ACTC representative.

54. In another instance, a Greenbax customer demanded account statements and transaction history for July 2023 about three separate accounts from ACTC at the direction of Greenbax representative Sarah Pearson. Ms. Pearson apparently was unaware that ACTC lacks such detail about Greenbax accounts.

55. In yet another instance, Greenbax representative, Alexandra Kutsurelis, advised a Greenbax customer that Greenbax was unable to provide detailed statements about its customers' funds and encouraged the customer to contact an ACTC representative to request a statement or transaction history. Greenbax failed to advise the customer that ACTC lacked such information,

150327935

in part because NBCU had stopped providing ACTC with customer account transaction information.

56.     Some of the complaints were from Greenbax clients that had no account balances or pending transactions at ACTC.  They would not be affected by the transaction but were influenced by the false and misleading information in the emails sent by Defendants.

57.     In addition to encouraging the 200-300 Greenbax customers to file complaints with the NFID based on false and misleading statements, Call and McCormick personally submitted complaints to the NFID which contained misrepresentations.

58.     Upon information and belief, Defendants misled the 200-300 Greenbax customers, and falsely claimed that ACTC had engaged in misconduct, for at least two reasons.  First, NBCU, and by extension its officers Call and McCormick, were concerned that the 200-300 Greenbax customers would take their business to other financial institutions, including potentially ACTC, and therefore NBCU would lose a significant customer base.  Second, NBCU, Call, and McCormick intended to indirectly assert pressure on MRBD to reinstate the Greenbax platform despite Greenbax's nonpayment of amounts owed.  ACTC and NBCU operate separately, but Call, McCormick, and NBCU apparently believed that applying pressure to ACTC would result in MRBD capitulating to its demands based on NBCU's mistaken assumption that ACTC and/or its management would attempt to intervene in the MRBD-Greenbax dispute.

59.     Ironically, within the Business Account Application, NBCU agreed to indemnify ACTC and various related individuals and entities "from and against any and all losses, claims, costs, actions, demands, suits, proceedings, damages and expenses, including, without limitation, regulatory fines, attorneys' fees and expenses, costs of collection, and any other costs suffered or incurred by ACTC arising out of or relating to our effecting any transaction or acting upon any instruction given by [NBCU] or any authorized agent, advisor or any third party [NBCU] authorize[d] on [its] account or from [NBCU's] action or inaction, whether intentional or not, including losses resulting from the action or inaction of any authorized agent, advisor or any other third party [NBCU] authorize[d] on [its] account."

11

150327935

60.   NBCU further agreed to pay ACTC for various fees, including "reasonable out-of-pocket or incidental expenses, including, but not limited to, legal and accounting fees and disbursements" pursuant to the Business Account Application.  The Business Account Application defined "out-of-pocket expenses" to include "attorney's fees, incurred in connection with responding to and complying with SEC or other regulatory investigations, inquiries or subpoenas." Accordingly, NBCU agreed to pay, and should be ordered to pay, ACTC's attorneys' fees, costs, and other out-of-pocket expenses incurred in connection with ACTC's being forced to respond to the complaints initiating regulatory investigations against it by the NFID.

61.   Pursuant to these and various other terms contained within the Business Account Application and the Custodial Agreement, NBCU should be ordered to pay all of ACTC's attorneys' fees and costs incurred in and prior to the initiation of this litigation.

## FIRST CAUSE OF ACTION

### (DEFAMATION PER SE AGAINST NBCU, CALL, AND MCCORMICK)

62.   As described above, Defendants engaged in the false and unprivileged publication of the defamatory statements about ACTC to Greenbax customers for whom ACTC was custodian of funds.

63.   Defendants are at fault for the publication of the defamatory statement, at least amounting to negligence.

64.   As a result of Defendants' defamation, Plaintiff suffered, and is entitled to recover, actual and/or presumed damages in an amount to be proven at trial.

65.   Defendants published disparaging remarks knowing of their falsity and/or with reckless disregard for the truth.

66.   Defendants were guilty of oppression, fraud, and malice when they defamed ACTC.  Accordingly, ACTC should be awarded punitive damages in an amount to be determined at trial.

67.   As a result of Defendants' defamation, ACTC suffered, and will continue to suffer, irreparable harm for which there is no adequate remedy at law.  Accordingly, the Court should

12

150327935

enter preliminary and permanent injunctive relief against Call, McCormick, and NBCU and its employees, directors, officers, and representatives from further defamation.

## SECOND CAUSE OF ACTION

### (BUSINESS DISPARAGEMENT AGAINST NBCU, CALL, AND MCCORMICK)

68.    As described above, Defendants engaged in the false and disparaging statements about ACTC to Greenbax customers.

69.    Defendants' publication of the false and disparaging statements was unprivileged.

70.    Defendants were guilty of malice when they disparaged ACTC.  Defendants either published the disparaging statements about ACTC with the intent to cause harm to ACTC's pecuniary interests, or they published the disparaging statements knowing the statements were false or with reckless disregard for the truth, or both.

71.    Defendants' disparaging statements were the proximate cause of economic loss to ACTC.  Accordingly, ACTC should be awarded special damages in an amount to be determined at trial.

72.    Defendants were guilty of oppression, fraud, and malice when they disparaged ACTC.  Accordingly, ACTC should be awarded punitive damages in an amount to be determined at trial.

73.    As a result of Defendants' disparagement, ACTC suffered, and will continue to suffer, irreparable harm for which there is no adequate remedy at law.  Accordingly, the Court should enter preliminary and permanent injunctive relief against Call, McCormick, and NBCU and its employees, directors, officers, and representatives from further disparagement.

## THIRD CAUSE OF ACTION

### (DECEPTIVE TRADE PRACTICES AGAINST NBCU, CALL, AND MCCORMICK)

74.    Defendants knowingly made false representations to customers and to the NFID as described above in violation of NRS 598.0915(15)

75.    Defendants disparaged the services ACTC provides by making false and/or misleading representations of fact in violation of NRS 598.0915(8).

13

150327935

76. As a result of Defendants' conduct, ACTC suffered damages in an amount to be determined at trial.

77. Defendants knowingly and/or willfully engaged in the foregoing deceptive trade practices. Defendants should be ordered to pay ACTC all profits derived from Defendants' knowing and willful engagement in deceptive trade practices, if any, and should be ordered to pay treble damages on all damages ACTC suffered by reason of its deceptive trade practices.

## FOURTH CAUSE OF ACTION

## (INTENTIONAL INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE AGAINST NBCU, CALL, AND MCCORMICK)

78. ACTC had a prospective contractual relationship with the 200-300 Greenbax customers following termination of the MRBD-Greenbax relationship. As described above, ACTC sent an email to those customers on July 27, 2023 following suspension of the Greenbax platform stating that the customers could open a new account with ACTC and transfer their funds to ACTC.

79. Defendants knew of the prospective relationship between ACTC and the 200-300 Greenbax customers.

80. Defendants intended to harm ACTC by preventing the prospective relationship between the 200-300 Greenbax customers and ACTC via the actions described above, which Defendants intended to deter the Greenbax customers from opening accounts and transferring their funds to ACTC. Defendants interfered with this potential relationship by falsely advising the 200-300 Greenbax customers that ACTC was engaged in wrongdoing. Defendants likely believed that the 200-300 Greenbax customers would assume that Defendants, themselves actors in the banking/financial services industry, possessed expertise concerning the industry and therefore that the information relayed to them by Defendants was true and accurate.

81. Defendants' conduct was absent of any privilege or justification.

82. ACTC suffered actual harm as a result of the Defendants' conduct in an amount to be determined at trial.

14

150327935

83.   Defendants were guilty of oppression, fraud, and malice when they interfered with ACTC's prospective economic advantage.   Accordingly, ACTC should be awarded punitive damages in an amount to be determined at trial.

### FIFTH CAUSE OF ACTION

### (INTENTIONAL INTERFERENCE WITH CONTRACTUAL RELATIONS AGAINST NBCU, CALL, AND MCCORMICK)

84.   In addition to the Business Account Application and its Custodial Agreement between ACTC and NBCU, ACTC was party to a similar Business Account Application and a contained Custodial Agreement with Greenbax, dated October 6, 2021.  This ACTC-Greenbax Business Account Application and its Custodial Agreement constituted a valid and existing contract.

85.   Defendants knew of the Account Application and its Custodial Agreement between ACTC and Greenbax.

86.   Defendants engaged in intentional acts that were intended and designed to disrupt the contractual relationship between ACTC and Greenbax.

87.   Defendants' actions caused actual disruption of the ACTC-Greenbax contract.

88.   As a result of Defendants' conduct, ACTC suffered damages in an amount to be determined at trial.

89.   Defendants were guilty of oppression, fraud, and malice when they interfered with ACTC's contractual relations.  Accordingly, ACTC should be awarded punitive damages in an amount to be determined at trial.

### SIXTH CAUSE OF ACTION

### (BREACH OF CONTRACT AGAINST NBCU)

90.   ACTC and NBCU are parties to the Business Account Application and its Custodial Agreement, resulting in ACTC acting as custodian of Greenbax customer funds.

91.   Neither the Business Account Application nor the Custodial Agreement permitted NBCU to unilaterally remove funds from ACTC's account.

15

150327935

92.    NBCU breached the terms of the Business Account Application and the Custodial Agreement between it and ACTC by removing funds from ACTC's custodial account.

93.    As a proximate consequence of NBCU's breach, actions and/or omissions, ACTC has been damaged in the amount exceeding $2.5 million excluding interest and attorneys' fees and costs required in this action.

94.    The Court should order NBCU to pay ACTC's reasonable attorneys' fees incurred in this action, and in relation to the regulatory complaints filed by and at the direction of NBCU, Call, and/or McCormick, pursuant to various provisions within the Business Account Application and the Custodial Agreement.

## SEVENTH CAUSE OF ACTION

### (BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING AGAINST NBCU)

95.    All Nevada contracts contain an implied covenant of good faith and fair dealing.

96.    ACTC and NBCU were parties to a contract, the Business Account Application and the Custodial Agreement, pursuant to which NBCU owed ACTC a duty of good faith.

97.    NBCU engaged in the conduct described above that was unfaithful to, and deliberately contravened, the purpose of the Business Account Application and the Custodial Agreement between it and ACTC.

98.    ACTC, to the contrary, acted in good faith under the parties' Business Account Application and the Custodial Agreement

99.    As a result of NBCU's misconduct, ACTC's justified expectations of NBCU were denied and ACTC suffered damages in an amount to be determined at trial.

## EIGHTH CAUSE OF ACTION

### (UNJUST ENRICHMENT AGAINST NBCU))

100.    In the alternative to the above breach of contract claim, ACTC asserts that when NBCU removed $2,525,565.84 from ACTC's account, ACTC conferred a benefit on NBCU, which benefit NBCU had knowledge of and appreciated.

101.    NBCU voluntarily accepted and retained $2,525,565.84 from ACTC's account.

16

150327935

102.   Under such circumstances it would be inequitable and unjust for NBCU to retain the benefit of retaining in excess of $2,525,565.84 without reimbursing the value to ACTC.

## NINTH CAUSE OF ACTION

### (CONVERSION AGAINST NBCU)

103.   In the alternative to the above breach of contract claim, ACTC asserts that NBCU engaged in one or more distinct acts of dominion wrongfully exerted over property that ACTC held as custodian for Greenbax and/or Greenbax customers when it removed $2,525,565.84 from ACTC's account without authorization.

104.   NBCU's acts were in denial of, or inconsistent with ACTC's rights therein or in derogation, exclusion, or defiance of such rights.

105.   As a result of Defendants' conversion, which was done with malice, ACTC suffered, and is entitled to recover, compensatory and punitive damages in an amount to be proven at trial.

## PRAYER FOR RELIEF

WHEREFORE, ACTC prays for judgment and relief against Defendants as follows:

1.   An award of actual, presumed, compensatory, special, exemplary, and punitive damages against Defendants in an amount to be proven at trial;

2.   Statutory double and treble damages as applicable;

3.   An award of attorneys' fees and costs incurred in and before but in relation to the instant litigation;

4.   An award of prejudgment and post-judgment interest against Defendants;

/ /
/ /
/ /
/ /
/ /
/ /
/ /

17

150327935

5.      For preliminary and permanent injunctive relief against Defendants;

6.      For such other and further relief as the Court deems just and equitable.

DATED this 16th day of October, 2023.

**FOX ROTHSCHILD LLP**


*/s/ Mark J. Connot*
MARK J. CONNOT (10010)
KEVIN M. SUTEHALL (9437)
1980 Festival Plaza Drive, Suite 700
Las Vegas, Nevada 89135
mconnot@foxrothschild.com
ksutehall@foxrothschild.com
*Attorneys for Plaintiff Austin Capital Trust Company LLC*

18

150327935

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that I am an employee of Fox Rothschild LLP and that on the 16th day of October, 2023, pursuant to Rule 5(b) of the Federal Rules of Civil Procedure, I served a true and correct copy of the foregoing **FIRST AMENDED COMPLAINT** to all participants in the case who are registered CM/ECF users.

*/s/ Doreen Loffredo*
An employee of Fox Rothschild LLP

19

150327935