BUCHALTER
A Professional Corporation
JULIAN W. MACK, ESQ. (CA SBN: 104662) (pro hac vice forthcoming)
pmack@buchalter.com
CHERYL M. LOTT, ESQ. (CA SBN: 232548) (pro hac vice forthcoming)
clott@buchalter.com
DAVID E. MARK, ESQ. (CA SBN: 247283) (pro hac vice forthcoming)
dmark@buchalter.com
1000 Wilshire Boulevard, Suite 1500
Los Angeles, CA 90017-1730
Telephone: 213.891.0700
Fax: 213.896.0400

*Attorneys for Defendants*
NORTH BAY CREDIT UNION and CHRIS CALL

CAMPBELL & WILLIAMS
PHILIP R. ERWIN, ESQ. (11563)
pre@cwlawlv.com
SAMUEL R. MIRKOVICH, ESQ. (11662)
srm@cwlawlv.com
NICHOLAS S. HAGENKORD, ESQ. (15927)
nsh@cwlawlv.com
710 South Seventh Street, Suite A
Las Vegas, Nevada 89101ins
Telephone: (702) 382-5222
Facsimile: (702) 382-0540

*Attorneys for Defendants*
NORTH BAY CREDIT UNION; CHRIS CALL,
and CAROLE McCORMICK

# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

| | |
|---|---|
| AUSTIN CAPITAL TRUST COMPANY, LLC,<br><br>Plaintiff,<br><br>vs.<br><br>NORTH BAY CREDIT UNION; CHRIS CALL; CAROLE McCORMICK; DOES 1 through X, inclusive; and ROE BUSINESS ENTITIES 1 through X, inclusive,<br><br>Defendants. | Case No. 3:23-cv-00444-LRH-CSD<br><br>**DEFENDANTS' MOTION TO DISMISS FIRST AMENDED COMPLAINT FOR LACK OF PERSONAL JURISDICTION (FED.R.CIV.P. 12(B)(2)), IMPROPER VENUE (FED.R.CIV.P. 12(B)(3)), FORUM *NON-CONVENIENS* AND FAILURE TO STATE A CLAIM UPON WHICH RELIEF MAY BE GRANTED (FED.R.CIV.P. 12(B)(6))** |

BUCHALTER
A PROFESSIONAL CORPORATION
SAN FRANCISCO

Defendants North Bay Credit Union, Chris Call, and Carole McCormick, by and through their undersigned counsel, hereby submit their Motion to Dismiss First Amended Complaint for Lack of Personal Jurisdiction, Improper Venue, and Failure to State a Claim Upon Which Relief May Be Granted (the "Motion"). The Motion is based on the papers and pleading on file herein, the exhibits attached hereto, the Points and Authorities that follow, and any argument at the time of hearing.

BUCHALTER
A Professional Corporation
San Francisco

BN 79516945v4

2

CASE NO. 3:23-cv-00444-LRH-CSD

**DEFENDANTS' MOTION TO DISMISS FIRST AMENDED COMPLAINT**

**TABLE OF CONTENTS**

Page

I. INTRODUCTION ........................................................................................ 1

II. THE ALLEGATIONS OF THE FIRST AMENDED COMPLAINT ............................... 1

    A. The Parties ................................................................................... 1

    B. MRBD Disables the Banking Platform .............................................. 2

III. THE COURT LACKS PERSONAL JURISDICTION. DISMISSAL IS PROPER. ......... 4

    A. General Jurisdiction Is Lacking. ...................................................... 5

    B. Specific Jurisdiction Is Also Lacking ............................................... 6

        1. Plaintiff Cannot Demonstrate that Call or McCormick Purposefully Directed Their Allegedly Tortious Acts at Nevada ................................. 7

        2. Plaintiff's Claims Do Not Arise Out of or Relate to Defendants' Forum-Related Activities ............................................................. 8

        3. Nevada's Exercise of Jurisdiction Would Be Unreasonable ............... 8

    C. The Parties Forum Selection Clause Mandates Dismissal. ..................... 10

        1. Enforcement of the Forum Selection Clause and Dismissal are Proper. .. 10

        2. It is Not Unjust or Unreasonable to Enforce the Forum Selection Clause ................................................................................... 11

            a. The Clause Was Not the Result of Fraud. .......................... 12

            b. The Clause Is Neither Unfair Nor Unreasonable. ............... 12

            c. No Public Policy of Nevada Militates Against Enforcement of The Forum-Selection Clause .......................................... 13

            d. The Parties Intended All Legal Actions to Proceed in California ................................................................... 13

    D. Alternatively, This Case Should Be Transferred To The United States District Court For The Northern District Of California. ............................ 14

IV. PLAINTIFF FAILS TO STATE A CLAIM FOR RELIEF ...................................... 16

    A. Plaintiff's First Claim for Defamation Per Se Fails ............................. 17

    B. Plaintiff's Second Claim for Business Disparagement Fails ................... 17

    C. Plaintiff's Third Claim for Deceptive Trade Practices Fails ................... 19

BUCHALTER
A PROFESSIONAL CORPORATION
SAN FRANCISCO

BN 79516945v4             i             CASE NO. 3:23-cv-00444-LRH-CSD

**DEFENDANTS' MOTION TO DISMISS FIRST AMENDED COMPLAINT**

D. Plaintiff's Intentional Interference Claim Fails.............................................. 20

E. The Fifth Claim for Intentional Interference with Contractual Relations Fails .... 20

F. Plaintiff's Sixth Claim for Breach of Contract Fails............................................ 21

G. The Breach of Implied Covenant of Good Faith and Fair Dealing Claim Fails. .. 23

H. Plaintiff's Eighth Claim for Unjust Enrichment Fails. ........................................ 23

I. Plaintiff's Ninth Claim for Conversion Fails ...................................................... 24

BUCHALTER
A PROFESSIONAL CORPORATION
SAN FRANCISCO

BN 79516945v4

ii

CASE NO. 3:23-cv-00444-LRH-CSD

**DEFENDANTS' MOTION TO DISMISS FIRST AMENDED COMPLAINT**

**Cases**

*16630 Southfield Ltd. P'ship v. Flagstar Bank, F.S.B.*,
  727 F3d 502 (6th Cir. 2013)...................................................................................... 18

*Amba Mktg. Sys., Inc. v. Jobar Int'l Inc.*,
  551 F.2d 784 (9th Cir. 1977)...................................................................................... 4

*Argueta v. BancoMexicano, S.A.*,
  87 F.3d 320 (9th Cir. 1996)............................................................................. 10, 12, 13

*Austin v. Allied Collection Servs.*,
  No. 2:21-cv-01593-CDS-NJK, 2023 U.S. Dist. LEXIS 11676 (D. Nev.,
  January 23, 2023) ...................................................................................................... 19

*Axel Holding Co., LLC v. ARB Corp. Ltd.*,
  2023 WL 2415265 (S.D. Cal. Mar. 8, 2023) ............................................................... 5

*Bell Atlantic Corp. v. Twombly*
  550 US 544 (2007) ....................................................................................... 16, 17, 20, 24

*Bissessur v. Indiana Univ. Bd. of Trustees*
  (7th Cir. 2009) 581 F3d 599.................................................................................. 21, 22

*Borsellino v. Goldman Sachs Group, Inc.*
  (7th Cir. 2007) 477 F3d 502.......................................................................................... 20

*Boschetto v. Hansing*,
  539 F.3d 1011 (9th Cir. 2008)................................................................................... 7, 8

*Brayton Purcell LLP v. Recordon & Recordon*,
  606 F.3d 1124 (9th Cir. 2010)....................................................................................... 7

*Bristol-Myers Squibb Co. v. Superior Ct. of Cal., S.F. Cnty.*,
  582 U.S. 255 (2017) ....................................................................................................... 5

*Bryant v. BNSF Railway Co.*,
  2018 WL 5917895 (C.D. Cal. Apr. 12, 2018) ............................................................. 5

*Butler v. FreeLife Int l, LLC*,
  2004 U.S. Dist. LEXIS 29676 (C.D. Cal. June 16, 2004) ................................... 11, 12

*Carma Developers (Cal.), Inc. v. Marathon Development California, Inc.*,
  2 Cal. 4th 342 ................................................................................................................ 23

BUCHALTER
A PROFESSIONAL CORPORATION
SAN FRANCISCO

*Catholic Diocese of Green Bay, Inc. v. Doe*,
    131 Nev. 246 (2015) ................................................................................................. 5

*Cenegenics LLC v. Gaines*
    (D. Nev. June 12, 2020) ........................................................................................... 8

*Certified Fire Prot., Inc. v. Precision Constr., Inc.*,
    128 Nev. 371, 283 P.3d 250 (2012) ....................................................................... 24

*Clark County Sch. Dist. v. Virtual Educ. Software, Inc.*,
    213 P.3d 496 (Nev. 2009) ................................................................................. 17, 18

*Core-Vent Corp. v. Nobel Indus. AB*,
    11 F.3d 1482 (9th Cir. 1993) ..................................................................................... 7

*Creative Tech., Ltd. V. Aztech Sys. PTE*,
    61 F.3d 696 (9th Cir. 1995) ..................................................................................... 15

*Dole Food Co., Inc. v. Watts*,
    303 F.3d 1104 (9th Cir. 2002) ................................................................................... 4

*Evans v. Dean Witter Reynolds, Inc.*,
    116 Nev. 598, 5 P.3d 1043 (2000) .......................................................................... 24

*Glencore Grain Rotterdam B.V. v. Shivnath Rai Harnarain Co.*,
    284 F.3d 1114 (9th Cir. 2002) ................................................................................... 5

*Goodyear Dunlop Tires Ops., S.A. v. Brown*,
    564 U.S. 915 (2011) ................................................................................................... 6

*Gunn v. Wild*,
    771 F. App'x 392 (9th Cir. 2019) .............................................................................. 6

*Gunn v. Wild*,
    Case No. 2:17-CV-72 JCM (GWF), 2018 WL 473005 (D. Nev. Jan. 18, 2018),
    *aff'd*, 771 F. App'x 392 (9th Cir. 2019) .................................................................... 7

*Interline v. Zim Israel Navigation Co. Ltd.*,
    No. C 00- 0939 SC, 2000 U.S. Dist. LEXIS 10867 (N.D. Cal. July 27, 2000) ...... 14

*International Inst. of Mgmt. v. Organization for Econ. Coop. & Dev.*,
    Case No. 2:18-CV-1748 JCM (GWF), 2019 WL 2550313 (D. Nev. June 20,
    2019) ........................................................................................................................... 8

*J.J. Indus., LLC v. Bennett*,
    119 Nev. 269, 71 P.3d 1264 (Nev. 2003) ............................................................... 21

*Jones v. GNC Franchising, Inc.*,
    211 F.3d 495 (9th Cir. 2000) ................................................................................... 13

*Koresko v. Realnetworks, Inc.*,
    291 F. Supp. 2d 1157 (E.D. Cal. 2003)..................................................................... 10, 11

*Korte Constr. Co. v. State (In re Bd. of Regents of the Nev. Sys. of Higher Educ.)*,
    492 P.3d 540 ....................................................................................................... 23

*Lake v. Lake*,
    817 F.2d 1416 (9th Cir. 1987)................................................................................. 8

*Laurel Village Bakery LLC v. Global Payments Direct Inc.*,
    No. C06-01332 MJJ, 2006 U.S. Dist. LEXIS 73663 (N.D. Cal. Sept. 25, 2006) ............. 10, 14

*Lockman Found v. Evangelical All Mission*,
    930 F.2d 764 (9th Cir. 1991)................................................................................. 10, 15

*Loya v. Starwood Hotels & Resorts Worldwide, Inc.*,
    583 F.3d 656 (9th Cir. 2009).................................................................................. 16

*Lucky Lucy D LLC v. LGS Casino LLC*,
    534 P.3d 689 (Nev. 2023) ..................................................................................... 21

*Lueck v. Sundstrand Corp.*,
    236 F.3d 1137 (9th Cir. 2001)................................................................................ 15

*Malcolm v. Acrylic Tank Mfg., Inc.*,
    Case No. 2:17-CV-1108 JCM (PAL), 2018 WL 3997263 (D. Nev. Aug. 21,
    2018) ................................................................................................................ 9

*Manetti-Farrow, Inc. v. Gucci Am., Inc.*,
    858 F.2d 509 (9th Cir. 1988)................................................................................. 11, 12

*Mayfield v. Nat'l Ass'n for Stock Car Auto Racing, Inc.*
    (4th Cir. 2012) 674 F3d 369................................................................................... 17

*Menken v. Emm*,
    503 F.3d 1050 (9th Cir. 2007)................................................................................ 9

*Murphy v. Schneider National, Inc.*,
    362 F.3d 1133 (9th Cir. 2004)................................................................................ 11

*Nelson v. Heer*,
    123 Nev. 217 (Nev., 2007)..................................................................................... 23

*Pado, Inc. v. SG Trademark Holding Co. LLC*,
    2020 WL 1445720 (C.D. Cal. Mar. 24, 2020) ........................................................... 4

*Pratt v. Silversea Cruises, Ltd.*,
    2005 U.S. Dist. LEXIS 14339 (N.D.Cal. 2005)........................................................... 12

*Ramanathan v. Saxon Mortg. Servs.*,
No. 2:10-CV-02061-KJD-LRL, 2011 U.S. Dist. LEXIS 68297, 2011 WL
2532415 (D. Nev., 2011) .................................................................................... 23

*Roberts v. UBS AG*,
CV F 12-0724 LJO SKO, 2013 U.S. Dist. LEXIS 12779 (E.D. Cal., 2013) .................... 21, 22

*Schreiber Distrib. Co. v. Serv-Well Furniture Co.*,
806 F.2d 1393 (9th Cir. 1986)............................................................................. 19

*Schwarzenegger v. Fred Martin Motor Co.*,
374 F.3d 797 (9th Cir. 2004)............................................................................. 4, 5

*Seldin v. HSN, Inc.*,
2018 WL 3570308 (S.D. Cal. July 25, 2018) ......................................................... 4

*Sherman v. Smead*,
527 P.3d 973 (Nev. Ct. App. 2023) ..................................................................... 18

*Shlesinger v. Bank of Am., N.A.*,
2:11-cv-2020-PMP-PA, 2012 U.S. Dist. LEXIS 102030 (D. Nev., July 23,
2012) .............................................................................................................. 19

*Southport Lane Equity II, LLC v. Downey*,
177 F. Supp. 3d 1286 (D. Nev. 2016) ...................................................... 5, 6, 8, 9

*Spradlin v. Lear Siegler Mgmt. Servs., Inc.*,
926 F.2d 865 (9th Cir. 1991)............................................................................. 11

*Sun v. Advanced China Healthcare, Inc.*,
901 F.3d 1081 (9th Cir., 2018)........................................................................... 15

*Swartz v. KPMG LLP*,
476 F.3d 756 (9th Cir. 2007)........................................................................... 4, 19

*Thomas v. Wachovia Mortgage, FSB*,
2011 WL 3159169 (D. Nev. July 25, 2011)........................................................... 23

*Tuazon v. R.J. Reynolds Tobacco Co.*,
433 F.3d 1163 (9th Cir. 2006)........................................................................... 15

*Tuttle v. Funmobile Games, Inc.*,
No. C07-0983JLR, 2007 U.S. Dist. LEXIS 83005 (W.D. Wash. 2007)................................ 4

*Ebeid ex rel. U.S. v. Lungwitz*,
616 F.3d 993 (9th Cir. 2010)........................................................................... 19, 20

*Unisys Corp. v. Access Co.*,
2005 U.S. Dist. LEXIS 31897 (N.D. Cal. Nov. 23, 2005).......................................... 14

BUCHALTER
A PROFESSIONAL CORPORATION
SAN FRANCISCO

BN 79516945v4    vi    CASE NO. 3:23-cv-00444-LRH-CSD

**DEFENDANTS' MOTION TO DISMISS FIRST AMENDED COMPLAINT**

*Van Assche v. Nevada*,
   2019 WL 2440078 (D. Nev. June 11, 2019) ................................................................ 16

*Vogt-Nem, Inc. v. W. African Shipping Co.*,
   263 F. Supp. 2d 1226 (N.D. Cal. 2002) ...................................................................... 14

*Weiland v. Palm Beach County Sheriff's Office*
   792 F3d 1313 (11th Cir. 2015) .................................................................................... 19

*Wichinsky v. Mosa*,
   109 Nev. 84, 847 P.2d 727 (1993) ............................................................................... 20

**Statutes**

28 U.S.C. § 1404(a) ............................................................................................................ 14

28 U.S.C. § 1404(a) and § 1406(a) .................................................................................... 14

28 U.S.C. § 1406(a) ............................................................................................................ 14

NRS 598.0915 ..................................................................................................................... 19

NRS 598.0915(8) ................................................................................................................ 19

NRS 598.0915(15) .............................................................................................................. 19

**Other Authorities**

Discovery Plan and Scheduling Order, Dkt. 16 ........................................................... 12, 16

Fed. R. Civ. P. Rule 9(b) .................................................................................................... 19

Fed.R.Civ.P. 9(b) ................................................................................................................ 19

Fed. R. Civ. P. 45(c)(1) ................................................................................................... 9, 16

FRCP 8(a)(2) ....................................................................................................................... 16

Rule 9(b)'s ........................................................................................................................... 20

Rule 12(b)(2) ......................................................................................................................... 4

Rule 12(b)(3) ............................................................................................................. 10, 13, 14

Rule 12(b)(6) ......................................................................................................................... 1

Rules 12(b)(2) and (3) ........................................................................................................... 1

## I. INTRODUCTION

Defendants North Bay Credit Union ("NBCU"), Chris Call ("Call"), and Carole McCormick ("McCormick") (collectively "Defendants") submit their jurisdictional challenges under Rules 12(b)(2) and (3). In an abundance of caution, Defendants also submit their challenges under Rule 12(b)(6). Defendants do not waive any of their jurisdictional challenges and submit that those threshold matters need determination before the substantive challenges to the Complaint.

Despite ACTC's best efforts to obfuscate the basis of its claim, the basic contentions are simple: ACTC claims that NBCU wrongfully withheld funds in ACTC's account *at NBCU*, and that Call and McCormick caused ACTC some unspecified harm by notifying customers and regulators that customers could not access their funds.

Equally simple are the grounds for this Motion. The Court lacks personal jurisdiction as all of the Defendants are California residents who do no conduct business in Nevada. Call and McCormick are alleged to have done nothing more than correspond with ACTC's regulators regarding ACTC's withholding of customer funds, and send email communications to customers, none of whom are Nevada residents. Next, ACTC admits that the account at issue is ACTC's account *at NBCU.* That account is governed by an agreement that designates the California Superior Court for Sonoma County as the venue. Further, NBCU has failed to plead any facts supporting its claims and cannot cure the defects because ACTC admits that funds in the account at NBCU were not ACTC's funds, but rather the funds of the non-Nevada customers. Furthermore, ACTC wholly fails to allege the required facts, but relies on inadequate conclusory averments. Dismissal of the action is proper.

## II. THE ALLEGATIONS OF THE FIRST AMENDED COMPLAINT[1]

### A. The Parties

Plaintiff ACTC and Defendant NBCU provide services to businesses in the cannabis industry. (See Dkt.11, at ¶¶ 13-14.) Plaintiff is a non-depository trust company subject to oversight

---

[1] Unless otherwise stated, the facts set forth herein are taken from Plaintiff's First Amended Complaint ("FAC") and are assumed true only for purposes of this Motion pursuant.

**DEFENDANTS' MOTION TO DISMISS FIRST AMENDED COMPLAINT**

BUCHALTER
A PROFESSIONAL CORPORATION
SAN FRANCISCO

by the Nevada Financial Institutions Division ("NFID"). (Dkt. 11 at ¶ 1.) NBCU is a chartered California credit union. (*Id.*, ¶ 2.) Call, a California resident, is "believed to be" the CEO of NBCU. (*Id.*, ¶ 3.) McCormick, also a California resident, is "believed to be" President of Greenbax and an officer of NBCU. (*Id.*, ¶ 4.) NBCU is the majority owner of Greenbax. (*Id.*, ¶ 21.)

Non-party Greenbax operates an online banking portal for businesses in the cannabis industry, allowing customers to request outgoing wires, schedule ACH payments to pay vendors or receive payments, and to settle checks for account reconciliation – the banking functions required to run a business. Non-party MRBD licensed the online platform to Greenbax. (*Id.*, ¶¶ 19-20, 22.)

Plaintiff was the custodian of funds for approximately 200-300 Greenbax serviced customers ("Customers") who receive services using the platform. ACTC held a portion of these funds that belong to the Customers in its account at NBCU. (*Id.*, ¶ 23.) NBCU was the sponsor bank for the Greenbax program. Greenbax processed payments and deposits for Customer accounts through NBCU as the sponsor bank using the platform. NBCU remitted funds to Plaintiff as custodian for the Customers by remitting the funds to Plaintiff's account at NBCU (*Id.*, ¶ 25.)

Plaintiff alleges that on May 2, 2021, NBCU executed a "Business Account Application" in favor of ACTC. The Business Account Application ("BAA") —which is not attached to the FAC—is 28 pages long with "various subparts;" a 7 page "Custodial Agreement" is alleged to be contained within the 28 page BAA. (*Id.*, at ¶¶ 15, 17) Plaintiff does not describe any of the various subparts" of the BAA or Custodial Agreement either verbatim or by their legal effect. Rather, Plaintiff alleges in conclusory fashion that the BAA and the Custodial Agreement "governs (sic) the relationship between ACTC and NBCU," and that funds deposited in ACTC's account at NBCU are subject to NBCU's duties under the BAA and Custodial Agreement. (*Id.*, at ¶¶17-18).

**B.      MRBD Disables the Banking Platform**

On July 14, 2023, a dispute arose between MRBD and Greenbax regarding amounts allegedly owed by Greenbax to MRBD. On July 26, 2023, MRBD disabled the platform, such that the Customers could not request outgoing wires, schedule ACH payments to pay vendors, receive payments, or settle checks for account reconciliation. (*Id.*, ¶¶ 29-30.)

On July 27, 2023, Call and McCormick allegedly sent an email to "some or possibly all of

**DEFENDANTS' MOTION TO DISMISS FIRST AMENDED COMPLAINT**

the Greenbax/NBCU customers," stating that there was a "disagreement … with [Greenbax's] technology partner." The email included a link that authorized the Customers to authorize a transfer of funds from the platform to the Customers' NBCU accounts, stating "this will allow you to gain immediate access back to your funds." (*Id*., ¶ 31.) Plaintiff does not attach a copy of this email.

Plaintiff alleges that later on July 27, 2023, Call and McCormick sent an email to "our North Bay/Greenbax Customers." Plaintiff states a copy of this email is attached to the FAC as Exhibit 1, but no copy is attached. Plaintiff alleges that the email stated ACTC and MRBD engaged in an [unexplained] "intentional subterfuge" and that Greenbax paid a large percentage of the disputed amount to MRBD to prevent the platform from being deactivated. Plaintiff further alleges that the email encouraged the Customers to demand that ACTC send their funds to another institution, and contact the NFID stating "you are being blocked from accessing your funds." (*Id*., ¶ 34.) After the July 26, 2023 disabling of the platform, the earliest Plaintiff could have processed Customer requests to transfer funds was July 28, assuming Plaintiff had such requests by July 27. (*Id*., ¶ 39.)

On July 28, Call and McCormick allegedly sent another message to the Customers (also not attached to the FAC) stating that Customers were "negatively impacted by being shut out of the platform with no access to [their] funds," and attaching a link to the NFID's website containing a complaint form and instructions on how to file a complaint. The email stated that Customers should "'provide as much detail about the harm this action is inflicting you and your business and tell the regulator you need immediate access to your funds held by [Plaintiff] and include the balance they are holding on your behalf." (*Id*., ¶ 36.)

Plaintiff alleges that on July 27, 2023, NBCU "illegally" withdrew $2,525,565.84 from Plaintiff's account at NBCU account. (*Id*., ¶ 46). The funds in ACTC's account at NBCU were owned by Greenbax and/or the Customers; Plaintiff alleges it was "responsible" for funds in the account and had unspecified "custodial rights and obligations" with respect to the funds. (*Id*., ¶ 47.) Plaintiff further alleges that NBCU did not post transactions that were pending when MRBD disabled the platform, and that NBCU and Greenbax did not provide banking reconciliations to Plaintiff, precluding Plaintiff from immediately reconciling and accounting for the exact balances it held for the customers. (*Id*., ¶¶ 41-42.) Nonetheless, Plaintiff requested data from MRBD and

completed the process by July 31, 2023.  (*Id*., ¶¶ 43-44.) In most instances, Plaintiff was able to transfer a customers assets to a new custodian the same day customers requested that it do so, and beginning on August 3, 2023, Plaintiff provided the customers who had not already transferred their assets with online access to information about their transactions and funds. (*Id*., ¶ 44.)

Plaintiff alleges 23 customers that were "misled" by Defendants had filed complaints against it with the NFID. Plaintiff further alleges that it received inquiries from customers regarding client information, in two cases on the advice of representatives of non-party Greenbax. (*Id*., ¶¶ 49-56.) Plaintiff further alleges that Call and McCormick personally submitted complaints to the NFID that contained unspecified misrepresentations. (*Id*., ¶ 57.)

## III.     THE COURT LACKS PERSONAL JURISDICTION.  DISMISSAL IS PROPER.

When a defendant moves to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of demonstrating jurisdiction is appropriate. *Dole Food Co., Inc. v. Watts*, 303 F.3d 1104, 1108 (9th Cir. 2002).[2]   To survive a motion to dismiss under Rule 12(b)(2), Plaintiff must make a *prima facie* showing of personal jurisdiction over the defendant. *Tuttle v. Funmobile Games, Inc*., No. C07-0983JLR, 2007 U.S. Dist. LEXIS 83005, at *2 (W.D. Wash. 2007).   This requires evidence that would support the exercise of jurisdiction.  *Id*. at *3.  Thus, pure legal conclusions are insufficient. *See id.*  Although "uncontroverted allegations in the complaint must be taken as true," a plaintiff cannot meet its burden by "simply rest[ing] on the bare allegations of its complaint." *Schwarzenegger v. Fred Martin Motor Co*., 374 F.3d 797, 800 (9th Cir. 2004); *see also Swartz v. KPMG LLP*, 476 F.3d 756, 766 (9th Cir. 2007).   In addition, because personal jurisdiction "over each defendant must be established individually," *Seldin v. HSN, Inc.*, 2018 WL 3570308, at *8 (S.D. Cal. July 25, 2018), "[g]eneralized allegations about a group of defendants is insufficient to establish personal jurisdiction," *Pado, Inc. v. SG Trademark Holding Co. LLC*, 2020 WL 1445720, at *5 (C.D. Cal. Mar. 24, 2020).

Where, as here, a defendant provides sworn proof refuting a plaintiff's jurisdictional allegations, the plaintiff is "obligated to come forward with facts, by affidavit or otherwise, supporting personal jurisdiction." *Amba Mktg. Sys., Inc. v. Jobar Int'l Inc.*, 551 F.2d 784, 787 (9th

---

[2] Unless noted, case citations omit internal quotation marks, citations, emphases, and/or alterations.

**DEFENDANTS' MOTION TO DISMISS FIRST AMENDED COMPLAINT**

BUCHALTER
A PROFESSIONAL CORPORATION
SAN FRANCISCO

Cir. 1977). A plaintiff cannot "establish jurisdiction by alleging bare jurisdictionally-triggering facts *without providing some evidence of their existence*." *Bryant v. BNSF Railway Co.*, 2018 WL 5917895, at *2 (C.D. Cal. Apr. 12, 2018) (emphasis added); *see also Axel Holding Co., LLC v. ARB Corp. Ltd.*, 2023 WL 2415265, at *2 (S.D. Cal. Mar. 8, 2023).

Where no applicable federal statute governs personal jurisdiction, the district court applies the law of the state in which it sits. *See Schwarzenegger*, 374 F.3d at 800. Nevada's long-arm jurisdictional statute is coterminous with the limits of constitutional due process. *Catholic Diocese of Green Bay, Inc. v. Doe*, 131 Nev. 246, 249 (2015). Constitutional due process requires that a non-resident defendant have sufficient "minimum contacts" with the forum state such that exercising personal jurisdiction does not "offend traditional notions of fair play and substantial justice" and is meant to "ensure[] that a defendant will not be hauled into a jurisdiction solely as a result of 'random,' 'fortuitous,' or 'attenuated' contacts." *Glencore Grain Rotterdam B.V. v. Shivnath Rai Harnarain Co.*, 284 F.3d 1114, 1123 (9th Cir. 2002). Under the minimum contacts analysis, personal jurisdiction may be either "general (sometimes called 'all-purpose') jurisdiction and specific (sometimes called 'case-linked') jurisdiction." *Bristol-Myers Squibb Co. v. Superior Ct. of Cal., S.F. Cnty.*, 582 U.S. 255, 262 (2017).

Defendants submit that Plaintiff has not—and cannot—make the requisite *prima facie* showing of personal jurisdiction under either analysis. Thus, the FAC should be dismissed. Call and McCormick are California residents who do not conduct business in Nevada, and who are only alleged to have sent emails, and potentially filed online complaints. (Dkt. 11 at ¶¶ 3-4, 31, 33-36, 57; Call Decl., ¶ 6; McCormick Decl,, ¶ 3.) Similarly, NBCU is a California entity with all of its offices in Sonoma County, California. (Dkt. 11 at ¶ 2; Call Decl., ¶ 7.) The basis for NBCU's purported contacts are the same as those for Call and McCormick, and in addition, NBCU is alleged to have entered into a contractual relationship with Plaintiff. (Dkt. 11 at ¶ 18, 46-49, 91-92, 100-101, 103.) All of Defendants' alleged conduct emanated from California.

**A.      General Jurisdiction Is Lacking.**

"There are two categories of personal jurisdiction: general jurisdiction and specific jurisdiction." *Southport Lane Equity II, LLC v. Downey*, 177 F. Supp. 3d 1286, 1290 (D. Nev.

BUCHALTER
A PROFESSIONAL CORPORATION
SAN FRANCISCO

2016). "[G]eneral jurisdiction exist[s] over a defendant in any state with which the defendant had substantial or continuous and systematic contacts such that the assertion of personal jurisdiction over him would be constitutionally fair even where the claims at issue were unrelated to those contacts." *Id.* at 1291 (quotations omitted). Establishing general jurisdiction is objectively difficult. Specifically, the inquiry "is whether that [defendant's] 'affiliations with the State are so continuous and systematic as to render [the defendant] essentially at home in the forum State.'" *Id.* (quoting *Daimler AG v. Bauman*, 134 S. Ct. 746, 761 (2014)) (internal quotations omitted).

Here, Call's[3] and McCormick's limited contacts with Nevada are not so continuous and systematic as to render them essentially at home in Nevada. In particular, Call and McCormick are merely alleged to have sent emails and communicated electronically with a Nevada-based regulator. (Dkt. 11, ¶¶ 31, 33-36, 57.) There is no allegation that Call or McCormick ever visited Nevada to engage in any business dealings, let alone any with Plaintiff. The remote communications emanating from Sonoma, California are the only contacts with Nevada that Plaintiff has alleged. As such, Plaintiff cannot establish general jurisdiction over Call or McCormick. *See Gunn v. Wild*, 771 F. App'x 392 (9th Cir. 2019).

**B.      Specific Jurisdiction Is Also Lacking**

"Even where there is no general jurisdiction over a defendant, specific jurisdiction exists when there are sufficient contacts with the forum state such that the assertion of personal jurisdiction 'does not offend traditional notions of fair play and substantial justice.'" *Southport*, 177 F. Supp. 3d at 1291 (quoting *International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)) (internal quotations omitted). Specific jurisdiction is extremely limited. "In contrast to general, all-purpose jurisdiction, specific jurisdiction is confined to adjudication of issues deriving from, or connected with, the very controversy that establishes jurisdiction." *Goodyear Dunlop Tires Ops., S.A. v. Brown*, 564 U.S. 915, 919 (2011).

---

[3] The analysis is the same for NBCU since it is through Call's actions that plaintiff asserts personal jurisdiction over NBCU. The only additional fact as to NBCU is that it entered into contracts with Plaintiff. However, as noted in this Motion, that Agreement expressly requires the application of California law, and requires all action to proceed in Sonoma County, CA. (*See* Section III(C).)

**DEFENDANTS' MOTION TO DISMISS FIRST AMENDED COMPLAINT**

BUCHALTER
A PROFESSIONAL CORPORATION
SAN FRANCISCO

The Ninth Circuit Court of Appeals developed the following test to determine whether the exercise of specific jurisdiction over a non-resident defendant is appropriate:

> (1) The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws;
> (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and
> (3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable.

*Boschetto v. Hansing*, 539 F.3d 1011, 1016 (9th Cir. 2008). The plaintiff bears the burden on the first two prongs. *Id.* "The unique burdens placed upon one who must defend oneself in a foreign legal system should have significant weight in assessing the reasonableness of stretching the long arm of personal jurisdiction over national borders." *Core-Vent Corp. v. Nobel Indus. AB*, 11 F.3d 1482, 1488 (9th Cir. 1993). Critically, "if the plaintiff fails at the first step, the jurisdictional inquiry ends and the case must be dismissed." *Boschetto*, 539 F.3d at 1016.

### 1. Plaintiff Cannot Demonstrate that Call or McCormick Purposefully Directed Their Allegedly Tortious Acts at Nevada

"The Ninth Circuit treats purposeful availment and purposeful direction as separate methods of analysis. Purposeful availment is for suits sounding in contract, whereas purposeful direction is for suits sounding in tort." *Gunn v. Wild*, Case No. 2:17-CV-72 JCM (GWF), 2018 WL 473005, at *6 (D. Nev. Jan. 18, 2018), *aff'd*, 771 F. App'x 392 (9th Cir. 2019). As Call and McCormick are named only in Plaintiff's tort claims, purposeful direction is the only issue at bar.

To satisfy the purposeful direction test, Plaintiff must prove that "the defendant allegedly []: (1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state." *Brayton Purcell LLP v. Recordon & Recordon*, 606 F.3d 1124, 1128 (9th Cir. 2010).

Call's and McCormick's contacts with the forum are alleged to consist of emails and communications with regulators. (Dkt. 11, ¶¶ 31, 34-36, 57.). These contacts are insufficient to confer specific jurisdiction. Call's and McCormick's conduct was aimed at preventing harm to NBCU and Greenbax respectively, and the Customers. Notably, none of the Customers are Nevada residents and the majority are California based. Remotely communicating with non-Nevada-based

**DEFENDANTS' MOTION TO DISMISS FIRST AMENDED COMPLAINT**

Customers, and with Nevada-based regulators can hardly be said to constitute acts aimed at Nevada – let alone acts causing harm that Call or McCormick knew was likely to be suffered in Nevada.

### 2. Plaintiff's Claims Do Not Arise Out of or Relate to Defendants' Forum-Related Activities

"The Ninth Circuit applies a 'but for' test to analyze whether a 'direct nexus exists between those [activities] and the cause of action.'" *Cenegenics LLC v. Gaines*, at *3 (D. Nev. June 12, 2020) (quoting *Fireman's Fund Ins. Co. v. Nation Bank of Coops.*, 103 F.3d 888, 894 (9th Cir. 1996)). Accordingly, the court asks "whether [Plaintiff's] claims would have arisen but for the defendants' **activity in Nevada**." *Id.* (emphasis in original).

Here, the crux of Plaintiff's complaints as to Call and McCormick is that they remotely communicated information to the Customers that Plaintiff contends is untrue. (Dkt. 11 at ¶¶ 5-6, 33-36, 52, 57). The vast majority of these Customers are based in California, none of them are Nevada residents, and all of the emails emanated from California. (Call Decl., at ¶5; McCormick Decl., at ¶2) Such allegations, therefore, cannot provide a basis for specific jurisdiction. *See International Inst. of Mgmt. v. Organization for Econ. Coop. & Dev.*, Case No. 2:18-CV-1748 JCM (GWF), 2019 WL 2550313, at *4 (D. Nev. June 20, 2019); *Southport*, 177 F. Supp. 3d at 1297. Based on this precedent, Plaintiff's tort claims cannot sufficiently arise out of alleged conduct by Defendants that was directed at or related to Nevada, and this Court thereby lacks specific jurisdiction over them.

### 3. Nevada's Exercise of Jurisdiction Would Be Unreasonable

Since Plaintiff cannot establish minimum contacts, the personal jurisdiction inquiry ends. *Boschetto*, 539 F.3d at 1016 ("if the plaintiff fails at the first step, the jurisdictional inquiry ends and the case must be dismissed."); *Lake v. Lake*, 817 F.2d 1416, 1421 (9th Cir. 1987) (recognizing a forum state's ability to demonstrate specific jurisdiction depends on "the quality and nature of the defendant's contacts with the forum state in relation to the cause of action."). However, even assuming Plaintiff can somehow demonstrate minimum contacts, Nevada's exercise of jurisdiction in this matter would be unreasonable. Courts consider the following factors to determine whether the exercise of jurisdiction would be reasonable: (1) the extent of the defendants' purposeful

interjection into the forum state's affairs; (2) the burden on the defendant of defending in the forum; (3) the extent of conflict with the sovereignty of the defendants' state;(4) the forum state's interest in adjudicating the dispute; (5) the most efficient judicial resolution of the controversy; (6) the importance of the forum to the plaintiff's interest in convenient and effective relief; and (7) the existence of an alternative forum. *Menken v. Emm*, 503 F.3d 1050, 1058 (9th Cir. 2007).

Regarding the first factor, and as set forth above in Section III(B)(1), Call and McCormick did not purposefully direct their activities to the forum or purposefully avail themselves of the privilege of doing business with Nevada, so Plaintiff cannot establish that they interjected themselves into Nevada's affairs. *Verbick*, 2021 WL 6804098, at *6 (holding that "an out-of-state defendant sending correspondence to and speaking on the phone with a plaintiff in a forum state is insufficient by itself to establish purposeful availment"); *Southport*, 177 F. Supp. 3d at 1297-98 (annual attendance at CES trade show in Nevada not sufficient to confer personal jurisdiction).

The second factor – the burden on Call and McCormick of defending in the forum – also weighs in their favor. Both Call and McCormick are California residents, not a multimillion-dollar company. Plaintiff, however, holds itself as being a successful financial institution managing millions of dollars. The fact that Call and McCormick are not alleged to have traveled to Nevada even once in relation to any business with Plaintiff, further supports the conclusion that it would be unreasonable to force these California residents to litigate in Nevada. *See Malcolm v. Acrylic Tank Mfg., Inc.*, Case No. 2:17-CV-1108 JCM (PAL), 2018 WL 3997263, at *4 (D. Nev. Aug. 21, 2018).

The existence of an alternative forum also favors Call and McCormick. Indeed, the agreement between NBCU and Plaintiff at issue in this Action requires litigation in Sonoma County, California. (*See* Section III(C).) Similarly, judicial efficiency favors Call and McCormick. Unwilling California based witnesses cannot be compelled to trial in Nevada, and it would be inefficient to coordinate the travel of willing witnesses from California to Nevada. Fed. R. Civ. P. 45(c)(1). This is especially so given that Plaintiff admits that it seeks depositions of 200-300 Customers, none of whom are Nevada residents, and the majority of whom are California residents. (Call Decl., at ¶5; McCormick Decl. at ¶2.) Because a majority of the factors governing the reasonability, or lack thereof, of Nevada jurisdiction over Call and McCormick favor them,

Nevada's exercise of jurisdiction in this matter would be unreasonable.

### C. The Parties Forum Selection Clause Mandates Dismissal.

This Court is not the proper forum for the Parties to adjudicate their disputes. Although Plaintiff admits that the account at issue is the ACTC account it holds at NBCU. (Dkt. 11 at ¶ 18, 46-48, 91-92, 100-101, 103.) This NBCU account is governed by the terms of the NBCU customer agreement (the "Agreement"). Despite these indisputable facts, Plaintiff somehow asserts that it is the ACTC Custodial Agreement that governs its account at NBCU, yet Plaintiff fails to attach any contract to its FAC. Even a cursory review of the Agreement illustrates the falsity of Plaintiff's assertion. (RJN, Ex. A, at p.1.) The likely motive for this blatant misrepresentation to the Court: to avoid the venue provisions of the Agreement, which requires all actions to be brought in Sonoma County, California. The Agreement provides that the disputes shall be governed by California law. (RJN, Ex. A, at ¶ 31). Next, the Agreement contains the following venue provision:

> any legal action regarding this Agreement shall be brought in the county of the Credit Union office where you opened your account. You and we agree to waive any right to trial by jury in any legal proceeding or lawsuit involving the account.

(RJN, Ex. A, at ¶32.) Taking these two provisions together, this action is governed by California law, and must be litigated in the Sonoma County Superior Court. It is indisputable that NBCU has no offices in Nevada, and instead, *all* of NBCU's offices are in Sonoma County, California. (Call Decl., at ¶7) Further, it is also indisputable that there are no federal courts in Sonoma County, and thus the only venue that would comport with the terms of the Parties' Agreement is the state Court in Sonoma County. (RJN, Exs. A, at ¶32, B.) As such, dismissal under 12(b)(3) is proper.

#### 1. Enforcement of the Forum Selection Clause and Dismissal are Proper.

The Ninth Circuit has held that a forum-selection clause is an appropriate ground to dismiss an action pursuant to Rule 12(b)(3). *See Argueta v. BancoMexicano, S.A.*, 87 F.3d 320, 324 (9th Cir. 1996) (affirming the district court's decision to dismiss the action based on the presence of a forum-selection clause); *see also Laurel Village Bakery LLC v. Global Payments Direct Inc.*, No. C06-01332 MJJ, 2006 U.S. Dist. LEXIS 73663, at *4 (N.D. Cal. Sept. 25, 2006).). Once venue has been challenged, the burden is on the plaintiff to show that venue is proper. *Koresko v.*

*Realnetworks, Inc.,* 291 F. Supp. 2d 1157, 1160 (E.D. Cal. 2003) (citations omitted). Here, as detailed above, the Agreement requires that this action over ACTC's account with NBCU be brought in Sonoma County, California.

**2.    It is Not Unjust or Unreasonable to Enforce the Forum Selection Clause**

Plaintiffs cannot meet the heavy burden, imposed by federal law, of establishing that the forum-selection cause should not be enforced. While the law governing the substantive dispute in this case is that of California, federal law governs the enforcement and interpretation of the contract's forum-selection clause. *See Spradlin v. Lear Siegler Mgmt. Servs., Inc.*, 926 F.2d 865, 867 (9th Cir. 1991); *Manetti-Farrow, Inc. v. Gucci Am., Inc.*, 858 F.2d 509, 513 (9th Cir. 1988); *Koresko*, 291 F. Supp. 2d at 1162. Federal law expresses a strong policy in favor of enforcing forum-selection clauses. Moreover, forum selection clauses are presumptively valid:

> Forum selection clauses are prima facie valid, and are enforceable absent a strong showing by the party opposing the clause that enforcement would be unreasonable or unjust, or that the clause [is] invalid for such reasons as fraud or overreaching. The opposing party has the burden to show that trial in the contractual forum would be so gravely difficult and inconvenient that he will for all practical purposes be deprived of his day in court.

*Manetti-Farrow, Inc., supra* at 514-15.

The Agreement governs Plaintiff's action concerning its account with NBCU; thus, Plaintiff is bound by that Agreement's forum selection clause designating California as the sole forum for this Action. RJN, Ex. A, at ¶32. To permit Plaintiff to "change the bargain…would completely contradict the policy of enforcing forum selection clauses." *Manetti-Farrow, Inc., supra*, at 515; *see Butler v. FreeLife Int l, LLC*, 2004 U.S. Dist. LEXIS 29676, at *9 (C.D. Cal. June 16, 2004).

The party resisting enforcement of a forum-selection clause bears a heavy burden. To carry this heavy burden, a plaintiff resisting the choice of forum must prove at least one of the following:

> (1) the inclusion of the clause in the agreement was the product of fraud or overreaching; (2) the party wishing to repudiate the clause would effectively be deprived of his day in court were the clause enforced; and (3) enforcement would contravene a strong public policy of the forum in which suit is brought.

*Murphy v. Schneider National, Inc.*, 362 F.3d 1133, 1140 (9th Cir. 2004) (citations and internal quotations omitted). To establish the unreasonableness of a forum selection clause, a party has a

"heavy burden of showing that trial in the chosen forum would be so difficult and inconvenient that the party would effectively be denied a meaningful day in court." *Argueta, supra at* 324-25. Plaintiff cannot meet this burden. The case should not proceed in this forum.

### a. The Clause Was Not the Result of Fraud.

Plaintiff cannot show that the forum selection clause of the Agreement was the result of fraud or undue influence. Plaintiff is a sophisticated business actor that can and does choose with whom they enter into contracts. Kylie Ross, Plaintiff's Vice President of Institutional Services, signed the Agreement, indicating Plaintiff's understanding of and its consent to the terms. The venue provision is clearly set forth in the paragraph captioned WAIVER OF TRIAL BY JURY AND AGREEMENT AS TO LOCATION OF LEGAL PROCEEDINGS. The circumstances of this commercial contract bear no indicia of fraud, undue influence or coercion, and the FAC does not allege any impropriety with respect to the execution of the Agreement.

### b. The Clause Is Neither Unfair Nor Unreasonable.

Nor is there anything unfair or unreasonable about the selection of California as the venue for resolution of the Parties' disputes. Plaintiff may argue that the physical distance from California to Nevada makes litigation in that forum inconvenient, but mere inconvenience to Plaintiff is not enough to render the clause unenforceable. *See Pratt v. Silversea Cruises, Ltd.*, 2005 U.S. Dist. LEXIS 14339, at *11-12 (N.D.Cal. 2005) ("To meet the heavy burden required to overcome the presumption that a forum selection clause is valid, plaintiff must show that it is an *impossibility* for her to try her case, not simply a less convenient or effective means of doing so.") (emphasis added). *See also Manetti-Farrow, Inc., supra*, *Butler, supra* (citing *Contraves Inc. v. McDonnell Douglas Corp.*, 889 F. Supp. 470, 474 (M.D. Fla. 1995). Further, Plaintiff has engaged in extensive business with NBCU and the California-based Customers referenced in the FAC, and seeks to take 200-300 depositions of the Customers, the vast majority of whom are California residents. (Call Decl., at ¶8; Discovery Plan and Scheduling Order, Dkt. 16, at p. 2) Indeed, the majority of the customers for whom Plaintiff acted as custodian are California cannabis-related companies that are California residents. (Call Decl., at ¶5; McCormick Decl. at ¶2.) Thus, Plaintiff's likely argument of inconvenience is undermined by the fact that California is more convenient than Nevada.

Plaintiff had the opportunity to designate Nevada as the forum for possible litigation when it freely-negotiated the Agreement, but did not. Under these circumstances, Plaintiff cannot show that the forum selection clause is "so gravely difficult and inconvenient that [it] will for all practical purposes be deprived of [its] day in court." *Argueta, supra*, 87 F.3d at 325.

     **c.**     **No Public Policy of Nevada Militates Against Enforcement of The Forum-Selection Clause**

A state's public policy is not deemed "strong" enough to defeat a forum-selection clause unless enforcing the clause would override a state statute that *expressly restricts venue to that state*. *See Jones v. GNC Franchising, Inc.*, 211 F.3d 495 (9th Cir. 2000). Plaintiffs have not sued under any laws that expressly restrict venue to Nevada. Indeed, by contractual agreement, California law alone governs this action. Thus, Plaintiffs cannot invoke the "strong public policy" exception.

     **d.**     **The Parties Intended All Legal Actions to Proceed in California**

Plaintiffs may argue that the language contained in the Agreement is not sufficiently clear to mandate proceeding in the Sonoma County state courts, and thus the provision is unenforceable. However, when viewed as a whole, the Agreement evidences the Parties' intent to resolve any disputes *in Sonoma County, California*, where all of NBCU's offices are located and where there is no U.S. District Court, and under California law and it is this intent that the Court should now effectuate. (RJN, Ex. A, at ¶31; Call Decl., at ¶7)

Thus, reference in the Agreement to all actions taking place in the County of NBCU's office where the account was opened, demonstrates the Parties' intent to litigate disputes in Sonoma County, California. When viewed together with the Agreement's choice of law provisions mandating the application of California law to the Parties' disputes, there is no question that the Parties clearly intended that the Plaintiff's contract claims concerning its account with NBCU be resolved in Sonoma County, California. (RJN, Ex. A, at ¶ 32.) Plaintiff simply cannot meet the heavy burden of establishing that the forum selection provisions should not be enforced and its case therefore should not proceed in this forum. Dismissal pursuant to Rule 12(b)(3) is warranted.

**D. Alternatively, This Case Should Be Transferred To The United States District Court For The Northern District Of California.**

Although dismissal is appropriate, the Court may also enforce the forum selection provision by transferring the case to the United States District Court for the Northern District of California pursuant to Title 28 U.S.C. § 1406(a) or 28 U.S.C. § 1404(a). *See Laurel Village, supra* at *5 n.1. The analysis for transfer under both statutes is essentially the same as that discussed above for dismissal. Motions based on 28 U.S.C. § 1406(a), 28 U.S.C. § 1404(a) and Fed. R. Civ. P. 12(b)(3) "are essentially interchangeable, except insofar as a *Section 1406(a)* motion gives the court the option to transfer in lieu of dismissal." *See* 17-111 Moore s Federal Practice - Civil § 111.04.

Ninth Circuit courts have repeatedly held that the presence of a forum-selection clause is "*strong evidence* in support of transfer." *Interline v. Zim Israel Navigation Co. Ltd.,* No. C 00- 0939 SC, 2000 U.S. Dist. LEXIS 10867, at *11 (N.D. Cal. July 27, 2000) (emphasis added). Indeed, where, as here, the parties have specifically negotiated and agreed to a particular venue, "[t]he presence of a forum selection clause is usually 'a *significant factor that figures centrally in the court's calculus.*'" *Fireman s Fund Ins. Co. v. M.V. Dole Ecuador,* No. C-94-3691-CAL ARB, 1995 U.S. Dist. LEXIS 7996*,* at *2 (N.D. Cal. June 1, 1995) (internal quotation and citation omitted, emphasis added). This is because courts are loath to undermine negotiated commercial contracts:

> Where a choice of forum is made in arm's-length negotiations by experienced and sophisticated businessmen, absent some compelling and countervailing reason, the *forum selection clause should be honored by the parties and enforced by the courts.*

*Vogt-Nem, Inc. v. W. African Shipping Co.,* 263 F. Supp. 2d 1226, 1234 (N.D. Cal. 2002) (emphasis added, citation omitted). Ninth Circuit courts have held that "[w]hile courts normally defer to a plaintiff's choice of forum, such deference is inappropriate where the plaintiff has already freely contractually chosen an appropriate venue . . .[Thus,] the plaintiffs bear the burden of demonstrating why they should not be bound by their contractual choice of forum." *Unisys Corp. v. Access Co.*, 2005 U.S. Dist. LEXIS 31897, at *13 (N.D. Cal. Nov. 23, 2005)*, quoting Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 880 (3rd Cir. 1995).

Thus, just as the Court should dismiss the FAC under Rule 12(b)(3), the forum selection provision should control if the Court determines to transfer this action pursuant to 28 U.S.C. §

**DEFENDANTS' MOTION TO DISMISS FIRST AMENDED COMPLAINT**

BUCHALTER
A PROFESSIONAL CORPORATION
SAN FRANCISCO

1404(a) and § 1406(a). Because the parties themselves agreed to a California forum, a court must deem all factors relating to the private interests of the parties (such as the "relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses; possibility of view of premises, if view would be appropriate to the action; and all other practical problems that make trial of a case easy, expeditious and inexpensive") as weighing "entirely in favor of the preselected forum." *Sun v. Advanced China Healthcare, Inc.*, 901 F.3d 1081, 1087-1088 (9th Cir., 2018) (quoting *Atl. Marine Const. Co. v. U.S. Dist. Court for W. Dist. of Tex.*, 571 U.S. 49, 64, 62n. 6).

Additionally, California is an adequate alternative forum. "Generally, an alternative forum is available where the defendant is amenable to service of process and the forum provides some remedy for the wrong at issue." *See Tuazon v. R.J. Reynolds Tobacco Co.,* 433 F.3d 1163, 1178 (9th Cir. 2006) (citations and quotations omitted). Both requirements are met here. Defendants are already subject to the jurisdiction of the California Courts, and where a defendant is already subject to the jurisdiction of another state, the adequacy of an alternative forum is typically met. *See Lockman Found v. Evangelical All Mission,* 930 F.2d 764, 768 (9th Cir. 1991).)

Here, Defendants, all California residents conducting business in California, are subject to jurisdiction in California. Furthermore, the FAC focuses on the California entity Greenbax, and Customers, the majority of whom are California-based and none of which are Nevada based. (See e.g. Dkt. 11 at ¶¶ 21-30; Call Decl. at ¶5; McCormick Decl. at ¶2.) The claims at issue surround alleged calls and emails purportedly made from California, by California residents, in connection with mostly California-based Customers. As such, California is an adequate alternative forum.

Further, California is an adequate alternative forum because Plaintiff can seek redress of its claims there. The Agreement provides, *inter alia*, that California law applies. (RJN, Ex. A, at ¶ 31). Therefore, there are no fewer remedies available in California. *See Creative Tech., Ltd. V. Aztech Sys. PTE,* 61 F.3d 696, 702 (9th Cir. 1995); *see also Tuazon,* 433 F.3d at 1178.

Indeed, private and public interest factors favor a Californian forum. *See Lueck v. Sundstrand Corp.,* 236 F.3d 1137, 1142 (9th Cir. 2001). NBCU is a California credit union. (Call Decl., at ¶1.) Call and McCormick both reside in California, and key witnesses reside in California.

CASE NO. 3:23-cv-00444-LRH-CSD

**DEFENDANTS' MOTION TO DISMISS FIRST AMENDED COMPLAINT**

(Call Decl., at ¶¶5-6; McCormick Decl., at ¶¶2-3.) Indeed, it is to these non-Nevada witnesses to whom Plaintiff alleges the communications at issue were directed, and from whom Plaintiff seeks 200-300 depositions. (Call Decl., at ¶5; McCormick Decl., at ¶2, Discovery Plan and Scheduling Order, Dkt. 16, at p. 2.) Further, Defendants' access to physical evidence and other sources of proof are in California, and the events giving rise to this lawsuit are alleged to have emanated from California. (Dkt. 11 at ¶¶ 31, 33-36, 56-57.) Moreover, unwilling California witnesses cannot be compelled to Nevada and if they did come, it would be costly. *See* Fed. R. Civ. P. 45(c)(1). Further, a California judgment would be enforceable against Defendants because they are based there.

The public interest factors likewise favor dismissal. *See Loya v. Starwood Hotels & Resorts Worldwide, Inc.*, 583 F.3d 656, 664 (9th Cir. 2009). First, the District of Nevada has an extremely busy docket. *See, e.g., Van Assche v. Nevada*, 2019 WL 2440078, at *1 (D. Nev. June 11, 2019). Second, the jury would be determining issues involving facts occurring almost entirely in California. Third, there is no local interest in having the controversy resolved in Nevada as this case involves residents of California allegedly making calls, emails, and a transaction from California, in connection with non-Nevada Customers. (Dkt. 11 at ¶¶ 31, 33-36, 46, 53-57; Call Decl. ¶ 6; McCormick Decl. ¶ 3.) Fourth, the Agreement requires application of California law in the California state court. There can be no dispute that California courts can determine the claims at issue and apply California law to the facts of the case.

## IV. PLAINTIFF FAILS TO STATE A CLAIM FOR RELIEF

A pleading must give "fair notice" of the claim being asserted and the "grounds upon which it rests." *Bell Atlantic Corp. v. Twombly* 550 US 544, 555 (2007). In addition to providing "fair notice" of the claim, a pleading's factual allegations must show "that the pleader is entitled to relief" (FRCP 8(a)(2)). To do so, the pleading must allege "enough facts to state a claim to relief that is plausible on its face." *Twombly*, supra, 550 U.S. at 570. To determine whether a pleading adequately states a plausible claim for relief, *Iqbal* requires a two-prong analysis: First, conclusory allegations are disregarded. To establish a "plausible" claim, the complaint must contain "more than labels and conclusions" or "formulaic recitations of the elements of a cause of action." Court "are not bound to accept as true a legal conclusion couched as a factual allegation." *Twombly, supra*,

550 US at 555. Secondly, to satisfy "plausibility," the complaint must include "well-pleaded, nonconclusory factual allegation[s]" that if assumed true will at least "plausibly suggest" grounds for relief. See *Iqbal*, supra, 556 US at 680. When the claims in a complaint have not crossed the line "from conceivable to plausible," the complaint must be dismissed. *Twombly*, 550 U.S. at 570.

### A. Plaintiff's First Claim for Defamation Per Se Fails

"A claim for defamation per se generally serves to protect the reputation of an individual." *Clark County Sch. Dist. v. Virtual Educ. Software, Inc.*, 213 P.3d 496, 504 (Nev. 2009). Defamation per se is not a proper claim where the alleged communications at issue concern the goods or services provided by a business entity, and plaintiff seeks to redress injury to economic interests. *Id.* Plaintiff alleges Defendants defamed ACTC. (Dkt. 11, ¶¶ 62, 66.) There is no allegation that any individual was defamed. The First Claim fails.

### B. Plaintiff's Second Claim for Business Disparagement Fails

To maintain a claim for business disparagement, the plaintiff must plead facts setting forth: "(1) a false and disparaging statement, (2) the unprivileged publication by the defendant, (3) malice, and (4) special damages." *Clark, supra*, 125 Nev. 374, 386 (footnotes and citations omitted). Malice is proven when the plaintiff can show either that defendant published the disparaging statement with the intent to cause harm to plaintiff's pecuniary interests, or the defendant published a disparaging remark knowing its falsity or with reckless disregard for its truth. *Id.*

Plaintiff's claim rests on just the sort of conclusory allegations condemned by the courts. ACTC alleges in conclusory fashion that "[a]s described above, Defendants engaged in the false and disparaging statements about ACTC to Greenbax customers" (Dkt. 11, ¶ 68), and that "Defendants were guilty of malice when they disparaged ACTC. Defendants either published the disparaging statements about ACTC with the intent to cause harm to ACTC's pecuniary interests, or they published the disparaging statements knowing the statements were false or with reckless disregard for the truth, or both." (*Id.*, ¶ 70.) Allegations that defendants' statements "'were known by [them] to be false at the time they were made, were malicious or were made with reckless disregard as to their veracity'… [are] precisely the sort of allegations that *Twombly* and *Iqbal* rejected." *Mayfield v. Nat'l Ass'n for Stock Car Auto Racing, Inc.* (4th Cir. 2012) 674 F3d 369, 378.

Plaintiffs fail to allege *facts* that support their conclusions and push them over the line "from conceivable to plausible." Paragraph 31 of the FAC does not purport to allege any false statements, and the allegations of paragraph 33 are wholly conclusory. Plaintiff states that the email referred to in ¶ 34 is attached to the FAC, but no such email is attached. In any event, Plaintiff concedes that "[f]ollowing the July 26, 2023 disabling of the Greenbax platform, the earliest [Plaintiff] could have processed Greenbax client requests to transfer funds would have been July 28, 2023, assuming [Plaintiff] was provided such requests by July 27, 2023." (Dkt. 11 at ¶ 39.) Thus, the complained of July 27 and 28 communications, were not false as the Customers could not access their accounts.

Plaintiff's claims of "malice" are equally unsupported by *facts*. ACTC alleges that NBCU, and "by extension" its officers Call and McCormick, were concerned that 200-300 Customers would take their business to other financial institutions, including potentially ACTC, and therefore NBCU would lose a significant customer base. Second, Plaintiff alleges that NBCU, Call, and McCormick intended to indirectly assert pressure on MRBD to reinstate the Greenbax platform. (*Id.*, at ¶ 58) No intent to cause harm to ACTC could arise from an alleged attempt to assert pressure on MRBD. Further, concern that Greenbax would lose business is not equivalent to intent to harm ACTC. Plaintiff's own allegations show Call's and McCormick's conduct was aimed at protecting Greenbax and the Customers from the harm caused by their inability to access their accounts. *See*, *16630 Southfield Ltd. P'ship v. Flagstar Bank, F.S.B.*, 727 F3d 502, 505 (6th Cir. 2013).

Plaintiff also fails to allege any basis for special damages, which are usually synonymous with pecuniary loss. *Sherman v. Smead*, 527 P.3d 973, *6 n. 5 (Nev. Ct. App. 2023) (citing 25 C.J.S. Damages § 4 (2022)). A claim for business disparagement requires that the plaintiff set forth facts establishing economic loss attributable to the defendant's disparaging remarks. Plaintiff's may also show economic loss by showing a general decline of business; however, the general decline of business must be the result of the disparaging statements and the plaintiff must eliminate other potential causes. *Clark, supra*, 125 Nev. 374, 386-387. Plaintiff makes no allegation of any such pecuniary loss or any decline in business – much less attributable to the alleged "defamation."[4]

---

[4] Plaintiff states that it required "significant expense and time" to obtain data to reconcile accounts. There is no allegation that this was caused by allegedly defamatory statements. (Dkt. 11 at ¶ 43.)

BUCHALTER
A PROFESSIONAL CORPORATION
SAN FRANCISCO

**DEFENDANTS' MOTION TO DISMISS FIRST AMENDED COMPLAINT**

## C. Plaintiff's Third Claim for Deceptive Trade Practices Fails

Plaintiff's Deceptive Trade Practices claim rests on conclusory and non-specific allegations that Defendants "made false representations to customers and to the NFID as described above in violation of NRS 598.0915(15)" (Dkt. 11 at ¶ 74) and "disparaged the services ACTC provides by making false and/or misleading representations of fact in violation of NRS 598.0915(8)." (*Id.* at ¶ 75), without identifying the purportedly "false" representations.

Where, as here, a claim is based upon allegedly fraudulent conduct—even if fraud is not a necessary element of the claim—the claim is said to be "grounded in fraud" or to "sound in fraud," and the pleading of that claim must satisfy the Fed. R. Civ. P. Rule 9(b) particularity requirements. Claims under NRS 598.0915 sound in fraud and are subject to the heightened pleading requirements of Fed.R.Civ.P. 9(b). *Austin v. Allied Collection Servs.*, No. 2:21-cv-01593-CDS-NJK, 2023 U.S. Dist. LEXIS 11676, at *11 (D. Nev., January 23, 2023); *Shlesinger v. Bank of Am., N.A.*, 2:11-cv-2020-PMP-PA, 2012 U.S. Dist. LEXIS 102030, at *16-17 (D. Nev., July 23, 2012). Under Rule 9(b), a party must "state with particularity the circumstances constituting fraud." Pleading fraud with particularity requires allegations regarding the "time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentations." *Swartz v. KPMG LLP*, 476 F.3d 756, 764 (9th Cir. 2007) (quotation omitted). Further, "the plaintiff must set forth what is false or misleading about a statement, and why it is false." *Ebeid ex rel. U.S. v. Lungwitz*, 616 F.3d 993, 998 (9th Cir. 2010) (quotation omitted). Plaintiff fails in this regard.

Plaintiff fails to specify what purported "false representations" it relies upon. Neither Defendants nor the Court are required to comb through the complaint in an effort to determine what Plaintiff is referring to. Plaintiff's claim that Defendants made misrepresentations "as described above" is improper "shotgun pleading." See *Weiland v. Palm Beach County Sheriff's Office* 792 F3d 1313, 1321-1322 (11th Cir. 2015). Indeed, the sole allegation in the FAC regarding purported representations to the NFID is that "Call and McCormick personally submitted complaints to the NFID which contained misrepresentations." (Dkt. 11, at ¶ 57) This wholly conclusory claim contains no allegation of the specific content of the false representations (*Schreiber Distrib. Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393, 1401 (9th Cir. 1986)), or "what is false or misleading

BUCHALTER
A PROFESSIONAL CORPORATION
SAN FRANCISCO

**DEFENDANTS' MOTION TO DISMISS FIRST AMENDED COMPLAINT**

about a statement, and why it is false." *Ebeid ex rel. U.S. v. Lungwitz*, 616 F.3d 993, 998 (9th Cir. 2010) (quotation omitted).  Plaintiff's Third Claim fails.

### D.  Plaintiff's Intentional Interference Claim Fails

Plaintiff's Fourth Claim for Intentional Interference With Prospective Economic Advantage again is based on conclusory, non-specific allegations.  Plaintiff fails to state a claim, as it fails to identify a single specific person or entity with whom it had a prospective contractual relationship, much less one with whom a contractual relationship was prevented.

The elements of the tort of intentional interference with prospective economic advantage are (1) a prospective contractual relationship between plaintiff and a third party; (2) knowledge by defendant of the prospective relationship; (3) intent to harm plaintiff by preventing the relationship; (4) the absence of privilege or justification by the defendant; and (5) actual harm to the plaintiff as a result of the defendant's conduct. *Wichinsky v. Mosa*, 109 Nev. 84, 87-88, 847 P.2d 727, 729-30 (1993). Plaintiff alleges that Defendants intended to harm ACTC by preventing the prospective relationship "between the 200-300 Greenbax customers and ACTC" in that "Defendants intended to deter the Greenbax customers from opening accounts and transferring their funds to ACTC," and "interfered with this potential relationship by falsely advising the 200- 300 Greenbax customers that ACTC was engaged in wrongdoing." (Dkt. 11, at ¶ 80)

When a claim for tortious interference sounds in fraud it is subject to Rule 9(b)'s heightened pleading requirements. *Borsellino v. Goldman Sachs Group, Inc*. (7th Cir. 2007) 477 F3d 502, 507. Plaintiff fails to identify with specificity a single person or entity with whom it had a "prospective economic relationship." Indeed, Plaintiff fails to allege that any relationship between ACTC and even one of the "200 to 300" Customers was actually prevented. Plaintiff simply alleges that "ACTC suffered actual harm as a result of the Defendants' conduct." This is just the sort of "formulaic recitation[] of the elements of a cause of action" rejected by *Twombly* and *Iqbal*.

### E.  The Fifth Claim for Intentional Interference with Contractual Relations Fails

In Nevada, to state a claim for intentional interference with contractual relationships a plaintiff must allege: "(1) a valid and existing contract; (2) the defendant's knowledge of the contract; (3) intentional acts intended or designed to disrupt the contractual relationship; (4) actual

**DEFENDANTS' MOTION TO DISMISS FIRST AMENDED COMPLAINT**

disruption of the contract; and (5) resulting damage." *J.J. Indus., LLC v. Bennett*, 119 Nev. 269, 71 P.3d 1264, 1267 (Nev. 2003). Defendant's "mere knowledge of the contract is insufficient to establish that the defendant intended or designed to disrupt the plaintiff's contractual relationship; instead, the plaintiff must demonstrate that the defendant intended to induce the other party to breach the contract with the plaintiff." *Id*. at 1268.

Plaintiff alleges that in "[i]n addition to the Business Account Application and its Custodial Agreement between ACTC and NBCU, ACTC was party to a similar Business Account Application and a contained Custodial Agreement with Greenbax." (Dkt. 11, ¶ 84.) Plaintiff then alleges Defendants "knew of the Account Application and its Custodial Agreement between ACTC and Greenbax" (*Id*., ¶ 85); "engaged in intentional acts that were intended and designed to disrupt the contractual relationship between ACTC and Greenbax" (*Id*., ¶ 86); and that "Defendants' actions caused actual disruption of the ACTC-Greenbax contract" (*Id*., ¶ 87).

As is its habit, Plaintiff fails to attach a copy of the alleged contract. There is no allegation of the terms of the agreement, how any "intentional acts" of Defendants interfered with the undisclosed contract, or the nature of any alleged breach. See *Bissessur v. Indiana Univ. Bd. of Trustees* (7th Cir. 2009) 581 F3d 599, 603. Plaintiff's claim is a prime example of the "formulaic recitation[] of the elements of a cause of action" condemned by courts, and should be dismissed.

**F. Plaintiff's Sixth Claim for Breach of Contract Fails**

Plaintiff's Sixth Claim is equally baseless. Again Plaintiff fails to attach a copy of the alleged contract. Plaintiff again relies on mere legal conclusions, couched as allegations of fact, in its attempt to state a claim. Indeed, Plaintiff's internally contradictory allegations belie its claim.

Under Nevada law, "the plaintiff in a breach of contract action [must] show (1) the existence of a valid contract, (2) a breach by the defendant, and (3) damage as a result of the breach." *Lucky Lucy D LLC v. LGS Casino LLC*, 534 P.3d 689, 691 (Nev. 2023) (internal citations and quotation omitted). A written contract may be pleaded either by setting out the terms verbatim in the complaint or attaching a copy of the contract, or by its legal effect. To plead a contract by its legal effect, plaintiff must allege the substance of its relevant terms. *Roberts v. UBS AG*, CV F 12-0724 LJO SKO, 2013 U.S. Dist. LEXIS 12779, at *50 (E.D. Cal., 2013).

Plaintiff alleges NBCU executed a "Business Account Application" that was twenty eight (28) pages in length, and contains "various subparts." (Dkt. 11, ¶ 15) Plaintiff further alleges that there is a seven (7) page agreement entitled "Custodial Agreement" embedded within the 28 page BAA. (*Id*., at ¶ 17) The FAC does not describe any of the "various subparts" of the purported "Business Account Application" or the "Custodial Agreement," either *in haec verba* or by alleging their substance. Rather, Plaintiff alleges the legal conclusions that "[t]he Business Account Application and the Custodial Agreement governs (sic) the relationship between ACTC and NBCU, including ACTC's duties as custodian and NBCU's duties as ACTC's client" (*Id*., at ¶ 17), and that "ACTC holds an account with NBCU, and funds deposited in that account are subject to NBCU's duties under the Business Account Application and Custodial Agreement." (*Id*., at ¶ 18). Plaintiff then alleges NBCU removed funds from ACTC's custodial account at NBCU. (*Id*., at ¶ 92).

Such pleading is inadequate. Plaintiff's allegations are too vague and indefinite due to Plaintiff's failure to allege, in nonconclusory language, the essential terms of the parties' purported contract, including the specific provisions of the contract upon which liability is predicated. *See Roberts v. UBS AG*, *supra*, 2013 U.S. Dist. LEXIS 12779, at *50-51 (claim for breach of contract dismissed where amended complaint failed to sufficiently identify precise contract terms, their breach, how they were breached, and plaintiff's consideration for the contract); *Bissessur v. Indiana Univ. Bd. of Trustees*, *supra*, 581 F3d at 603.

Not only are Plaintiff's allegations fatally vague and conclusory, ACTC's own inconsistent allegations demonstrate that its claim fails. Plaintiff purposely relies on the wrong contract in its misguided attempt to avoid the express venue and choice of law provisions in the actual Agreement that governs Plaintiff's account at NBCU. While Plaintiff makes conclusory allegations that the funds ACTC holds as custodian for the Customers are subject to some unspecified provisions of the BAA and its Custodial Agreement (Dkt. 11, ¶¶ 17-18, 24), Plaintiff admits NBCU acted as the sponsor bank for Greenbax, that the Customers processed payments and deposits through NBCU as the sponsor bank, and that ACTC held the Customer funds at issue in an account at NBCU. (Dkt. 11 at ¶¶ 18, 22-23) This ACTC account *at NBCU* is the account at issue. (Dkt. 11 at ¶ 18, 46-48, 91-92, 100-101, 103.) Plaintiff's reliance on supposed unpled terms of the BAA and its Custodial

CASE NO. 3:23-cv-00444-LRH-CSD
**DEFENDANTS' MOTION TO DISMISS FIRST AMENDED COMPLAINT**

BUCHALTER
A PROFESSIONAL CORPORATION
SAN FRANCISCO

Agreement fails. Funds held in an account at a financial institution such as NBCU are subject to the terms of the financial institution's account agreement with its account holder. Where, as here, the focus of the complaint and the breach of contract claim is based upon funds held at NBCU, the terms of the NBCU's account Agreement governs. Plaintiff engages in a charade of conclusory pleading to evade the terms of the Agreement that governs funds held in the account at NBCU.

**G.      The Breach of Implied Covenant of Good Faith and Fair Dealing Claim Fails.**

Plaintiff's Seventh Caim again relies on conclusory parroting of the elements of a claim without any supporting facts. Under Nevada law all contracts impose upon the parties an implied covenant of good faith and fair dealing, which prohibits arbitrary or unfair acts by one party that work to the disadvantage of the other. *Nelson v. Heer*, 123 Nev. 217, 226 (Nev., 2007). It is equally well-settled that the covenant of good faith may not be read to prohibit a party from doing that which is expressly permitted by an agreement. *Carma Developers (Cal.), Inc. v. Marathon Development California, Inc.*, 2 Cal. 4th 342, 374, citing *VTR, Incorporated v. Goodyear Tire & Rubber Company* (S.D.N.Y. 1969) 303 F.Supp. 773, 777-778. By the same token, "[t]here can be no claim for breach of implied covenant of good faith and fair dealing if there is not an enforceable contract provision or breach thereof." *Ramanathan v. Saxon Mortg. Servs.*, No. 2:10-CV-02061-KJD-LRL, 2011 U.S. Dist. LEXIS 68297, at *7, 2011 WL 2532415, at *3 (D. Nev., 2011).

Plaintiff's assertions are wholly conclusory that "NBCU engaged in the [unspecified] conduct", and "deliberately contravened, the [unspecified] purpose of the" BAA and Custodial Agreement. (Dkt. 11, ¶ 97). As discussed above, the FAC fails to allege an enforceable contract or breach of any specific provision thereof. Plaintiff therefore cannot allege a claim for breach of the implied covenant of good faith and fair dealing.

**H.      Plaintiff's Eighth Claim for Unjust Enrichment Fails.**

Plaintiff alleges this claim "in the alternative" to its claim for breach of contract, conceding that it cannot "make a claim for unjust enrichment with respect to actions that are controlled by a contract to which Plaintiff is a party." *Thomas v. Wachovia Mortgage, FSB*, 2011 WL 3159169, *6 (D. Nev. July 25, 2011); *accord Korte Constr. Co. v. State (In re Bd. of Regents of the Nev. Sys. of Higher Educ.)*, 492 P.3d 540, 544 ("To permit recovery by quasi-contract where a written

**DEFENDANTS' MOTION TO DISMISS FIRST AMENDED COMPLAINT**

agreement exists would constitute a subversion of contractual principles.")

The Eighth Claim fails on its own terms as well. "Unjust enrichment exists when the plaintiff confers a benefit on the defendant, the defendant appreciates such benefit, and there is acceptance and retention by the defendant of such benefit under circumstances such that it would be inequitable for him to retain the benefit without payment of the value thereof." *Certified Fire Prot., Inc. v. Precision Constr., Inc.*, 128 Nev. 371, 381, 283 P.3d 250, 257 (2012) (internal quotation omitted). Plaintiff admits that the funds in the NBCU account at issue "belong to Greenbax customers" – not to Plaintiff. (Dkt. 11, at ¶ 23). Plaintiff therefore cannot allege that it would be "inequitable" if such funds are not provided to ACTC. (Dkt. 11, at ¶ 102)

Indeed, Plaintiff's Eighth Claim once again simply regurgitates the elements of the claim without any non-conclusory allegations of supporting facts. Its conclusory allegations that NBCU "illegally" withdrew the funds (Dkt. 11, at ¶ 46) is precisely the sort of allegation that *Twombly* and *Iqbal* rejected. The Eighth Claim should be dismissed.

**I.       Plaintiff's Ninth Claim for Conversion Fails**

Conversion is "a distinct act of dominion wrongfully exerted over another's personal property in denial of, or inconsistent with his title or rights therein . . . ." *Evans v. Dean Witter Reynolds, Inc.*, 116 Nev. 598, 606, 5 P.3d 1043, 1048 (2000) (quoting *Wantz v. Redfield*, 74 Nev. 196, 198, 326 P.2d 413, 414 (1958)). Plaintiff admits that the funds in the NBCU account "belong to Greenbax customers," and hence are not Plaintiff's property. (Dkt. 11, at ¶ 23) While Plaintiff alleges in conclusory fashion that the funds held for the benefit of Customers "were subject to the terms of the Business Account Application and its Custodial Agreement" (Dkt. 11, at ¶ 24), it fails to plead any provision of that alleged agreement that gives it rights in such funds, or that supports the bare legal conclusion of its pleading. Indeed, this Custodial Agreement does not govern the ACTC account held at NBCU. (*See* Section III(C).) The Ninth Claim should be dismissed.

DATED: November 13, 2023                                    CAMPBELL & WILLIAMS

By: _____*/s/ Samuel R. Mirkovich*_____
             Samuel R. Mirkovich
             Counsel for Defendants

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that service of the foregoing Defendants' Motion To Dismiss First Amended Complaint For Lack Of Personal Jurisdiction (Fed.R.Civ.P. 12(B)(2)), Improper Venue (Fed.R.Civ.P. 12(B)(3)), Forum *Non-Conveniens* And Failure To State A Claim Upon Which Relief May Be Granted (Fed.R.Civ.P. 12(B)(6)) was served on the 13th day of November, 2023 via the Court's CM/ECF electronic filing system addressed to all parties on the e-service list.

/s/ John Y. Chong
An employee of Campbell & Williams

CASE NO. 3:23-cv-00444-LRH-CSD

**DEFENDANTS' MOTION TO DISMISS FIRST AMENDED COMPLAINT**

BUCHALTER
A PROFESSIONAL CORPORATION
SAN FRANCISCO