UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

AUSTIN CAPITAL TRUST COMPANY, LLC,

Plaintiff,

v.

NORTH BAY CREDIT UNION, *et al.*,

Defendants.

Case No. 3:23-cv-00444-MMD-CSD

ORDER

I.    **SUMMARY**

Plaintiff Austin Capital Trust Company, LLC, filed suit against Defendants North Bay Credit Union, Chris Call, and Carole McCormick after a banking dispute between related third parties soured their business relationship. Before the Court is Defendants' motion to dismiss the First Amended Complaint for lack of personal jurisdiction under Fed. R. Civ. P. 12(b)(2), improper venue under Fed. R. Civ. P. 12(b)(3), *forum non-conveniens*, and failure to state a claim upon which relief may be granted under Fed. R. Civ. P. 12(b)(6). (ECF No. 17 ("Motion").)[1] As explained below, the Court grants dismissal without prejudice for lack of personal jurisdiction.[2]

II.   **BACKGROUND**

The following facts are adapted from Plaintiff's First Amended Complaint ("FAC") (ECF No. 11). Austin Capital is a non-depository Nevada-based limited liability trust company that acts as a custodian of funds for companies operating in the cannabis industry. (*Id*. at 1, 4.) North Bay is a California non-profit corporation and chartered credit

_____

[1]Plaintiff responded (ECF No. 27), and Defendants replied (ECF No. 29).

[2]Because the Court grants the Motion based on lack of personal jurisdiction, it does not reach or address the parties' arguments as to other grounds for dismissal.

union that also provides financial services to companies that operate in the cannabis space. (*Id*.) Defendants Chris Call and Carole McCormick are California residents and officers of North Bay. (*Id*. at 2.) North Bay is the majority owner of Higher Growth LLC d/b/a Greenbax Marketplace, Inc., a company that enables cannabis companies to transact banking online. (*Id*. at 2, 5.) Greenbax Marketplace clients conduct online banking through an online banking platform licensed to Greenbax Marketplace by MRB Direct, Inc., its service provider. (*Id*. at 4, 5.) McCormick is Greenbax Marketplace's President. (*Id*. at 2.)

Austin Capital holds a bank account at North Bay which contains the funds of 200-300 Austin Capital clients, many of whom also use Greenbax Marketplace to conduct online banking transactions ("Austin Capital-Greenbax Clients"). (*Id*. at 4, 5.) In May of 2021, North Bay and Austin Capital executed Austin Capital's Business Account Application and Custodial Agreement ("the Agreement") which Plaintiff claims governs the custodial relationship between Austin Capital and North Bay as to the client funds held in Austin Capital's North Bay bank account. (*Id*. at 4.) By mid-July of 2023, a dispute arose between third parties MRB Direct and Greenbax over Greenbax's failure to pay fees it owed to MRB Direct for its online banking platform license. (*Id*. at 5.) That dispute resulted in MRB Direct disabling the Greenbax Marketplace platform, which prevented the Austin Capital-Greenbax Clients from accessing their funds or conducting banking transactions online. (*Id*. at 5-8.)

After MRB Direct disabled the Greenbax platform, McCormick and Call sent a series of North Bay-affiliated emails to the Austin Capital-Greenbax Clients accusing Austin Capital and MRB Direct of intentional subterfuge. (*Id*. at 6, 7.) McCormick and Call encouraged email recipients to contact Austin Capital's Nevada-based regulator, the Nevada Financial Institutions Division ("NFID"), to report misconduct and file regulatory complaints. (*Id*.) The emails resulted in at least 23 regulatory complaints lodged against Austin Capital in Nevada, two of which were filed by Call and McCormick. (*Id*. at 9, 11.)

Simultaneous to the email communications, North Bay withdrew $2,525,565.84 from the bank account Austin Capital held at North Bay. (*Id*.)

This series of events resulted in Austin Capital filing this action. (ECF No. 1.) Plaintiff alleges nine claims against Defendants. Against all three Defendants, Plaintiff alleges claims for defamation per se, business disparagement, deceptive trade practices, intentional interference with prospective economic advantage, and intentional interference with contractual relations. (ECF No. 11 at 12-15.) Against North Bay, Plaintiff alleges claims for breach of contract, breach of the implied covenant of good faith and fair dealing, unjust enrichment, and conversion. (*Id*. at 15-17.)

### III.    DISCUSSION

"Personal jurisdiction must exist for each claim asserted against a defendant." *Action Embroidery Corp. v. Atl. Embroidery, Inc.*, 368 F.3d 1174, 1180 (9th Cir. 2004) (citation omitted). A two-part analysis governs whether a court retains personal jurisdiction over a nonresident defendant. *See Chan v. Soc'y Expeditions, Inc.*, 39 F.3d 1398, 1404 (9th Cir. 1994). "First, the exercise of jurisdiction must satisfy the requirements of the applicable state long-arm statute." *Id.* Because "Nevada's long-arm statute, NRS [§] 14.065, reaches the limits of due process set by the United States Constitution," the Court moves on to the second part of the analysis. *Baker v. Eighth Jud. Dist. Ct. ex rel. Cnty. of Clark*, 999 P.2d 1020, 1023 (Nev. 2000) (citation omitted).

"Second, the exercise of jurisdiction must comport with federal due process." *Chan*, 39 F.3d at 1404-05 (citation omitted). "Due process requires that nonresident defendants have certain minimum contacts with the forum state so that the exercise of jurisdiction does not offend traditional notions of fair play and substantial justice." *Id.* at 1405 (citing *Int'l Shoe v. Washington*, 326 U.S. 310, 316 (1945)). Courts analyze this constitutional question with reference to two forms of jurisdiction: general and specific jurisdiction. See *Bristol-Myers Squibb Co. v. Superior Ct. of Cal., S.F. Cnty.*, 582 U.S. 255, 262 (2017).

Defendants argue that Plaintiff fails to make, and cannot make, the requisite prima facie showings of general or specific jurisdiction. (ECF No. 17 at 14.) Plaintiff's response, as to North Bay, relies on a forum selection clause in the Agreement which vests the United States District Court in Reno, Nevada, with sole and exclusive jurisdiction. (ECF No. 27 at 12.) Alternatively, Plaintiff argues that the Court has specific jurisdiction over Defendants because North Bay contracted with Nevada-based Austin Capital and Call and McCormick filed regulatory complaints in the forum and sent emails encouraging the Austin Capital-Greenbax Clients to do the same. (*Id*. at 13.)

### A.    General Jurisdiction

Defendants expressly challenge general jurisdiction. (ECF No. 17 at 14, 15.) Instead of substantively countering, Plaintiff states that it "does not waive arguments about [North Bay] being subject to this Court's general jurisdiction but focuses on specific jurisdiction in response to [North Bay's] arguments." (ECF No. 27 at 13 n.3.) When a defendant challenges personal jurisdiction, the party asserting jurisdiction has the burden to establish jurisdiction is proper. *See CollegeSource, Inc. v. AcademyOne, Inc.,* 653 F.3d 1066, 1073 (9th Cir. 2011) (citation omitted); *see also Taylor v. Portland Paramount Corp.,* 383 F.2d 634, 639 (9th Cir. 1967) ("the party asserting jurisdiction has the burden of establishing it if his allegations are challenged in any appropriate manner") (citation omitted). Plaintiff's non-waiver of rebuttal falls well short of its burden to establish general jurisdiction. Regardless, the Court finds that it lacks general jurisdiction over Defendants.

"For general jurisdiction to exist over a nonresident defendant . . . the defendant must engage in 'continuous and systematic general business contacts,' . . . that 'approximate physical presence' in the forum state." *CollegeSource, Inc.,* 653 F.3d at 1074 (citations omitted). The overriding inquiry is whether the defendant's "affiliations with the State are so 'continuous and systematic' as to render [it] essentially at home in the forum [s]tate." *Daimler AG v. Bauman*, 571 U.S. 117, 139 (2014) (citation omitted). "For an individual, the paradigm forum for the exercise of general jurisdiction is the individual's domicile; for a corporation, it is an equivalent place, one in which the corporation is fairly

regarded as at home." *Id.* at 137. Generally, a corporation is "at home" where it is incorporated and where it maintains its principal place of business. *Id*.

Defendants are not at home in Nevada. Plaintiff alleges that North Bay is a California corporation and that Call and McCormick are California residents. (ECF No. 11 at 1, 2.) While North Bay's principal place of business is not alleged, it is clear to the Court that it is maintained outside Nevada.[3] Moreover, Defendants' activities in Nevada as alleged in the FAC—North Bay contracting with Austin Capital and Call and McCormick filing regulatory complaints—are not "substantive" or "continuous and systematic" enough as to render any one of them as having a physical presence in the forum. Accordingly, Plaintiff has failed to meet its prima facie burden of establishing that general jurisdiction over Defendants exists.

## B.    Specific Jurisdiction

Apart from a consent argument, Plaintiff primarily argues that the Court has specific jurisdiction over Defendants. Specific jurisdiction exists where "[a] nonresident defendant's discrete, isolated contacts with the forum support jurisdiction on a cause of action arising directly out of its forum contacts[.]" *CollegeSource, Inc.*, 653 F.3d at 1075. In examining whether specific jurisdiction exists, the minimum contacts inquiry is "defendant-focused"—the relationship to be examined is that between the defendant and the forum state, and that relationship must arise out of the defendant's own contacts "with the forum state itself, not . . . with persons who reside there." *Walden v. Fiore*, 571 U.S. 277, 284-85 (2014). Specifically, a court may exercise specific jurisdiction over a defendant only where "the defendant's *suit-related conduct*" creates "a substantial connection with the forum [s]tate." *Williams v. Yamaha Motor Co. Ltd.*, 851 F.3d 1015, 1022-23 (9th Cir. 2017) (quoting *Walden*, 571 U.S. at 284-85) (emphasis added). To be

---

[3]Defendants proffer a declaration from Call, North Bay's Chief Executive Officer, in support of the Motion that is consistent with this finding. Call states that all North Bay's offices are located in Sonoma County, California, that North Bay has never had any offices outside of Sonoma County, and that all North Bay's business is conducted from California. (ECF No. 17-1 at 4.) Plaintiff does not allege otherwise.

clear, a plaintiff's contacts with the defendant and the forum state cannot drive the jurisdictional analysis, even though "a defendant's contacts with the forum [s]tate may be intertwined with [its] transactions or interactions with the plaintiff or other parties." *Walden*, 571 U.S. at 286, 289.

Incorporating these overarching considerations, the Ninth Circuit provides a three-prong test for analyzing an assertion of specific jurisdiction: "(1) The non-resident defendant must *purposefully direct* his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he *purposefully avails* himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws; (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and (3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e., it must be reasonable." *CollegeSource, Inc.*, 653 F.3d at 1076 (quoting *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 802 (9th Cir. 2004)) (emphasis added). The party asserting jurisdiction bears the burden of satisfying the first two prongs. *See id.* (citing *Sher v. Johnson*, 911 F.2d 1357, 1361 (9th Cir. 1990)). If it does so, the burden shifts to the party challenging jurisdiction to set forth a "compelling case" that the exercise of jurisdiction would be unreasonable. *See id.* (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476-78 (1985)).

The first prong, which refers to both purposeful availment and purposeful direction, is often determinative. *See, e.g., Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme* ("*La Ligue*"), 433 F.3d 1199, 1206 (9th Cir. 2006). "Purposeful availment" and "purposeful direction" call for distinct analyses. *See Schwarzenegger*, 374 F.3d at 802. Generally, "[a] purposeful availment analysis is most often used in suits sounding in contract," while a "purposeful direction analysis, on the other hand, is most often used in suits sounding in tort." *Id.* (citing *Dole Food Co., Inc. v. Watts,* 303 F.3d 1104, 1111 (9th Cir. 2002)). Defendants argue that only purposeful direction is at issue in this case because Plaintiff asserts tort claims against Call and McCormick and attempts to establish specific jurisdiction over North Bay through Call and McCormick. (ECF No. 17 at 15 n.3.)

6

Defendants' argument is unpersuasive as Plaintiff alleges contract-based claims against North Bay in addition to the tort-based claims against all three Defendants. Because Plaintiff alleges each claim type, both inquiries are relevant. *See Glob. Commodities Trading Grp., Inc. v. Beneficio de Arroz Choloma, S.A.*, 972 F.3d 1101, 1107 (9th Cir. 2020) (stating that when contract and tort claims are at issue, both purposeful direction and purposeful availment tests are relevant). Therefore, the Court addresses purposeful direction as to all three Defendants and purposeful availment as to North Bay**.**

### a.    Purposeful Direction

Courts evaluate purposeful direction using the three-part "*Calder*-effects" test. *See Schwarzenegger*, 374 F.3d at 803. Under this test, the plaintiff must allege that the defendant "(1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state." *La Ligue*, 433 F.3d at 1206 (citing and quoting *Schwarzenegger,* 374 F.3d at 803). The focus of this test is "on the forum in which the defendant's actions were felt" and does not require that "the actions themselves occurred within the forum." *Id*.

Defendants argue that Call and McCormick's emails were intended to prevent harm to North Bay, Greenbax, and their clients outside Nevada. (ECF No. 17 at 16.) Plaintiff counters that Call and McCormick purposefully directed their activities at the forum through the emails they sent and the regulatory complaints they filed. (ECF No. 27 at 14.) Although intentional acts, the Court finds that Call and McCormick's emails were not expressly aimed at Nevada. An evaluation of express aiming varies from case to case and "depends, to a significant degree, on the specific type of tort or other wrongful conduct at issue." *Picot v. Weston,* 780 F.3d 1206, 1214 (9th Cir. 2015) (citing *Schwarzenegger,* 374 F.3d at 807). The essence of the tort-based claims alleged is that Call and McCormick's emails defamed and disparaged Austin Capital resulting in loss of business and economic disadvantage. The emails were expressly aimed at, and individually targeted, Austin Capital-Greenbax Clients outside of Nevada and, therefore, have too

attenuated a connection to the forum to be deemed expressly aimed here. The Court finds that Call and McCormick's emails do not satisfy the second *Calder* prong.

The same cannot be said of the regulatory complaints Call and McCormick filed with the NFID in Nevada. The complaints were intentional acts expressly aimed at the forum. Although they satisfy the first two *Calder* prongs, they fail the third as Plaintiff fails to allege that the complaints caused harm in Nevada, let alone harm that Call and McCormick likely knew would be suffered here. Construing the FAC broadly, the only allegation of "harm" suffered by Austin Capital in Nevada is that the NFID Commissioner is requiring Austin Capital to respond to the regulatory complaints. The actual harm Plaintiff alleges in the FAC is defamatory in nature and reputation-based which resulted in the loss of business and the loss of economic advantage. The harms and losses alleged occurred *outside of Nevada* with *non-Nevada based customers*.

In other words, there is a mismatch between the intentional acts Call and McCormick expressly aimed at Nevada and the harm alleged in the FAC. The emails, which were not expressly aimed at Nevada, caused the harm alleged while Plaintiff has not alleged harm resulting from the specific regulatory complaints filed by Call and McCormick. Holding that Call and McCormick's regulatory complaints with the NFID caused defamation and loss of business to occur outside of Nevada would allow Plaintiff's contacts with Call and McCormick and Nevada to drive the jurisdictional analysis, which is not permissible. *See Walden*, 571 U.S. at 289 (concluding a "minimum contacts" analysis to be impermissible where it shifts the analytical framework from the defendant's contacts with the forum to the plaintiff's contacts with the defendant and forum). The Court finds that the regulatory complaints filed by Call and McCormick fail to satisfy *Calder*'s third prong.

The Court notes that Plaintiff also engages in a purposeful direction *Calder*-effects analysis as to North Bay by arguing that North Bay's corporate representatives carried out conduct in California that had effects in Nevada. (ECF No. 27 at 13, 14.) To the extent that Plaintiff attempts to rely on Call and McCormick's emails and regulatory complaints

to establish that North Bay purposefully directed activity at Nevada, the connection is even more tenuous than when applied to Call and McCormick. Based on the Court's finding that Call and McCormick's purported contacts fail the *Calder*-effects test, Call and McCormick's purported contacts may not form the basis for a finding that North Bay purposefully directed activity at Nevada.

Accordingly, the Court finds that Plaintiff has not made a prima facie case that North Bay, Call, or McCormick purposefully directed activity at Nevada.

### b.    Purposeful Availment

Plaintiff alleges that North Bay, Call, and McCormick "purposefully availed themselves to the specific jurisdiction of this Court" in the FAC (ECF No. 11 at 2) but seemingly abandons that allegation by later claiming purposeful direction is the proper inquiry for tort cases like this one (ECF No. 27 at 11, 12). As noted, both inquiries are relevant in this case, at least as to North Bay. The pertinent inquiry is whether North Bay has purposefully availed itself of the privilege of conducting activities in Nevada, thereby invoking the benefits and protections of its laws. *See Burger King Corp.*, 471 U.S. at 476. "Purposeful availment requires that the defendant have performed some type of affirmative conduct which allows or promotes the transaction of business within the forum state." *Sher*, 911 F.2d at 1362 (internal quotation marks and citation omitted).

Austin Capital contends that North Bay contracted to perform custodial duties for Austin Capital, and that North Bay directed hundreds of Austin Capital-Greenbax Clients to file regulatory complaints through Call and McCormick. (ECF No. 11 at 4, 6.) Call and McCormick's emails are irrelevant to whether North Bay purposefully availed itself of conducting business in Nevada because the contract-based claims demanding purposeful availment analysis are alleged only against North Bay. Even were the Court to consider Call and McCormick's directive emails, they are not affirmative conduct that allowed North Bay to transact business in Nevada. Therefore, the single allegation that North Bay contracted with Nevada-based Austin Capital must support the conclusion that North Bay purposefully availed itself of Nevada's jurisdiction.

The Court finds that Plaintiff has not made a prima facie case that North Bay purposefully availed itself of conducting activities in Nevada, thereby invoking the benefits and protections of its laws based on the single purported contract. The thrust of the contract-based claims is that North Bay breached its custodial obligations under the Agreement by unilaterally withdrawing funds from the account that Austin Capital held at North Bay. That account is specifically alleged to contain the funds of Austin Capital's clients. Because the bank account in question is alleged to be in California at North Bay, and because it contains the funds of Austin Capital's non-Nevada based clients, any custodial obligations and duties North Bay incurred under the contract were incurred and to be fulfilled outside of Nevada. Performance of the contract in question did not require North Bay to conduct any business in Nevada. The contract's only Nevada touchstone is that Austin Capital is at home in the forum. Apart from that surface-level link, the contract "created no 'substantial connection' or ongoing obligations" in Nevada for North Bay nor did it require or allow North Bay to transact business in the forum. *See Boschetto v. Hansing,* 539 F.3d 1011, 1019 (9th Cir. 2008) (citation omitted).

Moreover, the Supreme Court has stated "a contract alone does not automatically establish minimum contacts in the plaintiff's home forum" and further explained that a contract is ordinarily "an intermediate step serving to tie up prior business negotiations with future consequences which themselves are the real object of the business transaction." *Burger King Corp.,* 471 U.S. at 478, 479. The future consequences of the contract referenced in the FAC, as alleged, revolve around the California-based bank account. Therefore, mere execution of the contract is not the type of affirmative conduct that allowed North Bay to conduct business in Nevada. The Court finds that Plaintiff has failed to make a prima facie case that North Bay purposefully availed itself of the privilege of conducting business in Nevada and invoked the benefits and protections of its laws.

### c.    Reasonableness

Assuming Plaintiff could satisfy the purposeful direction or purposeful availment inquiries, in addition to the second specific jurisdiction analysis prong for claim

10

relatedness, the Court finds that the exercise of jurisdiction over Defendants would be unreasonable. Whether the exercise of jurisdiction comports with fair play and substantial justice is an inquiry into whether the court's exercise of jurisdiction would be reasonable. *Schwarzenegger,* 374 F.3d at 802. Reasonableness turns on consideration of seven factors: "(1) the extent of the defendants' purposeful interjection into the forum state's affairs; (2) the burden on the defendant of defending in the forum; (3) the extent of conflict with the sovereignty of the defendants' state; (4) the forum state's interest in adjudicating the dispute; (5) the most efficient judicial resolution of the controversy; (6) the importance of the forum to the plaintiff's interest in convenient and effective relief; and (7) the existence of an alternative forum." *Menken v. Emm*, 503 F.3d 1050, 1058 (9th Cir. 2007) (citation omitted).

Factors one, two, five, and seven suggest that the exercise of jurisdiction over North Bay, Call, and McCormick would be unreasonable while only factor six suggests reasonableness. The first factor weighs heavily against the exercise of jurisdiction because the extent and degree of Defendants' interjection into Nevada's affairs is marginal at best. North Bay, Call, and McCormick's contacts touch the periphery of the forum, and no Defendant is alleged to have engaged in any business activity here. Factor two also weighs against the exercise of jurisdiction because Defendants are burdened by defending this case where they are not residents, *i.e.*, Nevada. And finally, factors five and seven work in tandem against the exercise of jurisdiction as California is not only an available alternative forum but also a more efficient forum to resolve this dispute which calls for the depositions and testimony of 200-300 non-Nevada residents. The majority of factors suggest it would be unreasonable to exercise jurisdiction over Defendants.

### d.   Consent

Plaintiff also relies on the Agreement's jurisdiction clause to argue that North Bay consented to this Court's jurisdiction. (ECF No. 27 at 12.) But this contention is tenuous. The jurisdictional provision in the Agreement is limited to any lawsuit or other judicial proceeding relating to or arising out of that Agreement. (ECF No. 27-2 at 28.) Here, the

contract claims alleged do not arise out of the Agreement, and the tort-based claims have no relation to the Agreement as they concern disparaging emails sent by North Bay about Austin Capital. As to its contract claims, Plaintiff alleges that North Bay breached the Agreement "by removing funds from ACTC's custodial account." (ECF No. 11 at 16.) In the Agreement, "client" is defined as "the Owner of the Account as indicated on the Custodial Account Application," and "Account" is defined as "each Securities custody account on ACTC's records in the Client's name[.]" (ECF No. 27-2 at 22.) The owner of the account on the application is North Bay. By its own terms, the Agreement governs the parties' relationship as to any of North Bay's accounts on Austin Capital's records, not the account held by Austin Capital at North Bay from which Austin Capital alleges North Bay illegally withdrew funds. Accordingly, the Court finds that North Bay did not consent to Nevada's jurisdiction by virtue of executing the Agreement.[4]

In sum, the Court finds that Plaintiff has not made prima facie showings that North Bay, Call, or McCormick purposefully directed their activities at Nevada or that North Bay purposefully availed itself of Nevada's jurisdiction. Similarly, Plaintiff has failed to show that North Bay consented to the jurisdiction of this Court. The Court will therefore dismiss this action against North Bay, Call, and McCormick without prejudice for lack of personal jurisdiction. *See Freeman v. Oakland Unified Sch. Dist.*, 179 F.3d 846, 847 (9th Cir.1999) ("Dismissals for lack of jurisdiction 'should be . . . without prejudice so that a plaintiff may reassert his claims in a competent court.'").

IV.    **CONCLUSION**

The Court notes that the parties made several arguments and cited several cases not discussed above. The Court has reviewed these arguments and cases and

---

[4]Defendants also filed a request for judicial notice and notice of documents incorporated by reference in support of the Motion. (ECF No. 18.) Plaintiff did not file an opposition to the request but argues against the Court's consideration of the documents in its Response. (ECF No. 27 at 8-10.) Because the Court does not have personal jurisdiction over North Bay, and resolved Plaintiff's jurisdictional consent argument on different grounds, it need not—and does not—consider Defendants' request for judicial notice. To be clear, the contents of the requested documents do not change the Court's jurisdictional analysis.

determines that they do not warrant discussion as they do not affect the outcome of the motion before the Court.

It is therefore ordered that Defendants North Bay Credit Union, Chris Call, and Carole McCormick's motion to dismiss (ECF No. 17) is granted without prejudice for lack of personal jurisdiction.

DATED THIS 12th Day of August 2024.

_____
MIRANDA M. DU
CHIEF UNITED STATES DISTRICT JUDGE

13